**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

CARL ANDERSEN JR.,

        Plaintiff,

v.

THE CITY of COLORADO SPRINGS,
TELLER COUNTY COLORADAO,
VITO DELCORE, in his official and individual capacities,
TODD ECKERT, in his official and individual capacities,
CARLOS SANDOVAL, in his official and individual capacities,
ANTHONY MATARAZZO, in his official and individual capacities,

        Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff C.J. Andersen by and through his attorneys David A. Lane and Reid Allison of

KILLMER, LANE & NEWMAN, LLP, and Tyrone Glover of STIMSON STANCIL LABRANCHE

HUBBARD, LLC submits his Complaint and Jury Demand as follows:

**INTRODUCTION**

1.      On April 17, 2019, a terrifying accident befell Carl Andersen Jr.'s family. That

night, his 19-month-old daughter ran into the car as his fiancée drove away.  His daughter was

seriously injured and needed to be air lifted to Memorial Hospital in Colorado Springs for

treatment. At Memorial Hospital, the frantic family was inexplicably confronted by Teller

County and Colorado Springs law enforcement officers who claimed to suspect there was

evidence of a crime on Mr. Andersen's fiancée's phone.   As Mr. Andersen stood by his

1

daughter's hospital crib in the pediatric intensive care unit, unsure whether his child would live or die, he had his fiancée's phone in his pants pocket.  His fiancée lay in the hospital bed with their injured daughter.  Police officers entered the hospital room and attempted to unlawfully seize the phone from Mr. Andersen.

2.      With no legal justification whatsoever, when Mr. Andersen refused to hand over the phone, officers grabbed him by his wrists, threw him on the ground and Tazed him twice. Officers arrested, questioned, and charged him with a crime. The case was later dismissed.

3.      The officers used this violent force and unlawfully arrested Mr. Andersen despite the fact that they had no reasonable suspicion or probable cause that he had committed any crime, while he was unarmed, was acting lawfully, was remaining calm, and did not threaten any officer.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C.  §§ 1331. This action is authorized and instituted pursuant to 42 U.S.C. § 1983.

5.      42 U.S.C. § 1988 conveys jurisdiction supporting Carl Andersen Jr.'s claims for attorney's fees and costs.

6.      Venue is proper in the District of Colorado pursuant to 28 U.S.C.  § 1391. All the events alleged occurred within the State of Colorado, and all the parties were residents of the State at the time of the events giving rise to this Complaint.

## PARTIES

7.      Plaintiff Carl Edward Andersen Jr. was and is a citizen of the United States and State of Colorado during the relevant times described herein.

2

8.      At all times relevant to the allegations of this Complaint, individual Defendants DelCore, Eckert, and Sandoval were police officers for the City of Colorado Springs and individual Defendant Matarazzo was a Detective in the Teller County Sheriff's Office. All are citizens of the United States and residents of the State of Colorado.

9.       Defendant City of Colorado Springs ("Colorado Springs") is a municipality and is a proper party under § 1983.

10.     Defendant Teller County Colorado ("Teller County") is a municipality and is a proper party under § 1983.

11.     All Defendants acted under color of state law at all times relevant to this Complaint.

## FACTUAL ALLEGATIONS

12.     Mr. Andersen is engaged and has two young children.  He lives in Woodland Park, Colorado and works for his father's construction company.  Mr. Andersen served his country in combat as a Marine and received an honorable discharge.

13.     On April 17, 2019, Mr. Andersen's 19-month-old daughter, was involved in a horrific accident. While Mr. Andersen's fiancée, pregnant with their second child, was pulling her car out of the driveway, their daughter ran after her mother and was accidently struck by the car. Mr. Andersen immediately drove his fiancée and child to the hospital. The family arrived at UC Health Pikes Peak, in Woodland Park, where their daughter was treated.  Because her injuries were very serious, she was transported via Flight for Life to the Intensive Care Unit ("ICU") at Memorial Central Hospital in Colorado Springs. The rest of the family rushed to Memorial Hospital while their daughter was in the helicopter.

14.     At Memorial Hospital, Mr. Andersen remained attentive to his 19-month-old daughter who was in the pediatric ICU being treated for her injuries. Mr. Andersen's fiancée was understandably distraught and lay in the bed with their daughter.  Mr. Andersen stood by the bedside. Grandparents and other family waited in and around the halls for what they hoped would be good news. Despite the dire situation, everyone was calm. Mr. Andersen was especially even-keeled as he did not to want to further stress his fiancée and injured daughter.

