**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 20-cv-02032-RBJ

CARL ANDERSEN JR.,

        Plaintiff,

v.

THE CITY of COLORADO SPRINGS,
TELLER COUNTY COLORADAO,
VITO DELCORE, in his official and individual capacities,
TODD ECKERT, in his official and individual capacities,
CARLOS SANDOVAL, in his official and individual capacities,
ANTHONY MATARAZZO, in his official and individual capacities,

        Defendants.

---

**RESPONSE TO CITY OF COLORADO SPRINGS' MOTION TO DISMISS
COMPLAINT AND JURY DEMAND [Doc. 38]**

---

Plaintiff, Carl Andersen, by and through undersigned counsel, submits the following

Response to Defendant City of Colorado Springs' Motion to Dismiss (Doc. 38).

## I. INTRODUCTION[1]

On April 17, 2019, C.J. Andersen's 19- month-old daughter, Charlotte, was involved in a

horrific accident. While Mr. Andersen's fiancée, Carissa Hiteshew, pregnant with their second

child, was pulling her car out of the driveway, Charlotte ran after her mother and was accidently

struck by the car. Because Charlotte's injuries were very serious, she was transported via Flight

for Life to the Intensive Care Unit at Memorial Central Hospital in Colorado Springs. While Mr.

---

[1] The following allegations are drawn from Plaintiff's Complaint. (Doc. 1).

Andersen was attending to his fiancée and daughter, unbeknownst to him, law enforcement wrongfully suspected possible child abuse as the cause of Charlotte's injuries. This suspicion was groundless and would later be proven unfounded. A group of officers from the Colorado Springs Police Department and Teller County Sheriff's Office stormed into the Andersen family hospital room. Immediately, Officer Delcore, of the Colorado Springs Police Department, grabbed at Mr. Andersen's waist pocket attempting to seize his fiancée's phone, which Mr. Andersen was holding. Mr. Andersen, shocked, told the officers they had not right to take his phone. Officer DelCore responded by getting behind Mr. Andersen. Another Colorado Springs officer, Officer Eckert, grabbed Mr. Andersen's wrist. With the help of Officer Sandoval, of Colorado Springs and Anthony Matarazzo, of Teller County, Officers DelCore and Eckert took Mr. Andersen to the ground, where Mr. Andersen was manhandled and Tazed twice. Mr. Andersen was then handcuffed and arrested on fabricated charges.

## II. STANDARD OF REVIEW

"There is a strong presumption against the dismissal of claims under [Fed. R. Civ. P. 12(b)(6)]." *Blevins v. Reid*, 2008 U.S. Dist. LEXIS 46168, at *9 (D. Colo. June 12, 2008) (citing *Cottrell, Ltd. v. Biotrol Intern., Inc.*, 191 F.3d 1248, 1251 (10th Cir. 1999)). Evaluating a Rule 12(b)(6) motion, a court must accept as true "all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011) (citation omitted). Generally, a complaint will survive a Rule 12(b)(6) motion if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Plausible" does not mean "likely to be true," but is, instead, a nudge beyond "conceivable." *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

Courts have rejected a heightened pleading standard for claims of municipal liability.

Rather, a well-pleaded claim of municipal liability is one that simply "provide[s] fair notice to the defendant, [which] requires more than generically restating the elements of municipal liability." *Taylor v. RED Dev., LLC*, 2011 U.S. Dist. LEXIS 97985, at *9 (D. Kan. Aug. 31, 2011) (quoting *Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 843 (S.D. Tex. 2011)).

> The reasons for not requiring heightened fact pleading in a § 1983 municipal liability complaint remain even in the wake of *Twombly* and *Iqbal*: a plaintiff, as an outsider to municipal government, is not expected to have information about a city's official policies, practices, or training programs at the pleading stage.

*Walker v. Zepeda*, 2012 U.S. Dist. LEXIS 74386, at *14 (D. Colo. May 29, 2012) (Ebel, J.). "To require more could foreclose legitimate § 1983 claims that, after appropriate discovery, turn out to have evidentiary support." *Id.* at *15-16.

### III. ARGUMENT

A municipality is liable for constitutional torts if the unconstitutional acts implicate a policy, ordinance, or custom of the municipality, and the execution of a policy or custom actually caused an injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-94 (1978). Plaintiff must establish "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cnty. Bd. of Cnty. Commr's*, 151 F.3d 1313, 1316 (10th Cir. 1998). A policy or custom can be established in many ways, including demonstrating the existence of:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (citation and quotations omitted).

