IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   17-cv-01675-WYD-MJW

LORENZO CARDENAS-VILLESCAS,
GUADALUPE CARDENAS,
GUADALUPE CARDENAS JR.,
ESTEFANIA CARDENAS,
RAQUEL CARDENAS,
I.C., and
J.P.C.,

        Plaintiffs,

v.

CITY OF GREELEY, COLORADO, a municipality,
ZACHARY ST AUBYN, in his individual capacity,
CHRISTOPHER BIDWELL, in his individual capacity,
SAMANTHA BROWN, in her individual capacity,
SETH LUEDTKE, in his individual capacity,
JOHN MCNERNEY, in his individual capacity,
VALENTIN OLIVEROS, in his individual capacity,
BRETT RADIN, in his individual capacity, and
BRYN REID, in his individual capacity,

        Defendants.

---

## ORDER

---

      Plaintiffs filed this civil rights and torts action against Defendants, the City of

Greeley ("Greeley") and individual police officers Zachary St. Aubyn, Christopher

Bidwell, Samantha Brown, Seth Luedtke, John McNerney, Valentin Oliveros, Brett

Radin, and Bryn Reid.  The case arises out of an altercation that occurred at Plaintiffs'

home in Greeley.  Plaintiffs' Complaint alleges the individual officers violated the Fourth

Amendment by unlawfully entering the house, using excessive force, failing to intervene

1

EXHIBIT 1

on the use of excessive force, and making unlawful arrests; violated the First

Amendment through retaliation; and caused intentional infliction of emotional distress.

Plaintiffs' Complaint also alleges the City of Greeley maintained unconstitutional policies

or customs in violation of the Fourth Amendment. The matter is now before the Court

on Defendants' Motion to Dismiss.[1] (ECF No. 12). For the reasons discussed below,

Defendants' Motion to Dismiss is granted in part and denied in part.

## I.    FACTUAL BACKGROUND

In the early morning of July 12, 2015, Plaintiffs, Lorenzo Cardenas-Villescas,

Guadalupe Cardenas, Guadalupe Cardenas, Jr., Estefania Cardenas, Raquel

Cardenas, I.C., and J.P.C., returned to the family's house from a wedding. When they

returned, Lorenzo Cardenas, who was also at the home, started a heated argument with

his wife. Guadalupe Cardenas became stressed, which exacerbated her diabetes to

the point that she asked I.C., her son, to call 911. Guadalupe Cardenas told I.C. to call

911 to request medical attention for her and to send police to the house to break up the

argument between Lorenzo Cardenas and his wife.

I.C. went to the front yard and did as his mother instructed. When I.C. was on

the phone with the 911 dispatcher, he told the dispatcher that his primary reason for

calling was to seek medical assistance for his mother. He also informed the dispatcher

about the argument and stated that Lorenzo Cardenas might have a gun. Lorenzo

Cardenas stopped arguing with his wife after I.C. called 911.

---

[1] On September 6, 2017 Magistrate Judge Watanabe granted Defendants' Motion to Stay discovery and all other pretrial proceedings pending the determination of Defendants' Motion to Dismiss. (ECF No. 15). Plaintiffs objected to the stay, and I overruled the objection on January 25, 2018. (ECF No. 24).

EXHIBIT 1

Soon after I.C. hung up, nine Greeley police offers arrived at the house.[2]  The officers approached the house with their firearms drawn.  They attempted to open the front door without knocking or announcing their presence, but the front door was locked.

As the officers tried to get into the home, Raquel Cardenas happened to open the door from the inside.  The officers told Raquel Cardenas to stand next to I.C. who had been outside since calling 911.  Officer Brown detained Raquel Cardenas and I.C. outside by taking out her Taser and threatening to use it.

Lorenzo Cardenas met the officers at the door and denied them permission to enter the house without a warrant.  Seven officers, Officer St. Aubyn, Officer Bidwell, Officer Luedtke, Officer McNerney, Officer Oliveros, Officer Radin, and Officer Reid, ignored Lorenzo Cardenas and went inside.[3]  Once inside, Lorenzo Cardenas became agitated and a fight broke out between him and some of the officers.

When he heard the commotion, Lorenzo Cardenas-Villescas came out of the bathroom to see what was happening.  As soon as he stepped out of the bathroom, Officer St. Aubyn pushed him against the wall and Officers St. Aubyn and Oliveros pinned his arms above his head.  Officer Luedtke hit Lorenzo Cardenas-Villescas in the chest, mid-section, and right leg with his baton.  Then one of the seven officers struck Lorenzo Cardenas-Villescas on his left side with the butt of a rifle.  Lorenzo Cardenas-Villescas eventually fell to the floor where he laid helplessly on his stomach.  While he

---

[2] Only eight of the Greeley police officers are named as defendants.

[3] The Complaint does not usually specify which officer committed which acts inside the home.  Rather, the Complaint lumps all of the seven officers' alleged conduct together.  Because the Complaint does not distinguish between the conduct of Officers St. Aubyn, Bidwell, Luedtke, McNerney, Oliveros, Radin, and Reid, I will refer to them as the "seven officers" for the remainder of this Order unless the Complaint makes clear that a particular officer engaged in a specific offense.

EXHIBIT 1

was lying on his stomach, one of the seven officers put him in handcuffs and hit him several more times.  None of the seven officers attempted to intervene to prevent the assault on Lorenzo Cardenas-Villescas.

J.P.C., Lorenzo Cardenas-Villescas' three-year-old grandson, was just a few feet away from where the seven officers beat his grandfather.  Guadalupe Cardenas, J.P.C.'s grandmother, and Guadalupe Cardenas, Jr., J.P.C.'s mother, begged the seven officers to remove J.P.C. from the room out of concern that J.P.C. would be traumatized from witnessing the officers scuffle with his grandfather.  The seven officers refused, and said that J.P.C. would be fine.  As Guadalupe Cardenas and Guadalupe Cardenas, Jr. continued to demand that J.P.C. be taken away and that the officers stop assaulting Lorenzo Cardenas-Villescas, one of the seven officers struck both of them with a baton and pulled Guadalupe Cardenas, Jr. by her hair.  Since witnessing this event, J.P.C. now wets himself at night and has regular night terrors, and difficulty communicating.

Estefania Cardenas attempted to record the skirmish in the house on her phone. One of the seven officers ordered her to put her phone down, threatened to arrest her if she tried to record anything else, and forced her outside.  Officer Brown then grouped Estefania Cardenas with I.C. and Raquel Cardenas and detained them by threatening to use her Taser.