15.     Unbeknownst to Mr. Andersen and his family, for reasons unknown to Plaintiff, Detective Anthony Matarazzo, of the Teller County Sheriff's Office ("TCSO") and other law enforcement officers, wrongfully suspected possible child abuse as the cause of injuries. This suspicion was groundless and would later be proven to be unfounded. While the Andersen's were focused on treatment, Sergeant Matarazzo and other law enforcement officers were plotting their investigation. Officers began walking in and out of the Andersen's hospital room, asking questions and demanding Mr. Andersen give law enforcement his pregnant fiancée's cell phone while she laid next to their young daughter's hospital bed – her daughter's life in the balance. Mr. Andersen refused and rightfully told the officers they were not entitled to seize the phone.

16.     Sergeant Anthony Matarazzo, determined to seize and search Mr. Andersen's fiancée's phone, commissioned a group of Colorado Springs Police Department ("CSPD") officers to help him.  The group of officers, consisting of Officers Vito DelCore, Todd Eckert, and Carlos Sandoval, along with Sergeant Matarazzo, stormed into the hospital room and confronted Mr. Andersen.

17.     Immediately, Officer DelCore grabbed at Mr. Andersen's waist pocket in an attempt to get the phone. Mr. Andersen turned away in shock and said, "Excuse me, you do not grab anything from my pockets." Officer DelCore responded angrily to Mr. Andersen's First

Amendment protected speech by threatening to physically assault Mr. Andersen, saying "[y]ou're going to hit the ground real hard." Despite Officer DelCore's attempt to grab Mr. Andersen and wrongfully seize his phone, Mr. Andersen remained calm and in a reasoned tone, continued to talk to the officers.

18.     Officer Eckert then said, "let's take this out in the hallway."  To which Mr. Andersen calmly and firmly responded "I'm not leaving my daughter's side." Mr. Andersen also told Officer Eckert that he "did not have a right to take the phone." Mr. Andersen's insistence that the officers respect fundamental Fourth Amendment rights angered the officers. In the hospital room, steps away from a 19-month-old child recovering in her crib next to her pregnant mother, Officer DelCore drew his Taser. Mr. Andersen reacted by asking "you're going to 'Taze' me because I won't give you my fiancée's cell phone?"

19.     Despite the threat of being Tazed, Mr. Andersen's demeanor was non-threatening as he spoke to officers. His hands were relaxed. He was standing in a calm pose with his shoulders angled downward. At no time did Mr. Andersen act aggressively toward officers or engage in any conduct which would have justified use of force against him or his arrest.

20.     At the conclusion of this brief interaction, everyone paused while Carl Andersen Sr. talked to the Teller County Sheriff on the phone—trying to deescalate the situation. Officer Eckert, growing impatient then stated, "we're just trying to keep this simple. Just give us the phone." Mr. Andersen responded, "So am I. You don't need to take the cell phone." Angered by Mr. Andersen's refusal to bow to their unconstitutional demands, Officer Eckert abruptly responded, "we are going to take it," and Officer DelCore stated, "you will be charged with obstruction and you will be arrested."

21.     Not at this point, nor any other point, was there reasonable suspicion or probable cause to believe Mr. Andersen had committed, was committing, or was about to obstruct the police or commit any other crime. He was not under arrest and the officers did not have a warrant to seize his fiancée's phone. As such, Mr. Andersen rightfully stated "I am not going to be charged with anything because you do not have a right to take her cell phone—show me where you have the right to take her personal property."

22.     The atmosphere in the room, while tense, was still steady and calm. The officers had no reason to go "hands-on" with Mr. Andersen. Mr. Andersen asked a question to which he could have been given a response—if the officers had one, they could have stated their legal grounds for why they had the "right" to seize his fiancée's phone. But instead, angered by Mr. Andersen's question and knowing there was no legal basis to seize the phone, Officer DelCore snuck behind Mr. Andersen. He did not tell Mr. Andersen why he was positioning himself there. Mr. Andersen stated, "Excuse me." Officer DelCore responded, "I'm going to go behind you because I don't want anyone behind you getting hurt." At no point did the officers indicate that Mr. Andersen was under arrest or that they intended to forcefully take the cell phone from him.

23.     Then, without warning, Officer Eckert grabbed Mr. Andersen's left wrist and Officer DelCore grabbed Mr. Andersen's right wrist. Mr. Andersen, surprised, moved his arms. Officer DelCore angrily yelled, "get out of the room." Mr. Andersen asked, "Are you serious?"

24.     Officer DelCore then shot Mr. Andersen in the back with his Taser, sending electricity coursing through his body. Mr. Andersen fell to his knees and then three officers forced him to the floor. Officer DelCore, still standing, turned to look at Mr. Andersen's father who was saying, "this is not right—gentlemen please." Officer DelCore then threatened Mr. Andersen's father that he too was "going to get Tazed." Officer DelCore then returned his

attention to Mr. Andersen, who was on the ground with three officers on top of him. Officer DelCore began to say, "Put your hands behind your back." But before he completed the sentence, he fired another Taser round into Mr. Andersen's leg. Mr. Andersen, now Tazed a second time, screamed in pain.