Plaintiff has plausibly pled Colorado Spring's liability in his 27-page Complaint. (Doc. 1).

**A. <u>Plaintiff plausibly alleges that Colorado Springs has multiple informal, unconstitutional customs amounting to a widespread practice.</u>**

Establishing an informal policy or custom requires the plaintiff to show that the misconduct was "widespread" - *i.e.*, that it involved a "series of decisions." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *see also Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). At the motion to dismiss stage, Mr. Andersen must only allege:

> (1) The existence of a continuing, persistent and widespread practice of unconstitutional misconduct by the . . . [municipality's] employees; (2)Deliberate indifference to or tacit approval [of] such misconduct by the . . [municipality's] policymaking officials . . . after notice to the officials of that particular misconduct; and (3)That the plaintiff was injured by virtue of the unconstitutional acts pursuant to the . . . [municipality's] custom and that the custom was the moving force behind the unconstitutional acts.

*Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir.1993).

Mr. Andersen can plausibly plead the existence of a continuing, persistent, and widespread practice of unconstitutional conduct through allegations demonstrating:

> past incidents of misconduct to others, multiple harms that occurred to the plaintiff himself, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy.

*Arakji v. Hess*, No. 15-cv-00681-CMA, 2015 U.S. Dist. LEXIS 161600, at *16-17 (D. Colo. Dec. 2, 2015)(quoting *Taylor*, 2011 U.S. Dist. LEXIS 97985, at *3).

First, Mr. Andersen alleges that between 2009 and 2019, on at least eight different occasions, Colorado Springs officers arrested individuals without probable cause. (Doc. 1) ¶¶45-52. A plaintiff adequately alleges a continuing, persistent, and widespread practice when he alleges previous similar incidents of misconduct by a municipality's officials, though "no set number" of incidents is required. *Arakji*, 2015 U.S. Dist. LEXIS 161600, at *18. On each occasion cited in his Complaint, Mr. Andersen pleads facts that established Colorado Springs

officers in these past incidents: (1) did not have a valid reason for arrest; (2) nonetheless acted in

concert with each other to effect an arrest; and (3) detained individuals against their will.

> Such a policy or custom may include what is, in effect, a policy of inaction in the
> face of knowledge that municipal officials are routinely violating a specific
> constitutional right, thus becoming the functional equivalent of a decision by the
> [municipality] itself to violate the Constitution.

*Trujillo v. City & Cty. of Denver*, No. 16-cv-1747-WJM-MJW, 2017 U.S. Dist. LEXIS 57530, at

*10-11 (D. Colo. Apr. 14, 2017)(internal citations, quotations, punctuation omitted).

Multiple courts have held that three or more specific examples are sufficient to establish a

custom at the motion to dismiss stage. *See Estate of Valverde v. Dodge*, 2017 U.S. Dist. LEXIS

131402, at *13 (D. Colo. Aug. 17, 2017)(relying on examples including "different individuals

and span[ned] a significant time period" in holding that plaintiff had pled a widespread custom);

*Sekerak v. City & County of Denver*, 1 F.Supp.2d 1191, 1199 (D. Colo. 1998); **Ex. 1**, *Cardenas-

Villescas v. Greeley*. Plaintiff easily meets this bar alleging Colorado Springs' customary arrest

without probable cause, its use of excessive force, and its abject failure to reprimand its officers

for violating the constitution. And Defendant's protestations based on the *Metzler* case are

misguided, *see* (Doc. 38) at 5: whether Colorado Springs's previous constitutional violations

were similar to that case has virtually no bearing on whether they are sufficiently similar to the

facts of Plaintiff's case. *Metzler* involved a nearly unique set of facts, including a profoundly

botched CSPD reverse sting operation that led to Mr. Metzler's wrongful arrest. In contrast,

Plaintiff's case involves a much more standard excessive force and wrongful arrest case—one

that is similar to the previous examples pled.

Fundamentally—and contrary to Defendant's argument regarding these examples, (Doc.

38) at 4-6—when a plaintiff provides examples to establish an informal custom, such allegations

must be taken as true when assessing a motion to dismiss. *Estate of Valverde*, 2017 U.S. Dist.