After the incident, Lorenzo Cardenas-Villescas was formally charged with assault, resisting arrest, obstructing police, and assault of a peace officer.

Plaintiffs assert the following eleven claims for relief:

1.  Fourth Amendment (Unlawful Entry) by all Plaintiffs against the seven officers

4

EXHIBIT 1

2. Fourth Amendment (Excessive Force) by Lorenzo Cardenas-Villescas against the seven officers and Greeley

3. Fourth Amendment (Failure to Intervene) by Plaintiff Lorenzo Cardenas-Villescas against the seven officers

4. Fourth Amendment (Unlawful Seizure) by Plaintiff Lorenzo Cardenas-Villescas against the seven officers

5. Fourth Amendment (Excessive Force) by Guadalupe Cardenas against the seven officers and Greeley

6. Fourth Amendment (Excessive Force) by Guadalupe Cardenas, Jr. against the seven officers and Greeley

7. Fourth Amendment (Unlawful Seizure) by Estefania Cardenas against Officer Brown

8. Fourth Amendment (Unlawful Seizure) by Raquel Cardenas against Officer Brown

9. Fourth Amendment (Unlawful Seizure) by I.C. against Officer Brown

10. First Amendment Retaliation by Estefania Cardenas against the seven officers

11. Intentional Infliction of Emotional Distress by J.P.C. against the seven officers

The First and Fourth Amendment claims are brought pursuant to 42 U.S.C. § 1983. For purposes of the analysis below, I combine substantively similar claims.

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Court's inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544)).

5

EXHIBIT 1

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). Furthermore, conclusory allegations are "not entitled to the assumption of truth." *Id.* at 1950.

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248. Additionally, the Tenth Circuit has instructed that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context" and that whether a defendant receives fair notice "depends on the type of case." *Id.*

6

EXHIBIT 1

III.    **ANALYSIS**

In general, the individual officers argue Plaintiffs have failed to state a claim under the First and Fourth Amendments because they are protected by qualified immunity.  Greeley contends the Complaint fails to state a claim against it under the Fourth Amendment for failing to train its officers and for maintaining a widespread practice of the use of excessive force.  Finally, the individual officers also argue J.P.C. has not stated a plausible claim for intentional infliction of emotional distress.

### A. First and Fourth Amendment Claims and Qualified Immunity

Qualified immunity "is an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

When a defendant asserts qualified immunity, "the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009) (quotation omitted).  Thus, "[q]ualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Id.* (quotation omitted).  If the plaintiff fails to establish either of these prongs, the defendant prevails on its defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134-35 (10th Cir. 2016) (internal citations and

7

EXHIBIT 1

quotations omitted).  The court has "discretion to decide which of the two prongs should be decided first in light of the circumstances in the particular case at hand." *Id.* at 1135.

The determination of whether a violation occurred under the first prong of the qualified immunity analysis turns on the substantive law regarding that right.  *See Casey v. City of Fed. Heights*, 509 F.3d 1278, 1282-83 (10th Cir. 2007). Under the second prong, "[a] right is clearly established . . . 'when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains.'" *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196-97 (10th Cir. 2010)).  "A previous decision need not be materially factually similar or identical to the present case; instead, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (internal quotations marks omitted).  Nonetheless, courts should "not define clearly established law at a high level of generality," but must ask "whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (internal quotation marks omitted).  "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).  In determining whether the constitutional right was clearly established, the court construes the facts in the light most favorable to the plaintiff as the nonmoving party.  *Thomson*, 584 F.3d at 1312.

8

EXHIBIT 1

1. **First Claim—Fourth Amendment (Unlawful Entry) by All Plaintiffs Against the Seven Officers**

The seven officers argue Plaintiffs have failed to state a claim for an unlawful entry in violation of the Fourth Amendment because exigent circumstances justified the warrantless entry into the home. Plaintiffs respond that there were not exigent circumstances because the officers did not have an objectively reasonable basis to believe there was an immediate need to protect the anyone's life or safety and the manner and scope of the search was unreasonable.

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (internal quotation marks omitted). This presumption may be overcome when "the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 394 (1978). An exigent circumstance excusing the warrant requirement includes the "emergency aid" exception, under which "officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Brigham City, Utah*, 547 U.S. at 403. *See, e.g.*, *U.S. v. Dupree*, 540 Fed. App'x 884, 890 (10th Cir. 2014).

Under the emergency aid exception, officers may enter a home without a warrant when "(1) the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search is reasonable." *U.S. v. Najar*, 451 F.3d 710, 718 (10th

9

EXHIBIT 1

Cir. 2006). The government has the burden to meet the two-part test to prove the exigency exception to the warrant requirement applies. *Id.* at 717.

The allegations in the Complaint demonstrate that the officers had "an objectively reasonable basis to believe" there was an immediate need to enter the home to protect the lives of others. *Id.* at 718. I.C. told the 911 dispatcher that his mother needed medical assistance, the primary purpose of his call to 911 was to obtain medical attention for his mother, Lorenzo Cardenas was involved in a verbal argument with his wife, and Lorenzo Cardenas may have had a gun. The Tenth Circuit has often held that phone calls to 911 detailing or implying a medical or safety emergency suffice to establish the first prong of an exigent circumstance. *See, e.g.*, *id.* at 719 (affirming denial of motion to suppress evidence following police entry where 911 call was placed from residence, caller hung up, return calls to 911 by dispatcher went unanswered, and occupant denied having called 911); *id.* ("911 calls are the predominant means of communicating emergency situations") (internal quotation marks omitted); *West v. Keef*, 479 F.3d 757, 759 (10th Cir. 2007) (twelve-year-old call to 911 stating his mother was "going crazy," "trying to kill herself," and "trying to cut herself with a knife" was sufficient to justify warrantless entry). Similarly, information regarding a domestic argument supported by additional facts may demonstrate an exigency. *Cf. Storey v. Taylor*, 696 F.3d 987, 994 (10th Cir. 2012).