25.     The officers then handcuffed Mr. Andersen and walked him out of the room with the Taser prongs still stuck in the flesh of his back and leg. They seized Mr. Andersen's fiancée's phone and also took Mr. Andersen's phone.  The officers took Mr. Andersen into custody. They interrogated him despite never giving him a *Miranda* advisement. They wrote reports which were misleading and falsely described Mr. Andersen's actions and demeanor.

26.     Officers filed obstructing and resisting arrest charges against Mr. Andersen. The El Paso County District Attorney prosecuted these charges in El Paso County Court, based on the officers' misleading reports. The case languished through the summer and the Andersen family was subjected to traveling back and forth to multiple court appearances and hearings. They struggled to even get a prosecutor to review the case file and body camera footage, which clearly showed Mr. Andersen not obstructing or resisting and was the victim of police brutality.

27.     The Deputy District Attorney eventually sought permission from the Defendant officers to the dismiss the case, but they would not grant permission.

28.     Finally, in late fall of 2019, two days before trial and months after the case was filed, the El Paso County District Attorney's Office dismissed the case.

**MONELL LIABILITY OF COLORADO SPRINGS AND TELLER COUNTY**

29.     All of the acts described herein were done by the Defendants intentionally, knowingly, willfully, wantonly, maliciously and/or recklessly in disregard for Mr. Andersen's federally protected rights, and were done pursuant to the preexisting and ongoing deliberately

indifferent custom, policy, practice, training, and supervision of Defendant Colorado Springs and Teller County acting under color of state law.

30.     Defendants' treatment of Mr. Andersen was pursuant to Defendant Colorado Springs' and Teller County's customs and/or practices of unlawful conduct, including but not limited to:

a.   Arresting and prosecuting individuals without probable cause to believe they have committed any crime;

b.   Stopping, detaining, citing, and prosecuting individuals for engaging in speech activity that is deemed offensive and/ or is critical of Colorado Springs and Teller County;

c.   Using force against individuals who exercise their free speech rights to criticize CSPD and/or TCSO officers and/or record their activity;

d.   Maliciously prosecuting individuals without probable cause and, particularly, engaging in malicious prosecutions in an attempt to cover-up police misconduct; and

e.   Failing to discipline officers or even find they engaged in wrongdoing, in the face of obvious constitutional violations.

31.     Upon information and belief, Defendants Colorado Springs and Teller County have provided no additional training to Defendants and its other officers related to the incident with Mr. Andersen and has therefore ratified this misconduct.

32.      As made clear by their blatantly unconstitutional actions, the Individual Defendants were not properly trained on the First or Fourth Amendment, or how to conduct a lawful seizure, search, or arrest.

33.     Defendants Colorado Springs' and Teller County's response to these events evidences a pattern and practice of failing to discipline officers for constitutional violations. By failing to discipline the Individual Defendants for their unconstitutional and illegal conduct, the Municipal Defendants approved their conduct, and effectively trained the Individual Defendants and other members of CSPD and TCSO that such conduct is consonant with official custom, policy and practice.

34.     The Municipal Defendants' approval of the Individual Defendants' blatantly unconstitutional actions sends a clear and unequivocal message to its employees—it *trains* them—that such constitutional violations are acceptable, consistent with policy, and are approved practice, causing similar constitutional violations to be likely or even inevitable in the future.

35.     Through the Defendants Colorado Springs' and Teller County's continuous ratification of unconstitutional detentions, arrests, prosecutions, and excessive force, Defendants Colorado Springs and Teller County have condoned Defendant's conduct.

36.     Defendant Colorado Springs and Teller County failed to properly train and supervise its employees to avoid the use of excessive force, unlawful seizure, unlawful search, and First Amendment retaliation.

37.     Defendant Colorado Springs and Teller County knew, or should have known, that its employees would fail to use reasonable force, unlawfully seize, arrest, and prosecute Mr. Andersen, and unlawfully search Mr. Andersen, violating Mr. Andersen's constitutional rights.

38.     Defendants Colorado Springs and Teller County were deliberately indifferent to Mr. Andersen's constitutional rights, because they knew that individuals in Mr. Andersen's

position would be at a substantial risk of suffering dangerous consequences from Colorado Springs' and Teller County's failure to properly train and supervise its employees.

39.     Defendants Colorado Springs and Teller County could have and should have pursued reasonable methods for the training and supervising of such employees but failed to do so.

40.     Defendants Colorado Springs' and Teller County's policies, customs, or practices in failing to properly train and supervise their employees were the moving force and proximate cause of the violation to Mr. Andersen's constitutional rights.