LEXIS at *13 (holding that for purposes of a motion to dismiss the court must "[treat] the specific examples as true" and noting that "[t]he outcome of any of the lawsuits is not relevant to the issue at hand"); **Ex. 1** (While city's argument that "that the list of prior events is irrelevant because there is no evidence that the prior claims had merit… might ultimately be correct, the Complaint alleges the former claims were meritorious and some of the claims settled or resulted in opinions by judges in this district. Taking these allegations as true, some of the prior claims may have had merit, which could establish a widespread practice of excessive force.").[2] At this stage, Plaintiff need not prove that the examples are meritorious; he has already pled that they are, and this Court must take these allegations in the light most favorable to Plaintiff.

Moreover, Plaintiff's allegations regarding the facts of this case alone support Colorado Springs's widespread custom. Colorado Springs officers subjected Plaintiff to "multiple harms": excessive force, the seizure of his phone, search of his person, and the fabricated charges that resulted. *Arakji*, 2015 U.S. Dist. LEXIS 161600, at *16-17. Plaintiff also alleges that these harms "occurred in the open," and that "multiple officials" were involved "in the misconduct." *Id.* Multiple Colorado Springs officers, in a hospital room, in front of Mr. Andersen's family, staff and other patients, "grabbed [Mr. Andersen] by his wrists, threw him on the ground and Tazed him twice." *See* (Doc. 1) ¶¶1-3. "Officers arrested, questioned, and charged him with a crime. The case was later dismissed." *See id.* ¶ 3. These violations by multiple officers, which they undertook with impunity in a very public forum in front of multiple civilian witnesses, strongly evince that their actions were dictated by at least the widespread practice of Colorado Springs.

---

[2] *See also J.M. v. Cty. of Stanislaus*, 2018 U.S. Dist. LEXIS 190855, at *15-18 (E.D. Cal. Nov. 6, 2018) ("The fact that the alleged incidents do not include findings by a competent court that deputies used unconstitutional levels of force is not dispositive, contrary to Defendant's suggestion."); *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 738 (S.D.N.Y. 2012).

Plaintiff alleges "the specific topic of the challenged policy or training inadequacy." *Arakji*, 2015 U.S. Dist. LEXIS 161600, at *16-17. Multiple courts have held that a plaintiff need only plead that the unconstitutional policy exists and that it caused the alleged constitutional violation,[3] reasoning that the usual rule of pleading – that courts are to accept all allegations as true at the motion to dismiss stage – applies in the context of pleading a *Monell* policy, practice, or custom claim. See *Zepeda*, 2012 U.S. Dist. LEXIS 74386, at *14.[4] Plaintiff alleges, with specificity, multiple unconstitutional customs that Colorado Springs has condoned and ratified, (Doc. 1) ¶¶29, 30, 54, 66, 67, 78, 79, 92, 93, 104, 105, 127, and 128) and that these customs caused the violation of his constitutional rights. *Id.*, ¶¶40-43, 68, 80, 94, 106, 107, 117, 129, and 133. Like the informal customs and practices the Tenth Circuit found adequately alleged in

---

[3] "It is not reasonable to expect a plaintiff to have information about other incidents at the pleading stage; instead, a plaintiff should be given the opportunity to develop an evidentiary record to determine whether he can provide support for his claims." *Wilson*, 2009 U.S. Dist. LEXIS 93912, at *8; *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000); *Williams v. City of New York*, 690 F. Supp. 2d 338, 344 (S.D.N.Y. 2010)(finding it unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage); *Mitchell v. Township of Pemberton*, 2010 U.S. Dist. LEXIS 60038, at *6 (D.N.J. June 17, 2010)("[I]nformation concerning a town's customs or policies, the policymakers' motivations behind such policies, or the facts surrounding police department customs, are typically unavailable to an outsider, so that pleading facts to sufficiently advance a racial profiling claim may be impossible without some assistance through litigation tools such as request for admissions, interrogatories, document requests, and depositions.").

[4] *See also Taylor*, LLC, 2011 U.S. Dist. LEXIS 97985, at *4 ("While it is true that plaintiffs do not include in their complaint additional instances of [similar conduct], that omission is not fatal under Iqbal because it is unlikely that plaintiffs would have access to such information at the pleading stage"); *Gooding v. Ketcher*, 838 F. Supp. 2d 1231, 1240-41 (N.D. Okla. 2012)(holding that properly pleading *Monell* liability "required more than 'boilerplate allegations' of a municipal policy, but did not 'deman[d] specific facts that prove the existence of a policy' when a plaintiff would not have access to such information before discovery"); *Wilson*, 2009 U.S. Dist. LEXIS 93912, at *8; *Bartholomew v. Fischl*, 782 F.2d 1148, 1152-53 (3d Cir. 1986)(holding that plaintiff who pleaded "'a single instance of illegality'" had sufficiently "pleaded the existence of an official policy or official conduct sufficient to support municipal liability").