But even though the first prong of an exigent circumstance has been met, the second prong has not. When considering whether the manner and scope of a search was reasonable, the Tenth Circuit guides courts to consider "proximity"—the area near

10

EXHIBIT 1

the person in need of emergency aid–and "accessibility"—the locations in the area that might have been accessible to the person in need of emergency aid. *Kendall v. Olsen*, -- Fed. App'x --, at *3 (10th Cir. 2018). A search that is reasonable in manner and scope confines itself "only [to] those places inside the home where an emergency would reasonably be associated." *Najar*, 451 F.3d at 720; *see also Dupree*, 540 Fed. App'x at 892 (holding searches inside and outside of a home were reasonable in manner and scope when the search was "proportionate" to the exigency and was limited to looking for people in the house); *U.S. v. Stotts*, 346 Fed. App'x 356, 359 (10th Cir. 2009) (holding search for weapon was reasonable when it "was confined to [defendant's] person and involved no other intrusion into his privacy").

The Complaint alleges facts that plausibly demonstrate the manner and scope of the seven officers' search was not reasonable. At the time they entered the home, the seven officers had an objectively reasonable basis to believe there were two emergencies: Guadalupe Cardenas' medical needs and the argument between Lorenzo Cardenas and his wife. Thus, their warrantless search needed to be tailored to these circumstances. *See Mincey*, 437 U.S. at 393 ("[A] warrantless search must be strictly circumscribed by the exigencies which justify its initiation." (internal quotation marks omitted)). The officers' search failed to be so narrow.

Upon arrival, the officers did not knock on the door or announce their presence. *Cf. Armijo ex rel. Armijo Sanchez v. Peterson*, 601 F.3d 1065, 1069, 1070-72 (10th Cir. 2010) (holding scope of search was reasonable when officers responding to a bomb threat knocked on door of home for two to three minutes and shouted to get resident's

11

EXHIBIT 1

attention).  When Raquel Cardenas opened the door, the seven officers had their

firearms drawn, even though part of the exigent circumstance involved medical

attention, which would not have required any use of firearms.

Although the Complaint fails to specify the scope of the search once the seven

officers walked inside the home, it is plausible that the scope exceeded the need to

attend to medical treatment and quell the argument.  As the Complaint alleges, the

seven officers "had no specialized training to treat Guadalupe Cardenas' particular

medical condition" and "never made an attempt to provide any medical assistance to

Guadalupe Cardenas."  (ECF No. 9 at ¶¶ 54, 90).  By not attempting to provide medical

assistance to Guadalupe Cardenas, the seven officers' search could not have been

related to meeting the need of the exigent circumstance of treating her medical needs.

Further, shortly after they entered the house, the seven officers began using

excessive force on three of the residents even though at the time they entered the

house the argument between Lorenzo Cardenas and his wife was over.  This level of

force renders both the manner and the scope of the officers' search unreasonable.  *See*

*Jones v. Lehmkuhl*, 2013 WL 6728951, at *11 (D. Colo. Dec. 20, 2013) (citing *Los*

*Angeles Cnty. v. Rettele*, 550 U.S. 609, 614 (2007)) ("The Fourth Amendment prohibits

unreasonable actions in executing a search warrant, including the use of excessive

force or restraints that cause unnecessary pain.").

Having determined that the seven officers violated Plaintiffs' constitutional right to

be free from a warrantless search by searching the home absent exigent

12

EXHIBIT 1

circumstances, the question becomes whether this right was clearly established at the time of the search. *Thomson*, 584 F.3d at 1312.

When the seven officers searched the home, "it was clearly established that a police officer cannot enter and search a home without a warrant and absent exigent circumstances." *Lundstrom v. Romero*, 616 F.3d 1108, 1129 (10th Cir. 2010). The seven officers do not challenge this recitation of the law. Instead, the seven officers rely exclusively on their argument that they did not violate Plaintiffs' constitutional rights in searching the home and believed "it [was] unnecessary to address the second factor, of whether the 'right allegedly violated [was] clearly established at the time of the conduct at issue.'" (ECF No. 12 at 16). Absent argument from the seven officers, and based on the allegations in the Complaint, Plaintiffs have met their burden to show the actions in question violated Plaintiffs' clearly established constitutional right to be free from unreasonable searches.

Accordingly, Defendants' motion to dismiss Plaintiffs' First Claim against the seven officers is denied and Defendants' request for qualified immunity is also denied.

**2. Second, Fifth, and Sixth Claims—Fourth Amendment (Excessive Force) by Lorenzo Cardenas-Villescas, Guadalupe Cardenas, and Guadalupe Cardenas, Jr. Against the Seven Officers**

The seven officers argue Lorenzo Cardenas-Villescas, Guadalupe Cardenas, and Guadalupe Cardenas, Jr. have failed to state a claim of excessive force because the use of force against them was not unreasonable and none of these Plaintiffs sustained serious injuries. Plaintiffs respond that the force was excessive because the officers hit them after they were compliant and caused injuries.

13

EXHIBIT 1

"Police officers can violate [the Fourth Amendment] by employing excessive force when making a seizure or an arrest." *Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1248 (10th Cir. 2013). The central question in analyzing whether the force used was excessive is "'whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Thomson*, 584 F.3d at 1313 (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). "Reasonableness is evaluated under a totality of the circumstances approach, which requires that [the court] consider and balance the following factors: '[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham*, 490 U.S. at 396). Regarding the first reasonableness factor, a court assumes that the arrest or detention was appropriate and evaluates whether the force used "would have been reasonably necessary if the arrest of the detention were warranted." *Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007).

If the level of force violated the Fourth Amendment, the Tenth Circuit has approved "a sliding scale" to assess whether the conduct violated a clearly established constitutional right: "'[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation.'" *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012) (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004)).

14

EXHIBIT 1

Considering the three factors announced in *Graham*, it is plausible that the seven officers used excessive force against Lorenzo Cardenas-Villescas, Guadalupe Cardenas, and Guadalupe Cardenas, Jr. which violated their clearly established constitutional rights.

With respect to Lorenzo Cardenas-Villescas, the Complaint alleges a struggle ensued between Lorenzo Cardenas-Villescas and the seven officers after he left the bathroom. Because Lorenzo Cardenas-Villescas was ultimately charged with assault, resisting arrest, obstructing police, and assault of a peace officer, and assuming these charges were valid, the officers' use of force on him immediately after he exited the bathroom may have been reasonable. *See Romero v. Story*, 672 F.3d 880, 890 (10th Cir. 2012) ("analyz[ing] the excessive force inquiry under the assumption the arrest was lawful"). However, the Complaint also alleges that Lorenzo Cardenas-Villescas fell to the floor "helplessly" after his fight with the seven officers. (ECF No. 9 at ¶ 75). Once the officers handcuffed him and held him on his stomach, they continued to strike him "several additional times." (ECF No. 9 at ¶ 84). At the moment when Lorenzo Cardenas-Villescas laid on the floor in handcuffs, the *Graham* factors weigh in his favor because he could not have posed an immediate threat or actively resisted arrest as he was "helpless," handcuffed, and face down. *See McCoy v. Meyers*, 887 F.3d 1034, 1051 (10th Cir. 2018) ("Our cases have consistently concluded that a suspect's initial resistance does not justify the continuation of force once the resistance ceases.").