41.     The custom, policy, and practice of Defendants Colorado Springs and Teller County of encouraging, condoning, tolerating, and ratifying the retaliation, detention, use of excessive force by law enforcement officers and the unlawful seizure, search, and false arrest of citizens, as described herein were the moving force behind, and proximate cause of, the violation to Mr. Andersen's constitutional rights.

42.     The acts or omissions of Defendant Colorado Springs and Teller County caused Mr. Andersen damages in that he suffered physical and mental pain, among other injuries, damages, and losses.

43.     The actions of Defendant Colorado Springs and Teller County as described herein deprived Mr. Andersen of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America and caused him other damages.

**Defendant Colorado Springs and Teller County have a custom and practice of arresting individuals without probable cause and hanging prosecution over their head for months, despite being aware of obvious evidence that no probable cause exists.**

44.     CSPD and TCSO have a history of making arrests without probable cause—an issue that should have long since been addressed. The following cases show that at the time of

Mr. Andersen's arrest, there was an informal custom and practice, that was known to Defendants Colorado Springs and Teller County, of wrongfully arresting individuals without probable cause and condoning such arrest by their officers. These cases also illustrate an obvious need, that Defendants Colorado Springs and Teller County were aware of at the time of Mr. Andersen's arrest, for Defendants Colorado Springs and Teller County to provide further training to CSPD and TCSO officers on the necessity of establishing probable cause before making an arrest.

45.     On April 26, 2018, Colorado Springs Police Department ("CSPD") officers responded to a disturbance at the Remington Apartments. While checking for arrest warrants in one of the units in the apartment complex, officers encountered Jeffrey Melvin. The officers threw Mr. Melvin to the ground, held him down, pepper sprayed him and deployed a Taser on Mr. Melvin no less than five times in two minutes. The Taser use was so excessive that Mr. Melvin went into Lactic Acidosis, releasing so much lactic acid into Mr. Melvin's body that it and killed him. The coroner ruled Mr. Melvin's death a homicide. This violent force was used against Mr. Melvin despite the fact that he was unarmed, acting lawfully and did not threaten any officer. A lawsuit is currently pending in federal court.

46.     On August 9, 2017, Colorado Springs Police Department officers lured a man suspected of soliciting sex with underage girls to a hotel in Colorado Springs as part of a joint sting operation with Homeland Security Investigations. The officers intended to arrest the man, identified as "Rick" (last name unknown), when he arrived at the hotel and confirmed his intent to purchase sex with an underage girl. When he arrived at the hotel, Rick spoke with undercover detective Elizabeth Reid about purchasing sex with the detective's "16-year-old sister." Despite multiple officers observing the conversation and Rick's truck, police failed to identify or arrest Rick, who walked away from the hotel after apparently sensing something awry with the

transaction. Through a combination of failures on the part of Defendants to follow their own procedures, perform a minimally diligent investigation, or apply common sense, CSPD ultimately misidentified Rick as Mr. Metzler simply because Mr. Metzler at one time years earlier had an old phone number which matched that of Rick. Mr. Metzler had not used that phone number, however, for several years. Mr. Metzler was also tentatively identified in a Facebook posting as "Rick" by a detective, despite having little actual resemblance to Rick. Defendants then misrepresented evidence to a judge in order to acquire an arrest warrant for Mr. Metzler. Mr. Metzler was arrested and jailed for approximately three days on two felony sex crime charges. Though he and his legal representatives offered copious exculpatory evidence to demonstrate his innocence, including an alibi backed by GPS evidence, Defendants refused to admit their mistake. The charges against Mr. Metzler were not dismissed until February 12, 2018, over five months after he was arrested.

47.     On January 26, 2012, John Sturgis was arrested without probable cause and subjected to excessive force by CSPD officers after a civilian witness misidentified Mr. Sturgis as a homicide suspect. The witness told CSPD officers that he had seen a man at a gas station— Mr. Sturgis—who resembled a homicide suspect, and the officers followed Mr. Sturgis and arrested him. Though Mr. Sturgis was not the homicide suspect, was approximately twice the estimated age of the suspect (20), and was bald while the suspect was described as having hair (among numerous other physical dissimilarities), the officers still elected to arrest him without any cause to believe that he was the suspect. Mr. Sturgis surrendered peacefully and asked the officers not to handcuff him behind his back because he had recently had surgery on his shoulder; he even offered to show the officers MRI images of his injured shoulder that were sitting on his front seat as proof. The officers ignored Mr. Sturgis's pleas, and roughly

handcuffed him by the back, causing Mr. Sturgis to reinjure his shoulder and require further surgery. Several officers falsified their reports about the incident in an unsuccessful effort to invent probable cause to arrest Mr. Sturgis.

48.     On October 12, 2012, CSPD wrongfully arrested Ethan Pace for sexual assault after the lead detective omitted critical exculpatory evidence from the arrest warrant affidavit, despite being fully aware of such evidence.