*Martinez v. Winner,* 771 F.2d 424, 434-44 (10th Cir. 1985), Plaintiff sets forth specific, concrete

customs that led to Colorado Springs's violation of his constitutional rights.

Finally, courts have routinely held that a widespread custom or practice may be inferred

from the conduct of a municipality after an incident when no steps are taken to reprimand or

otherwise taken in response to plainly unconstitutional conduct. *See Cordova v. Aragon*, 569

F.3d 1183, 1194 (10th Cir. 2009)(finding that, while a failure to discipline an officer after the

violation could not have caused that particular violation, "[a] failure to investigate or reprimand

might [] cause a future violation by sending a message to officers that such behavior is

tolerated"); *Ortega v. City and Cty. of Denver*, 944 F. Supp. 2d 1033, 1039-40 (D. Colo. 2013)

(holding that plaintiff met its burden of demonstrating a custom of condoning excessive force

where plaintiff produced evidence of "specific instances in which [the department] has failed to

adequately investigate a citizen complaint of excessive force and the implicated officer was not

disciplined"); *Trujillo*, 2017 U.S. Dist. LEXIS 57530, at *10-11.[5]

---

[5] *See also Johnson v. City of Roswell*, 2016 U.S. Dist. LEXIS 109994, at *55-56 (D.N.M. Aug. 18, 2016)(Allegations that city "failed to investigate or take disciplinary actions against subordinate officers or provide any avenue of redress for complaining citizens, despite being aware of the pattern of conduct…presumed true, may create the plausible inference of a widespread unlawful custom…Accordingly, Plaintiffs have sufficiently stated a claim for the existence of an actionable municipal custom."); *Hunter v. City of Sacramento*, 652 F.3d 1225, 1236 (9th Cir. 2011)("[A] custom or practice can be supported by evidence of repeated constitutional violations which went uninvestigated and for which the errant municipal officers went unpunished"); *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992)(Plaintiff may "prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded."); *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986)("Policy or custom may be inferred" if officials "took no steps to reprimand or discharge" wrongdoers, "or if they otherwise failed to admit [their] conduct was in error."); *Howard v. City of Vallejo*, 2013 U.S. Dist. LEXIS 161926, at *4 (E.D. Cal. Nov. 13, 2013)(Allegations of failure to discipline officers for prior acts were "sufficient to give the City fair notice of plaintiff's claim that [it] has a policy of deliberate indifference to a pattern and practice of excessive use of force and other violations of the constitutional rights of citizens by City police officers, particularly minority citizens, that is manifested in its failure to discipline or retrain officers involved in such incidents"); *Bass v. City of Fremont*, 2013 U.S. Dist. LEXIS

This "subsequent acceptance of dangerous recklessness by the policymaker tends to prove his preexisting disposition and policy," and where there is no indication that the municipality took any corrective action, it is reasonable to infer that such conduct is in accordance with a policy. *Grandstaff v. City of Borger, Texas*, 767 F.2d 161, 171 (5th Cir. 1985). Plaintiff has alleged as much, outlining eight times (in addition to the facts here) that Colorado Springs officers have egregiously violated a person's constitutional rights by arresting them without probable cause only to be told that their conduct was consistent with Colorado Spring's policies. (Doc. 1) ¶¶ 45-53. Further evidence of Colorado Springs' customs is the absence of any disciplinary action for its officers' violation of Mr. Andersen's constitutional rights. *Id.* ¶31.

1. **Colorado Springs tacitly approved of its officers engaging in the above-outlined customs.**

As Plaintiff has alleged, Colorado Springs "knew, or should have known, that its employees would fail to use reasonable force, unlawfully seize, search, arrest, and prosecute Mr. Andersen, violating Mr. Andersen's constitutional rights." (Doc. 1, ¶ 37). Moreover, Plaintiff alleged "[a]s made clear by their blatantly unconstitutional actions, the Individual Defendants were not properly trained on the First or Fourth Amendment, or how to conduct a lawful seizure, search, or arrest" and by failing to discipline Defendants it effectively *trains* them that such constitutional violations are acceptable. *See* (Doc. 1) ¶¶ 31-34.  Plaintiff also alleged that