The seven officers' treatment of Lorenzo Cardenas-Villescas while he lay on the ground also violated the Fourth Amendment based on the Complaint's allegations. The

EXHIBIT 1

Tenth Circuit has held "the gratuitous use of force against a person who is not resisting arrest violates the Fourth Amendment." *Herrara v. Bernalillo Cty. Bd. of Cnty. Comm'rs*, 361 Fed. App'x 924, 929 (10th Cir. 2010). Three cases from the Tenth Circuit make clear that as of 2011, "the use of force on effectively subdued individuals violates the Fourth Amendment." *McCoy*, 887 F.3d at 1038, 1052 (citing *Weigel v. Broad*, 544 F.3d 1143 (10th Cir. 2008); *Casey v. City of Fed. Heights*, 509 F.3d 1278 (10th Cir. 2007); *Dixon v. Richer*, 922 F.2d 1456 (10th Cir. 1991)). While none of these three cases is factually identical to the allegations in the Complaint, "[t]he cases all share the decisive factual circumstance that the defendants used excessive force on the plaintiff when he was already subdued" and a reasonable officer in the seven officers' position should have known this behavior violated the Fourth Amendment. *Id.* at 1052-53.

The *Graham* factors weigh heavily in favor of Guadalupe Cardenas and Guadalupe Cardenas, Jr. According to the Complaint, neither Plaintiff committed a crime, posed a risk to anyone, or actively resisted arrest. Instead, these Plaintiffs justifiably requested that one of the officers remove J.P.C. from the scene of the struggle with Lorenzo Cardenas-Villescas. This request, coupled with these Plaintiffs' insistence that the officers stop hitting Lorenzo Cardenas-Villescas, prompted one of the seven officers to hit them with batons and pull Guadalupe Cardenas, Jr. by her hair. The seven officers' force against Guadalupe Cardenas and Guadalupe Cardenas, Jr., based on the Complaint's allegations, violated the Fourth Amendment as well. The three *Graham* factors favor these Plaintiffs so obviously that a specific case prohibiting this conduct is unnecessary because "a reasonable officer would know based on his

16

EXHIBIT 1

training that the force used was not justified." *Morris*, 672 F.3d at 1198. *Cf. Quinn v. Young*, 780 F.3d 998, 1014 (10th Cir. 2015) (declining to follow the slide scale in *Morris* where official's violations were not "patent and egregious").

As to the seven officers' argument that the injuries these Plaintiffs sustained were not sufficiently serious, I disagree. The allegations that the seven officers hit Lorenzo Cardenas-Villescas while he was handcuffed and lying on the ground, hit Guadalupe Cardenas and Guadalupe Cardenas, Jr. with a baton, and forcibly pulled Guadalupe Cardenas, Jr.'s hair make it quite plausible that Lorenzo Cardenas-Villescas, Guadalupe Cardenas, and Guadalupe Cardenas, Jr. sustained serious injuries.

Accordingly, Defendants' motion to dismiss Plaintiffs' Second, Fifth, and Sixth Claims against the seven officers is denied and Defendants' request for qualified immunity is also denied.

### 3. Third Claim—Fourth Amendment (Failure to Intervene) by Lorenzo Cardenas-Villescas Against the Seven Officers

The seven officers' motion to dismiss "seek[s] dismissal of the Third Claim for Relief - for failure of the officers to intervene -based upon the fact that there has not been a meritorious allegation that [Plaintiff Lorenzo Cardenas-Villescas'] constitutional rights have been violated." (ECF No. 20 at 4). The seven officers do not raise any other defense to Lorenzo Cardenas-Villescas' failure to intervene claim. As previously discussed, Lorenzo Cardenas-Villescas has stated a plausible excessive force claim under the Fourth Amendment. The Complaint also alleges sufficient facts to establish a plausible claim for relief under the theory that the officers failed to intervene. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) ("An officer who fails to

17

EXHIBIT 1

intervene to prevent a fellow officer's excessive use of force may be liable under §
1983."); *Martinez v. City and Cty. of Denver*, 2013 WL 5366980 (D. Colo. Sept. 25,
2013) (listing four elements to establish a constitutional violation under a failure to
intervene theory).  It was also clearly established that failing to intervene to prevent the
excessive use of force violated the Fourth Amendment.  *See Estate of Booker v.
Gomez*, 745 F.3d 405, 422 (10th Cir. 2014).  Accordingly, Defendants' motion to
dismiss Plaintiffs' Third Claim against the seven officers is denied and Defendants'
request for qualified immunity is also denied.

### 4. Fourth Claim—Fourth Amendment (Unlawful Seizure) by Lorenzo Cardenas-Villescas Against the Seven Officers

In a heading in their motion to dismiss, the seven officers mention the "Fourth
Claim[] for Relief Should be Dismissed Without Leave to Amend."  (ECF No. 12 at 16).
Lorenzo Cardenas-Villescas argues in his response that the officers have waived this
argument by "fail[ing] to develop *any argument* pertaining to this claim.  (ECF No. 19 at
17).  The entirety of the officers' substantive reply is

> Lorenzo Sr. was arrested for assault, resisting arrest obstructing police,
> and assault of a peace officer. . . . Each officer, however, has qualified
> immunity for any reasonable, even if mistaken, belief that there was
> probable cause to arrest Lorenzo Sr. in order to succeed on this claim.
> *Anderson v. Creighton*, 483 U.S. [635, 641 (1987)].

(ECF No. 20 at 4).  The seven officers also criticize the Complaint for making
claims "disjunctively" against them because the use of the disjunctive fails to show "that
each individual Defendant completely lacked a reasonable basis for the actions that
each, individual, took inside the house."  (*Id.* at 5).