49.     On July 21, 2012, James Sorensen was arrested without probable cause for violating a law banning guns in parks; that law had been repealed in 2003. CSPD officers unlawfully detained, handcuffed, and arrested James Sorensen for carrying a holstered pistol at a festival. A Colorado Springs spokeswoman publicly admitted that Mr. Sorensen was correct, and the officers were "in the wrong, definitely." After Mr. Sorensen brought suit to vindicate his constitutional rights, Colorado Springs settled the case.

50.     Also, in 2012, the City of Colorado Springs settled claims that two CSPD officers had conspired to falsely charge, falsely arrest, and maliciously prosecute one of the officers' ex-boyfriends, Jarrott Martinez. Despite Mr. Martinez's presentation of a video-supported alibi for the time period when he was accused of the false charges, CSPD supported his prosecution through two criminal trials.

51.     In 2009, Joseph Martinez was arrested after a CSPD officer misidentified him as the individual who had sold him drugs during an undercover operation. The officer knew the drug dealer to be nicknamed "Casper," and searched for mugshots of individuals associated with that nickname. He incorrectly selected Mr. Martinez's photograph. When Mr. Martinez turned himself in and professed his innocence, officers made no effort whatsoever to confirm the bad identification that had led to the arrest, even though Mr. Martinez lacked the only identifying

mark of which the undercover officer had taken note, a tattoo on his shin. Mr. Martinez spent approximately 40 days in jail before he could bond out, and his case was ultimately dismissed for lack of evidence.

52.     Also, in 2009, CSPD officers illegally detained Evan Bank and searched his home of Evan Bark after misidentifying him as a suspect in an armed robbery. Mr. Bark is Caucasian; the officers were investigating a robbery committed by two men who had been described as African American. The only connection between the robbery and Mr. Bark was a statement from a witness who had followed a car near the scene of the robbery believing that the car was involved in the robbery; that car was Mr. Bark's vehicle, and the witness had noted his license plate number. However, the witness specifically stated to the investigating CSPD detectives that the car she had seen was not involved in the robbery, as the involved vehicle had tinted windows and Mr. Bark's vehicle did not. Nonetheless, on the basis of this witness statement that was plainly insufficient to establish probable cause, officers warrantlessly searched Mr. Bark's home and vehicles and detained him in handcuffs for several hours.

53.     On October 20, 2010, Teller County Colorado Sheriffs, without a warrant, probable cause, reasonable suspicion, permission or exigency of circumstances, and based on the unlawful orders given by the Teller County Undersheriff Stan Bishop, threw open the rear door of Paul Bauman's van, violently dragged him from it, and hurled him to the ground. Mr. Bauman's shorts fell down around his ankles and he was forcefully punched by Defendant officers, even though he was not resisting the excessive use of force against him. Once on the ground, Mr. Bauman was held at gunpoint to his head, while Defendants stepped on Mr. Bauman's groin and cuffed him with flex-cuffs. Defendants' actions were so violent that Mr. Bauman's pacemaker became dislodged and he began vomiting. Mr. Bauman was forced to lay

face down in his vomit with his body exposed until another Sergeant called for emergency medical assistance and Mr. Bauman was transferred via ambulance to the Hospital and ultimately life-flighted to Denver, Colorado. As a result of the defendants' unlawful seizure and use of force, including failure to train and supervise, Mr. Bauman suffered severe, lasting physical and emotional injuries, lost wages, damages, and losses. He brought suit and this Court entered a judgment against the officers and pursuant to the jury verdict, Judge Matsch ordered damages and attorney fees. *Bauman v. Teller County*, No. 12-cv-02735-RPM (D. Colo. May 22, 2015).

54.     Several of these representative cases resulted in Colorado Springs and Teller County paying hundreds of thousands of dollars to settle false arrest claims, yet the facts surrounding Mr. Andersen's case make apparent that the Colorado Springs Police Department and Teller County Sheriff Officer has yet to learn its lesson and adequately train and supervise its officers on the probable cause requirement, or ensure that the clear ongoing custom and practice of disregarding the probable cause requirement ceases.

## STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
*42 U.S.C. § 1983 – Fourth Amendment*
*Unlawful Seizure of Person / False Arrest*
(Against All Defendants)

55.     Mr. Andersen hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

56.     At all times relevant to this Complaint, Defendants were acting under the color of law.

57.     Defendants did not at any time have probable cause or reasonable suspicion, or any other legally valid basis, to believe that Carl Andersen Jr. had committed or was committing any violation of the law prior to seizing and detaining him and continuing to restrain him.

58.     Defendants did not at any time have a reasonable basis for believing that Mr. Andersen was a danger to himself or others.

59.     Defendants did not at any time have a warrant authorizing any such search, seizure, and/or detention of Mr. Andersen's body or his belongings.