---

32590, at *4 (N.D. Cal. Mar. 8, 2013) (Allegations of officers "engaged in a pattern and practice of using unnecessary and excessive force and falsely reporting crimes, and that the municipal entities demonstrated deliberate indifference to this pattern and practice of constitutional violations" were "plausible and ... sufficient to give the municipal entities notice of the specific policies, customs, and practices that are alleged to have caused the deprivation of Bass's rights"); *Wise v. Nordell*, 2012 U.S. Dist. LEXIS 128656, at *9 (S.D. Cal. Sept. 10, 2012) (Taking as true allegations that official had violated Constitution for years, and that the county condoned his conduct, plaintiffs had sufficiently alleged a claim for municipal liability); *East v. City of Richmond*, 2010 U.S. Dist. LEXIS 117367, at *4 (N.D. Cal. Nov. 3, 2010) (Allegations that chief "knew of other, repeated acts of misconduct by [officers], but yet, failed to take any corrective action against [them]…are sufficient to state a plausible claim for liability under Monell.")

Colorado Springs has "a history of making arrests without probable cause—an issue that should have long since been addressed. *Id.* ¶ 44. "Where plaintiff has alleged numerous instances of prior misconduct, similar to the misconduct alleged here, the Court can plausibly infer that the [municipality] had actual or constructive knowledge of the risk that the defendant officers would violate the constitutional rights of its citizens in this manner." *McComb v. Ross*, 202 F. Supp. 3d 11, 18 (D.D.C. 2016) (emphasis removed); *see Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 773 (10th Cir. 2013).

### 2. Colorado Springs' custom caused its violation of Mr. Andersen's constitutional rights.

Plaintiff alleges Colorado Springs' policies, customs, or practices in failing to properly train and supervise their employees were the moving force and proximate cause of the violation to Mr. Andersen's constitutional rights. (Doc. 1) ¶¶ 40-43. The Complaint describes multiple, specific instances in which Colorado Springs officers arrested persons without probable cause and in some instances applied excessive force. Plaintiff alleges that these Colorado Springs officers, acting consistent with and pursuant to the challenged training and customs: (1) unlawfully arrested and used force against Mr. Andersen because he was not immediately compliant with their unlawful orders and in retaliation for him exercising his First Amendment rights, (2) unlawfully arrested and used this force in accordance with a well-established custom of using heightened force against people where there is no probable cause, and (3) unlawfully charged Mr. Andersen criminally based on the reinforced customs and training of Colorado Springs. *See generally* (Doc. 1). Plaintiff also adequately alleges Colorado Springs consistently failed to discipline or retrain offending deputies. *Id.*, ¶¶ 31-36. The incidents are described with sufficient detail to put Colorado Springs on notice of the alleged policies connecting them.

### B. Colorado Springs' abject failure to adequately train, supervise, and discipline its officers caused the violation of Mr. Andersen's constitutional rights.

The inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. To establish a city's liability under 42 U.S.C. § 1983 for inadequate training of police officers in the use of force, a plaintiff must show (1) the officers exceeded constitutional limitations; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.

*Allen v. Muskogee*, 119 F.3d 837, 841-42 (10th Cir. 1997). Plaintiff has adequately alleged that the individual Defendants violated his constitutional rights, as well as the other elements of a failure to train and supervise claim. *See generally* (Doc. 1) & ¶¶ 31-34.

**1. The individual Defendants' unconstitutional conduct occurred under usual and expected circumstances that Colorado Springs knew its officers would encounter.**

Mr. Andersen alleges numerous examples of Colorado Springs officers: (1) arresting, charging, and/or brutalizing, people where there is no probable cause; (2) fabricating, tampering and/or ignoring evidence to justify an unlawful arrest; and (3) never being reprimanded or disciplined for their unconstitutional conduct. *Cordova*, 569 F.3d at 1194 ("A failure to investigate or reprimand might also cause a future violation by sending a message to officers that such behavior is tolerated."). Plaintiff does not assert *Monell* liability based on an isolated encounter; Colorado Springs is liable because it repeatedly chooses not to train, discipline, or further supervise any of the Colorado Springs officers who illegally inflict these constitutional violations on Mr. Andersen and others. *See Brown v. Gray*, 227 F.3d 1278, 1286 (10th Cir. 2000); *Moore v. Miller*, 2014 U.S. Dist. LEXIS 72452, *17-18 (D. Colo. May 28, 2014).