EXHIBIT 1

Regarding the seven officers' substantive argument as to why the Fourth Claim should be dismissed, I find their argument so inadequate as to waive their Rule 12(b)(6) defense. *See Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874, 880 n.9 (10th Cir. 1997) (holding that party who noted issue and made "several broad, conclusory statements" on appeal waived argument for failure to develop); *Grimaldo v. Reno*, 189 F.R.D. 617, 619 (D. Colo. 1999). After Lorenzo Cardenas-Villescas put the seven officers on notice that their motion to dismiss the Fourth Claim was deficient, they could only muster a tautological argument in reply: the officers had probable cause to arrest Lorenzo Cardenas-Villescas because he was arrested. The seven officers then only cite *Anderson v. Creighton*, 483 U.S. 635, 641 (1987) for the general proposition that qualified immunity may attach to officers who reasonably but mistakenly believe that probable cause to arrest is present. By failing to properly support their argument with specific reasons or precedent, the officers have waived their substantive objection to the Fourth Claim in their motion to dismiss.

Regarding the officers' disjunctive argument, I find this argument without merit. Plaintiffs' Complaint frequently lists the officers who have allegedly injured the Plaintiffs and uses the conjunctive "and/or" before the last name in the list. *See Den Hartog v. Wasatch Acad.*, 129 F.3d 1076, 1090 (10th Cir. 1997) (noting "and/or" is conjunctive). For example the Complaint alleges "Defendant St. Aubyn, Bidwell, Luedtke, McNerney, Oliveros, Radin and/or Reid's actions in arresting and otherwise seizing Plaintiff were objectively unreasonable." (ECF No. 9 at ¶ 150). As this case advances, it may be possible to winnow specific officers from specific claims. At this stage, however, it is

19

EXHIBIT 1

equally plausible that one or all of the seven officers participated in the unlawful seizure of Lorenzo Cardenas-Villescas.  Accordingly, Defendants' motion to dismiss Plaintiffs' Fourth Claim against the seven officers is denied and Defendants' request for qualified immunity is also denied.

### 5. Seventh, Eighth, and Ninth Claims—Fourth Amendment (Unlawful Seizure) by Estefania Cardenas, Raquel Cardenas, and I.C. against Officer Brown

Officer Brown argues Estefania Cardenas, Raquel Cardenas, and I.C. failed to state a claim against her because her temporary detention of these Plaintiffs through the threatened use of her Taser did not constitute an unreasonable seizure and did not violate clearly established constitutional law.  The three Plaintiffs concede that the act of detaining them did not violate their right to be free from unlawful seizures because officers have an interest in securing the area near an investigation.  (ECF No. 19 at 17-18).  Instead, Plaintiffs object to the manner in which they were detained and contend their arrest was unreasonable because Officer Brown held them through the threatened use of her Taser even though they did not pose any risk of harm.

I find Officer Brown is protected by qualified immunity because her manner of detaining these Plaintiffs did not violate a clearly established constitutional right.  These Plaintiffs briefly address this aspect of Officer Brown's qualified immunity in a footnote in their response.  They argue that Officer Brown's conduct violated an obvious constitutional right because *Muehler v. Mena*, 544 U.S. 93 (2005) "clearly establish[ed] that when detaining an otherwise innocent individual to secure the area around a search or investigation, the manner of the detention must be reasonable."  (ECF No. 19 at 19).  This argument is unpersuasive.

20

EXHIBIT 1

In *Muehler*, the Supreme Court reiterated that seizures must be reasonable, but found that the seizure in that case, which involved a SWAT team handcuffing the plaintiff at gunpoint and one or two officers guarding her at gun point while she remained handcuffed, was reasonable. 544 U.S. at 96-100. *Muehler* is not even close to the specific context of the seizure in this case. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) ("The general proposition, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established."). Officer Brown's detention of these Plaintiffs was not so "patent and egregious," *Quinn*, 780 F.3d at 1014, to allow departure from the usual admonition not to define "clearly established law at a high level of generality," *Mullenix*, 136 S.Ct. at 308. Therefore, these Plaintiffs were required to point to a specific case which would have clearly informed Officer Brown that seizing them through the threatened use of a Taser violated a constitutional right. Plaintiffs have failed to make this more specific showing and have not cited any controlling authority to support that Officer Brown's conduct clearly violated a constitutional rule.

Because Plaintiffs have not met their burden to prove Officer Brown violated a clearly established constitutional right, no further analysis is needed. *See Youbyoung Park v. Gaitan*, 680 Fed. App'x 724, 741 (10th Cir. 2017) (dismissing First Amendment claim on qualified immunity grounds when the plaintiff failed to demonstrate the defendant violated clearly established First Amendment rights). However, I also note that the law regarding the display and threatened use of non-deadly weapons during the course of an arrest is not well-settled in the Tenth Circuit, and may even condone

21

EXHIBIT 1

Officer Brown' actions. *See Smith v. Wampler*, 108 Fed. App'x 560, 566 (10th Cir. 2004) ("We conclude that the law regarding the non-deadly threat of physical harm was not clearly established and [the defendant] is entitled to qualified immunity regarding his conduct in seizing [the plaintiff] while executing the search warrant."); *Rucker v. Hampton*, 49 Fed. App'x 806, 811 (10th Cir. 2002) (holding display of gun in presence of fleeing suspect, his wife, and his child did not violate clearly established constitutional law); *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1192-93 (10th Cir. 2001) ("Where a person has submitted to the officers' show of force without resistance, . . . it may be excessive and unreasonable to continue to aim a loaded firearm directly at that person, *in contrast to simply holding the weapon in a fashion ready for immediate use*." (emphasis added)); *Sanchez v. Bauer*, 2015 WL 5026195, at *7 (D. Colo. Aug. 26, 2015) (citing *Holland*, 268 F.3d at 1192) ("As particularly relevant here, it is not categorically unreasonable for officers to display weapons during an arrest.").

Accordingly, Defendants' motion to dismiss Plaintiffs' Seventh, Eighth, and Ninth Claims against Officer Brown is granted and Officer Brown is entitled to qualified immunity as to Plaintiffs' Seventh, Eighth, and Ninth Claims.

### 6. Tenth Claim—First Amendment Retaliation by Estefania Cardenas Against the Seven Officers

The seven officers argue Estefania Cardenas has failed to state a claim for First Amendment retaliation because the right to record police activity is not a clearly established constitutional right. I agree that the seven officers are entitled to qualified immunity because there was not a clearly established First Amendment right to record police conduct at the time of the incident. To the contrary, the Tenth Circuit recently

EXHIBIT 1

held it is "not clearly established that officers violate the First Amendment when they prevent a person who is the subject of the police action from filming the police." *Sandberg v. Englewood*, -- Fed. App'x --, at \*10 (10th Cir. 2018). Even though *Sandberg* dealt with the right of the subject of the police conduct to film the police, as distinguished from Estefania Cardenas' case in which she was a third party, *Sandberg* did not directly conclude that a bystander's First Amendment right to record is clearly established. *Sandberg* also post-dated the events in the Complaint, so the Tenth Circuit law in this area was not clearly established when Estefania Cardenas was ordered to put down her phone.