60.     Defendants, acting in concert with one another, seized and detained Carl Andersen Jr. and did not allow him to leave.

61.     During this seizure and arrest, Defendants detained Mr. Andersen against his will, despite lacking any legally valid basis for their actions.

62.     At the time when Defendants arrested Mr. Andersen without probable cause and searched his person without reasonable suspicion, Mr. Andersen's Fourth Amendment right to be secure in his person from unreasonable searches and seizures was clearly established.

63.     Defendants violated Mr. Andersen's clearly established Fourth Amendment rights by engaging in a false arrest and unlawful seizure that was objectively unreasonable in light of the facts and circumstances confronting them.

64.     None of the Defendant law enforcement officers took reasonable steps to protect Mr. Andersen from the objectively unlawful arrest or seizure of the other Defendant officers, despite being in a position to do so. Each is therefore liable for the damages resulting from the objectively unlawful arrest and seizure used by the others.

65.     The acts or omissions of the individual Defendants were the moving force behind, and the proximate cause of the injuries sustained by Mr. Andersen.

66.     Defendants were engaged in these acts pursuant to the formal or informal custom, policy and practice of the City of Colorado Springs and Teller County, which encourages, condones, tolerates, and ratifies the false arrest and unlawful seizure of its law enforcement officers and sheriffs.

67.     This formal or informal custom, policy and practice of the City of Colorado Springs and Teller County is so permanent and well settled as to constitute custom by high ranking officers, the Chief of Police, the Teller County Sheriff and Undersheriff, and City of Colorado Springs and Teller County employees with final policymaking authority— and has been ratified by such policymakers.

68.     The acts or omissions of Defendants City of Colorado Springs and Teller County caused Mr. Andersen damages.

**SECOND CLAIM FOR RELIEF**
*42 U.S.C. § 1983 – Fourth Amendment*
*Unlawful Search*
(Against All Defendants)

69.     Mr. Andersen hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

70.     At all times relevant to this Complaint, Defendants were acting under the color of law.

71.     Defendants did not at any time have probable cause or reasonable suspicion, or any other legally valid basis, to believe that Carl Andersen Jr. had committed or was committing any violation of the law prior to seizing and detaining him and continuing to restrain him.

72.     Defendants did not at any time have a warrant authorizing any such search, of Mr. Andersen's body or his belongings.

73.    Defendants, acting in concert with one another, unlawfully searched Carl Andersen Jr.

74.    At the time when Defendants arrested Mr. Andersen without probable cause and searched his person without reasonable suspicion, Mr. Andersen's Fourth Amendment right to be secure in his person from unreasonable searches was clearly established.

75.    Defendants violated Mr. Andersen's clearly established Fourth Amendment rights by engaging in an unlawful search that was objectively unreasonable in light of the facts and circumstances confronting them.

76.    None of the Defendant law enforcement officers took reasonable steps to protect Mr. Andersen from the objectively unlawful search by the other Defendant officers, despite being in a position to do so. Each is therefore liable for the damages resulting from the objectively unlawful search by the others.

77.    The acts or omissions of the individual Defendants were the moving force behind, and the proximate cause of the injuries sustained by Mr. Andersen.

78.    Defendants were engaged in these acts pursuant to the formal or informal custom, policy and practice of the City of Colorado Springs and Teller County, which encourages, condones, tolerates, and ratifies the false arrest and unlawful seizure of its law enforcement officers and sheriffs.

79.    This formal or informal custom, policy and practice of the City of Colorado Springs and Teller County is so permanent and well settled as to constitute custom by high ranking officers, the Chief of Police, the Teller County Sheriff and Undersheriff, and City of Colorado Springs and Teller County employees with final policymaking authority— and has been ratified by such policymakers.

80.     The acts or omissions of Defendants City of Colorado Springs and Teller County caused Mr. Andersen damages.

**THIRD CLAIM FOR RELIEF**
*42 U.S.C. § 1983 – Fourth Amendment*
*Unlawful Seizure of Property*
(Against All Defendants)

81.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

82.     At all times relevant to this Complaint, Defendants were acting under the color of law.

83.     Mr. Andersen had a protected Fourth Amendment interest against unreasonable governmental seizure of his property.

84.     Defendants, acting in concert with one another, seized and detained Carl Andersen Jr.'s cell phone and his wife's cell phone.

85.     Defendants did not at any time have a warrant authorizing seizure of Mr. Andersen's cell phone and his wife's cell phone.

86.     Mr. Andersen's Fourth Amendment right to be secure in his person from unreasonable searches and seizures was clearly established.

87.     Defendants violated Mr. Andersen's clearly established Fourth Amendment rights by engaging in an unlawful seizure of his property that was objectively unreasonable in light of the facts and circumstances confronting them.

88.     No legally recognizable circumstances, exigent or otherwise, existed which would have justified or permitted Defendants' conduct.