**2. Colorado Springs is deliberately indifferent towards the persons with whom its officers come into contact.**

Colorado Springs's failure to properly supervise and discipline its officers demonstrates deliberate indifference "as to its known or obvious consequences" toward persons with whom

Colorado Springs officers come into contact. *See Brown*, 520 U.S at 407.

> [Colorado Springs] policymakers know to a "moral certainty" that police officers will be required to use force during some arrests.… Accordingly, the need to train officers in the constitutional limitations on the use of force, can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.

*Moore*, 2014 U.S. Dist. LEXIS 72452, at *24. Plaintiff clearly alleges that Colorado Springs consciously chose to disregard the risk of harm despite having actual or constructive notice "that its action or failure to act is substantially certain to result in a constitutional violation[.]" *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). Indeed, the Complaint, which must be accepted as true, alleges just that. (Doc. 1) ¶¶ 38, 66, 78, 92, 104, and 128. *See Albers v. Jenison*, 2018 U.S. Dist. LEXIS 183827, at *33-37 (D. Kan. Oct. 26, 2018). Moreover,

> [t]he deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct.

*Carr v. Castle*, 337 F.3d 1221, 1229 (10th Cir. 2003). Here, the multiple officers involved in brutalizing Mr. Andersen and Colorado Springs's multiple prior constitutional violations constitute a pattern of unreasonable seizures, excessive force, and First Amendment retaliatory policing. (Doc. 1) ¶¶ 15-26, 45-52.

### 3. Colorado Springs's failure to adequately train, supervise, and discipline its officers caused Plaintiff's injuries.

Plaintiff alleges a direct causal link between Colorado Springs's failure to train, supervise, investigate, and discipline its officers regarding appropriate uses of force, searches, First Amendment retaliation, and the individual Defendants' violations of Plaintiff's constitutional rights. (Doc. 1) ¶¶ 37, 38, 40-43. Colorado Springs officers knew, based on Colorado Springs's lack of supervision or discipline for constitutional violations, that they had extraordinarily wide latitude (exceeding the scope of the law) in deciding when to detain

individuals against their will, without probable cause, and the level of force to use against someone like Plaintiff. *Id*. When all plausible inferences are drawn in Plaintiff's favor, it follows that the constitutional harms would have been avoided had the individual Defendants been supervised or known that they would be subject to discipline should they violate the constitution. The individual Defendants' anticipated admissions that they acted pursuant to their training will create a jury question as to Colorado Springs's liability, rendering its dismissal inappropriate at this very early stage in the case before any Defendants have even been deposed. Plaintiff alleges that the conduct of the individual Defendants "constituted implementation of a custom or policy that violated the rights of Plaintiff." *Johnson v. City of Roswell*, 2016 U.S. Dist. LEXIS 109994, at *61-62 (D.N.M. Aug. 18, 2016); (Doc. 1) ¶¶66-67, 78-79, 92-93, 104-105, 127-128. The inclusion of such allegations is sufficient "to demonstrate a causal link between the officers' purportedly improper training and the alleged constitutional deprivation." *Id.*

## IV. CONCLUSION

Plaintiff respectfully requests that this Court deny the City of Colorado Springs' Motion to Dismiss.

Respectfully submitted this 3rd day of March 2021.

*s/David A. Lane*
David A. Lane
Reid Allison
Tyrone Glover
KILLMER, LANE & NEWMAN, LLP
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
(303) 571-1001 facsimile
dlane@kln-law.com
rallison@kln-law.com
tglover@kln-law.com

## CERTIFICATE OF SERVICE

I certify that on this 3rd day of March 2021 I filed the foregoing via CM/ECF, and CM/ECF will generate a Notice of Electronic Filing to the following:

Eric Ziporin
Courtney Kramer
Senter Goldfarb & Rice, LLC
3900 E. Mexico Ave., Ste 700
Denver, CO 80210
303-320-0509
eziporin@sgrllc.com
ckramer@sgrllc.com
Attorneys for Teller County Defendants

Ryan Doherty
Office of the City Attorney
30 S. Nevada St. Ste 501
Colorado Springs, CO 80903
719-385-5909
Ryan.doherty@coloradosprings.gov
Attorney for Colorado Springs

Gordon Vaughan
Vaughan & DeMuro
111 S. Tejon St., Ste 545
Colorado Springs, CO 80903
709-578-5500
gvaughan@vaughandemuro.com
Attorney for CO Springs Officer Defendants


                                        s/ Jamie Akard
                                        Paralegal