Estefania Cardenas nonetheless relies on the supposed consensus from other courts to prove there is a clearly established First Amendment right to record police conduct. Estefania Cardenas specifically cites to cases from the First, Seventh, Ninth, and Eleventh Circuits. *See ACLU v. Alvarez*, 679 F.3d 583 (7th Cir. 2012); *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011); *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000); *Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995). While it is true that there is a "growing consensus" on the First Amendment right to record police activity, I still do not find that the right was clearly established at the time of this incident based on the circumstances detailed in the Complaint for three reasons. *Fields v. City of Philadelphia*, 862 F.3d 353, 356 (3rd Cir. 2017); *see also Turner v. Lieutenant Driver*, 848 F.3d 678, 686 (5th Cir. 2017) (holding right was not clearly established in September 2015).

EXHIBIT 1

First, the Tenth Circuit had the occasion to consider each opinion from the First, Seventh, Ninth, and Eleventh Circuits in *Mocek v. City of Albuquerque*, but expressly declined to determine whether there was a clearly established First Amendment right to record law enforcement officers. 813 F.3d 912, 931-32 (10th 2015).

Second, none of the cases from the First, Seventh, Ninth, and Eleventh Circuits involved police officers asking someone in the middle of a police altercation to pocket their recording device. In each of those cases, the person recording the conduct was removed from the police activity. *See Alvarez*, 679 F.3d at 586 (noting case involved a "'police accountability program,' which includes a plan to openly make audiovisual recordings of police officers performing their duties"); *Glik*, 655 F.3d at 79-80 (the bystander was ten feet away from scene of arrest); *Smith*, 212 F.3d at 1333 (not discussing circumstances of recording); *Fordyce*, 55 F.3d at 438-40 (the plaintiff was recording a demonstration). More recent cases follow this trend. *See Fields*, 862 F.3d at 360 (finding clearly established right to record from "across the street" and from "a vantage point . . . [that was not] in the officers' way"). The Complaint does not allege that Estefania Cardenas occupied a similarly removed position when she took out her phone.

Finally, and related to the second reason, even the circuit courts that have recognized a right to film police officers acknowledge that the right has limits subject to the officer's safety and need to work. *Id.* ("If a person's recording interferes with police activity, that activity might not be protected."). For example, during traffic stops when law enforcement is exposed to "inherently dangerous situations," police officers may be

24

EXHIBIT 1

justified in ordering a person to stop filming based on legitimate safety concerns. *Kelly v. Borough of Carlisle*, 622 F.3d 248, 262-63 (3rd Cir. 2010); *see Gericke v. Begin*, 753 F.3d 1, 7-8 (1st Cir. 2014). The situation the seven officers encountered could be classified as a dangerous situation in that they had reason to believe Lorenzo Cardenas possessed a firearm and were involved with altercations with Lorenzo Cardenas and Lorenzo Cardenas-Villescas when they asked Estefania stop recording.

Accordingly, Defendants' motion to dismiss Plaintiffs' Tenth Claim against the seven officers is granted and the seven officers are entitled to qualified immunity as to Plaintiffs' Tenth Claim.

### B. Fourth Amendment Claims and Municipal Liability

In the Second, Fifth, and Sixth Claims for excessive force against the seven officers, Lorenzo Cardenas-Villescas, Guadalupe Cardenas, and Guadalupe Cardenas, Jr. allege that Greeley is liable for the officers' conduct.

In general, a municipality cannot be held liable under § 1983 for its employees' actions on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). "Rather, to establish municipal liability, a plaintiff must show (1) the existence of a municipal policy or custom, and (2) that there is a direct causal link between the policy or custom and the injury alleged." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993). A plaintiff may show the existence of a municipal policy or custom in the form of (1) an officially promulgated policy, (2) an informal custom amounting to a widespread practice, (3) the decisions of employees with final policymaking authority, (4) the ratification by final policymakers of the

EXHIBIT 1

decisions of their subordinates, or (5) the failure to adequately train or supervise

employees. *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010).

The Complaint is not clear under which of these five theories Plaintiffs are

proceeding against Greeley. On first glance, the Complaint appears to only advance

the theory that Greeley is liable to Plaintiffs for failing to adequately train its officers.

(*See* ECF No. 9 at ¶¶ 127, 161, 173). But, Defendants' motion to dismiss, and Plaintiffs'

response, analyze whether Plaintiffs have stated a claim against Greeley for failing to

train its officers and for maintaining an informal custom of using excessive force.[4]

Greeley clearly was on notice that Plaintiffs meant to assert both theories because the

City addressed the theories in its motion to dismiss and did not refute that Plaintiffs are

moving forward with both theories in its reply. Plaintiffs have also asserted facts from

which it can be broadly inferred that Plaintiffs meant to allege both theories. Therefore,

I construe the Complaint as alleging municipal liability against Greeley for failing to train

and for continuing an informal custom of excessive force. With this understanding, I

address both theories.

Greeley argues Plaintiffs have failed to state a municipal liability claim because

they have not pled facts to show Greeley was deliberately indifferent. Greeley also

argues Plaintiffs have not stated a failure to train theory because they have not alleged

a causal connection between the constitutional deprivation and inadequate training.

Greeley argues Plaintiffs have failed to state an informal custom amounting to a

---

[4] To the extent the Complaint also alleges a claim against Greeley for failing to supervise its officers, this
theory "falls under the general rubric of 'failure to train.'" *Trujillo v. City and Cnty. Of Denver*, 2017 WL
1364691, at *4 (D. Colo. April 4, 2017).

EXHIBIT 1

widespread practice theory because the Complaint does not show the existence of a
widespread use of excessive force.

To establish municipal liability under a failure to train theory, a plaintiff must show
that: (1) the municipality's training was deficient in a specific way; (2) the officers
exceeded constitutional limitations on the use of force; (3) the use of force arose under
circumstances that constitute a usual and recurring situation with which police officers
must deal; (4) the inadequate training demonstrates a deliberate indifference on the part
of the city toward persons with whom the police officers come into contact, and (5) there
is a direct causal link between the constitutional deprivation and the inadequate training.
*See Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010); *Allen v. Muskogee,
Okla.,* 119 F.3d 837, 841–42 (10th Cir. 1997).