89.     Defendants' actions were objectively unreasonable in light of the circumstances confronting them.

90.     Defendants engaged in these actions intentionally, willfully, and wantonly.

91.     None of the Defendant law enforcement officers took reasonable steps to protect Mr. Andersen from the objectively unlawful property seizure of the other Defendant officers, despite being in a position to do so. Each is therefore liable for the damages resulting from the objectively unlawful seizure of property used by the others.

92.     Defendants were engaged in these acts pursuant to the formal or informal custom, policy and practice of the City of Colorado Springs and Teller County, which encourages, condones, tolerates, and ratifies unlawful seizures of property of its law enforcement officers and sheriffs.

93.     This formal or informal custom, policy and practice of the City of Colorado Springs and Teller County is so permanent and well settled as to constitute custom by high ranking officers, the Chief of Police, the Teller County Sheriff and Undersheriff, and City of Colorado Springs and Teller County employees with final policymaking authority— and has been ratified by such policymakers.

94.     The acts or omissions of Defendants City of Colorado Springs and Teller County caused Mr. Andersen damages.

**FOURTH CLAIM FOR RELIEF**
*42 U.S.C. § 1983 – Fourth Amendment*
*Excessive Force*
(Against All Defendants)

95.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

96.     At all times relevant to this Complaint, Defendants were acting under the color of law.

97.     When Defendants grabbed Carl Andersen Jr., threw him on hospital floor, held him down, and Tazed him multiple times there was no probable cause (or reasonable suspicion) to believe that Mr. Andersen had committed any crime. Mr. Andersen was unarmed, not fleeing from Defendants or resisting arrest in any way and was not a threat to the officers or any other person. He was calmly talking to officers in a hospital room with his fiancée and daughter just feet away. His body language was relaxed, and his tone was reasonable and measured. Mr. Andersen suffered significant pain and injuries as a result of Defendants' objectively unreasonable and unnecessary use of force.

98.     At the time when Defendants harmed Carl Andersen Jr., Mr. Andersen's Fourth Amendment right to be secure in his person from unreasonable seizure through excessive force was clearly established.

99.     Defendants actions, as described above, were motivated by intent to harm Carl Andersen Jr.

100.    Defendants engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Mr. Andersen's constitutional rights.

101.    As a result of Defendants use of excessive force, Carl Andersen Jr. experienced, injury, pain and suffering with no justification or excuse in law. The acts and omissions of Defendants were the moving force behind and proximate cause of Mr. Andersen's pain.

102.    None of the individual Defendants took reasonable steps to protect Mr. Andersen from the objectively unreasonable seizure through excessive force of the other individual

Defendants, despite being in a position to do so. Each is therefore liable for the damages resulting from the objectively unlawful arrest and seizure used.

103.    The acts or omissions of the individual Defendants were the moving force behind, and the proximate cause of the serious physical and emotional injuries sustained by Mr. Andersen.

104.    Individual Defendants were engaged in these acts pursuant to the formal or informal custom, policy and practice of the City of Colorado Springs and Teller County, which encourages, condones, tolerates, and ratifies the unreasonable seizure through excessive force of its law enforcement officers.

105.    This formal or informal custom, policy and practice of the City of Colorado Springs and Teller County is so permanent and well settled as to constitute custom by high ranking officers, the Chief of Police, the Teller County Sheriff and Undersheriff, and City of Colorado Springs and Teller County employees with final policymaking authority— and has been ratified by such policymakers.

106.    The acts or omissions of Defendant City of Colorado Springs caused Carl Andersen Jr. damages, including mental, physical, emotional and economic damages.

107.    The acts and inactions of Defendants caused Mr. Andersen's damages in that he suffered physical injury and mental pain during Defendants' unlawful use of excessive force against him, among other injuries, damages, and losses.

**FIFTH CLAIM FOR RELIEF**
*42 U.S.C. § 1983 - Fourteenth Amendment - Malicious Prosecution*
(Against All Defendants)

108.    All statements of fact set forth previously are hereby incorporated into this claim as though set forth fully herein.

109.    Defendants, acting without probable cause, procured groundless charges against Carl Andersen Jr. in order to maliciously bring about Mr. Andersen's criminal prosecution.

110.    Defendants, acting knowingly, maliciously, willfully and wantonly, participated in the institution of legal proceedings against Carl Andersen Jr., including promoting the continued criminal prosecution of Mr. Andersen with knowledge that there were no reasonable grounds to believe that he had committed any crime whatsoever, and their continued objection to dismissing the charges.

111.    Defendants acted knowingly, maliciously, willfully and wantonly by accusing Carl Andersen Jr. of unlawful behavior prior to, and during their unlawful arrest of him.