Even if a plaintiff cannot identify an official policy of a municipality that directly
caused a constitutional violation leading to their injuries, he or she may still be able to
prove that the violation of their constitutional rights was occasioned by "the existence of
a widespread practice that, although not authorized by written law or express municipal
policy, is so permanent and well settled as to constitute a custom or usage with the
force of law." *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988). There is a three-
part test that plaintiffs in the Tenth Circuit must satisfy to prove that a municipality is
liable under *Monell* based on custom.  *See Gates v. Unified Sch. Dist. No. 449,* 996
F.2d 1035, 1041 (10th Cir.1993).  The plaintiff must prove:

> (1) The existence of a continuing, persistent and widespread practice of
> unconstitutional misconduct by the . . . [municipality's] employees; (2)
> Deliberate indifference to or tacit approval [of] such misconduct by the . . .
> [municipality's] policymaking officials . . . after notice to the officials of that

27

EXHIBIT 1

particular misconduct; and (3) That the plaintiff was injured by virtue of the unconstitutional acts pursuant to the . . . [municipality's] custom and that the custom was the moving force behind the unconstitutional acts.

*Powell v. City and County of Denver, Colo.,* 973 F. Supp. 1198, 1204

(D.Colo.1997) (quoting *Gates,* 996 F.2d at 1041).

Greeley primarily contends Plaintiffs have not alleged Greeley was deliberately indifferent. The deliberate indifference standard "may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). The Complaint alleges that Police Chief Jerry Garner, a final policymaker for Greeley, knew about the pattern of excessive force based on the number of complaints filed against Greeley. The Complaint also lists nine prior instances where Greeley police officers allegedly used excessive force against other individuals over a thirteen year period of time. (ECF No. 9 at ¶¶ 91-101). The allegation that Police Chief Garner knew of a pattern of excessive force, combined with the specific prior acts of excessive force, make it plausible that Greeley was deliberately indifferent to Greeley's inadequate training and informal custom of excessive force.

Greeley counters that Police Chief Garner's knowledge, as a member of the Greeley Police Department, cannot be imputed to the city of Greeley because the entities are distinct. The Complaint alleges two facts which are sufficient to overcome this argument. First, Police Chief Garner, who was a final policymaker for Greeley, "had actual and/or constructive knowledge that police officers employed by the Greeley

28

EXHIBIT 1

Police Department have a widespread and systemic problem with using excessive force." (ECF No. 9 at ¶ 103). Second, the Complaint alleges Greeley "by and through the Greeley Police Department, is responsible for the oversight supervision, and training of police officers employed by the City of Greeley." (*Id.* at ¶ 18). With these allegations, it is plausible that the Greeley knew of the informal custom of excessive force through Police Chief Garner and through its oversight of the Greeley Police Department.

Greeley challenges Plaintiffs' failure to train theory on the grounds that Plaintiffs have not pled facts which show a connection between the inadequate training of the police officers and Plaintiffs' injuries. In each of the examples listed in the Complaint, Greeley police officers allegedly engaged in excessive force through a variety of methods. For example, the Complaint alleges Greeley police officers used excessive force by punching, elbowing, striking, kicking, and hog-tying several victims. The Complaint also alleges several instances where Greeley police officers used weapons in an excessive manner and used unreasonable force to effectuate an arrest. Although these examples are not exactly the same as Lorenzo Cardenas-Villescas', Guadalupe Cardenas', and Guadalupe Cardenas, Jr.'s claims of excessive force, they do share similarities. Lorenzo Cardenas-Villescas claims the seven officers used excessive force against him during his arrest when they struck him while he was handcuffed. Guadalupe Cardenas and Guadalupe Cardenas, Jr. allege the seven officers used excessive force against them when they hit them with their weapons (batons).

These examples demonstrate that it is plausible that Greeley inadequately trains its police officers because of the number and alleged circumstances of the prior

EXHIBIT 1

excessive force claims. I find that it is also plausible that Greeley's failure to train its police officers caused these Plaintiffs' injuries based on the similarities between their case and the previous acts of alleged misconduct by Greeley police officers.

Greeley argues these Plaintiffs have not pled a widespread practice of unconstitutional misconduct because they only alleged nine prior instances of excessive force by the Greeley Police Department over a thirteen year period of time. "[T]o prove the existence of such a 'continuing, persistent and widespread' custom, plaintiffs most commonly offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." *Carney v. City and Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008); *see Praprotnik,* 485 U.S. at 127 (custom requires that the illegal practice be "widespread," involving a "series of decisions").

As discussed earlier, Lorenzo Cardenas-Villescas, Guadalupe Cardenas, and Guadalupe Cardenas, Jr. pled sufficient facts to show that it is plausible that Greeley police officers used excessive force against them. They have also alleged nine separate cases of excessive force over a thirteen year period of time. Because the claims asserted by these Plaintiffs and the alleged claims in the Complaint involve excessive force, it is plausible that the use of excessive force is a widespread practice.

Greeley also argues that the list of prior events is irrelevant because there is no evidence that the prior claims had merit. While that argument might ultimately be correct, the Complaint alleges the former claims were meritorious and some of the claims settled or resulted in opinions by judges in this district. Taking these allegations

30

EXHIBIT 1

as true, some of the prior claims may have had merit, which could establish a widespread practice of excessive force.

Greeley does not argue that the Complaint failed to establish its widespread practice caused Plaintiff's injuries. Nonetheless, I find that the list of prior excessive force claims against Greeley plausibly demonstrate the existence of a widespread practice that resulted in the use of excessive force in this case. In *Estate of Valverde v. Dodge*, for example, the court found that the plaintiff's municipal liability theory based on a widespread practice survived a motion to dismiss where the plaintiff had identified three other instances of officers from the municipality engaging in excessive force. 2017 WL 3530282, at *4 (D. Colo. Aug. 17, 2017). As in *Estate of Valverde*, the list of prior excessive force claims in the Complaint is sufficient to support the inference that the seven officers' use of excessive force was caused by Greeley's informal custom or practice. Therefore, Lorenzo Cardenas-Villescas, Guadalupe Cardenas, and Guadalupe Cardenas, Jr. have stated a municipal liability claim against Greeley for maintaining an informal custom of the use of excessive force.