112.    Without any legal basis to do so, Defendants participated in the malicious prosecution of Carl Andersen Jr.

113.    Indeed, Defendants willfully submitted misleading reports for the purpose of maintaining a prosecution against Mr. Andersen for which they knew there was not probable cause.

114.    Defendants were motivated by an improper purpose to punish Carl Andersen Jr. in an effort to divert attention from their own misconduct and to insulate themselves from civil liability. Despite no probable cause or likelihood of conviction at trial Defendant's would not authorize the assigned deputy district attorney to dismiss the case.

115.    Despite the Individual Defendants' clearly unconstitutional conduct in pushing baseless charges against Mr. Andersen, the District Attorney's Office properly dismissed all charges against him.

116.    Defendants' conduct violated clearly established rights belonging to Mr. Andersen of which a reasonable person in their positions knew or should have known.

117.     Defendants' actions and/or omissions caused, directly and proximately, Carl Andersen Jr. to suffer damages.

**SIXTH CLAIM FOR RELIEF**
*42 U.S.C. § 1983 – First Amendment*
*Retaliation*
(Against All Defendants)

118.      Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

119.     At all times relevant to this Complaint, the Individual Defendants were acting under the color of law.

120.     Mr. Andersen engaged in First Amendment-protected speech when he repeatedly and clearly objected to the Individual Defendants' attempts to unconstitutionally seize his fiancée's property, and when he criticized Defendants and their conduct as described herein.

121.     Mr. Andersen's speech was on a matter of public concern—he was insisting Fourth Amendment rights be respected by law enforcement officers who are sworn to uphold the Constitution—and did not violate any law.

122.     The Individual Defendants responded to Plaintiff's First Amendment-protected activity with retaliation. Defendants escalated the situation, arrested Mr. Andersen, and used obviously excessive force against him.

123.     The Individual Defendants' retaliatory actions were substantially motivated by Mr. Andersen's exercise of his First Amendment rights.

124.     The Individual Defendants sought to punish Mr. Andersen for exercising his First Amendment rights, to silence his future speech, to stop him from continuing to speak, and to restrict his freedom of expression, along with the future speech and expression of others.

24

125.    The Individual Defendants' retaliatory actions as described herein would chill a person of ordinary firmness from engaging in First Amendment-protected activity.

126.    The Individual Defendants' conduct violated clearly established rights belonging to Mr. Andersen of which reasonable persons in Defendants' position would or should have known. Retaliation against an individual based on his First Amendment-protected speech has been clearly established for decades. *See, e.g., Houston v. Hill*, 482 U.S. 451, 467 (1987) ("the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. 'Speech is often provocative and challenging. . . . [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest'").

127.    Defendants Colorado Springs and Teller County have a custom, policy, or practice of tolerating violations of the First Amendment of the United States Constitution.

128.    Defendants Colorado Springs and Teller County determined that the Individual Defendants' actions as described herein conformed with official policy, practice, custom and training, as evidenced by its failure to discipline, correct or otherwise address the matter.  Had the Individual Defendants' retaliation against Mr. Andersen for his exercise of his First Amendment rights have been deemed inconsistent with policy and training, Defendants Colorado Springs and Teller County would have taken appropriate remedial or disciplinary action as a consequence.

129.    Defendants Colorado Springs' and Teller County's customs, policies, and/or practices were the moving force behind the Individual Defendants' violation of Mr. Andersen's constitutional rights.

130.    The Individual Defendants engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Mr. Andersen's constitutional rights.

131.    Defendants' actions and/or omissions caused, directly and proximately, Mr. Andersen to suffer damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Carl Andersen Jr. respectfully requests that this Court enter judgment in his favor and against Defendants, and grant:

(a)    Appropriate declaratory and other injunctive and/or equitable relief;

(c)    Compensatory and consequential damages, including damages for emotional distress, loss of reputation, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(d)    All economic losses on all claims allowed by law;

(e)    Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(f)    Attorney's fees and the costs associated with this action, including those associated with having to defend against the false criminal charge as well as expert witness fees, on all claims allowed by law;

(g)    Pre and post-judgment interest at the lawful rate; and

(h)    Any further relief that this court deems just and proper, and any other relief as allowed by law.

**PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.**

Dated this 9th day of July 2020.

KILLMER, LANE & NEWMAN, LLP

*s/ David A. Lane*

David A. Lane
Reid Allison
Killmer, Lane & Newman, LLP
1543 Champa Street, Suite 400
Denver, Colorado 80202
(303) 571-1000
dlane@kln-law.com
rallison@kln-law.com

STIMSON STANCIL LABRANCHE HUBBARD, LLC

*s/ A. Tyrone Glover*

A. Tyrone Glover
Stimson Stancil LaBranche Hubbard, LLC
1652 N. Downing Street
Denver, CO 80218
720-689-8909
glover@sslhlaw.com

*Attorneys for Plaintiff*