Accordingly, Defendants' motion to dismiss Plaintiffs' Second, Fifth, and Sixth Claims under either a failure to train or an informal custom amounting to a widespread practice is denied.

### C. Intentional Infliction of Emotional Distress

The seven officers contend J.P.C. failed to state a claim against them because the officers' conduct was not outrageous and the officers did direct their conduct towards J.P.C. Plaintiffs counter that the seven officers' actions against Lorenzo

31

EXHIBIT 1

Cardenas-Villescas was outrageous and that their conduct was in reckless disregard of J.P.C.'s emotional well-being.

Colorado has adopted the Restatement (Second) of Torts for claims involving the intentional infliction of emotional distress. *See Rugg v. McCarty*, 476 P.2d 753, 756 (Colo. 1970). The Restatement addresses the intentional infliction of emotional distress of bystanders:

> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
>
> (2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress
>
> (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, . . . .

Restatement (Second) of Torts § 46(1)-(2) (1965); *see Bradshaw v. Nicolay*, 765 P.2d 630, 632 (Colo. App. 1988).

Conduct is outrageous if it is "'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Rugg*, 476 P.2d at 756 (quoting Restatement (Second) of Torts § 46 cmt. d). Someone acts recklessly when he "knows that such distress is certain or substantially certain." *Zalnis v. Thoroughbred Datsun Car Co.*, 645 P.2d 292, 294 (Colo. App. 1982) (citing Restatement (Second) of Torts § 46 cmt. i).

I first consider whether the seven officers' conduct was outrageous according to the first paragraph of the Restatement. I find that the Complaint has plausibly alleged the officers' conduct was outrageous based on the excessive force they used against

32

EXHIBIT 1

Lorenzo Cardenas-Villescas. *See Betancourt v. Slavin*, 676 F. Supp. 2d 71, 81 (D.

Conn. 2009) ("Courts have held that the use of excessive force can establish a claim for

intentional infliction of emotional distress." (internal quotation marks omitted)); *Siepierski*

*v. Catholic Health Initiative Mountain Region*, 37 P.3d 537, 539 (Colo. App. 2001)

(holding allegation that hospital workers used excessive force to restrain plaintiff

supported her claim for intentional infliction of emotional distress).

Next, I consider the second paragraph of the Restatement. I find that the seven

officers' conduct was reckless as it was directed at J.P.C. J.P.C. was Lorenzo

Cardenas-Villescas' three-year-old grandson and was only a few feet away when the

officers used their hands, batons, the butt of a rifle, and handcuffs to subdue Lorenzo

Cardenas-Villescas. Two members of the Cardenas family asked the officers to remove

J.P.C. from the room where the altercation occurred due to the "likely trauma that

witnessing such violence would cause him." (ECF No. 9 at ¶ 68). The officers replied

that J.P.C. would be "fine." (*Id.* at ¶ 69). J.P.C.'s age, the level of force he witnessed

against his grandfather, and the family members' multiple requests to remove J.P.C.

made it substantially certain that he would experience emotional distress as a result of

the officers' conduct.

The seven officers' argument that they are not liable to J.P.C. for intentional

infliction of emotional distress because their actions were directed at his grandfather is

not persuasive. J.P.C.'s situation is quite similar to the example the Restatement uses

to illustrate intentional infliction of emotional distress directed at a third person:

> In the presence of A, a bystander, B quarrels violently with C, draws a
> pistol, and threatens to kill C. B knows that A is pregnant, and that it is

33

EXHIBIT 1

highly probable that his conduct will cause severe emotional distress to A.
A suffers severe emotional distress . . . . B is subject to liability to A.

Restatement (Second) of Torts § 46 illus. 21.

The victim in the illustration and J.P.C. were both vulnerable; the victim due to

her pregnancy, and J.P.C. due to his age.  Both witnessed violence involving firearms.

Both suffered severe emotional distress as a result.  The offender in the illustration

knew that the victim was pregnant just as the officer's in this case knew J.P.C.'s age

and sensitivity from his presence in the room and the family members' warnings.  And in

both cases it was highly probable that the conduct would cause significant emotional

distress.   Addressing the officer's argument, B in the example directs his violence

towards C, yet A still has a claim against B.  Similarly, the officers' directed their assault

against Lorenzo Cardenas-Villescas, yet J.P.C. may still have a claim.

Finally, J.P.C. alleges he now has difficulty sleeping and communicating as a

result of the seven officers' conduct, which is sufficient to establish emotional distress.

The seven officers do not dispute this in their motion to dismiss or reply.

Although not raised by the seven officers, I also find that the Complaint plausibly

alleged facts from which it could be determined that their conduct was willful and

wanton, lifting Colorado Governmental Immunity Act's cover of immunity.  *See* Colo.

Rev. Stat. § 24-10-105(1); *Castaldo v. Stone*, 192 F. Supp. 2d 1124, 1141 (D. Colo.

2001) (noting a person engages in "willful and wanton" by "purposefully pursu[ing] a

course of action or inaction that he or she considered would probably result in the harm

to Plaintiffs").

EXHIBIT 1

Accordingly, Defendants' motion to dismiss Plaintiffs' Eleventh Claim against the seven officers is denied.

## IV.    CONCLUSION

The Defendants' Motion to Dismiss (ECF No. 12) is **GRANTED IN PART AND DENIED IN PART** as detailed in this Order.  Accordingly, it is

ORDERED that Defendant Samantha Brown is entitled to qualified immunity and Plaintiffs' Seventh, Eighth, and Ninth Claims for Relief against her are **DISMISSED**.  It is

FURTHER ORDERED that Defendants Zachary St. Aubyn, Christopher Bidwell, Seth Luedtke, John McNerney, Valentin Oliveros, Brett Radin, and Bryn Reid are entitled to qualified immunity as to Plaintiffs' Tenth Claim for Relief and Plaintiffs' Tenth Claim for Relief is **DISMISSED**.  It is

FURTHER ORDERED that Defendants' Motion to Dismiss is **DENIED** as to Plaintiffs' First, Second, Third, Fourth, Fifth, Sixth, and Eleventh Claims for Relief and the request for qualified immunity is **DENIED** as to those claims.  It is

FURTHER ORDERED that the stay of discovery and all pretrial proceedings is **LIFTED** and the parties shall reset the Scheduling/Planning Conference (ECF No. 8) no later than ten (10) days from the date of this Order.

Dated:  July 2, 2018

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge

35

EXHIBIT 1