IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02032-RBJ

CARL ANDERSEN JR.,

      Plaintiff,

v.

THE CITY OF COLORADO SPRINGS,
TELLER COUNTY COLORADO,
VITO DELCORE, in his official and individual capacities,
TODD ECKERT, in his official and individual capacities,
CARLOS SANDOVAL, in his official and individual capacities, and
ANTHONY MATARAZZO, in his official and individual capacities,

      Defendants.

---

**JOINT MOTION TO STRIKE THOSE PORTIONS OF THE REPORT OF DAN CORSENTINO THAT EXCEED THE PERMISSIBLE SCOPE OF A REBUTTAL EXPERT WITNESS**

---

Defendants VITO DELCORE, TODD ECKERT, CARLOS SANDOVAL, TELLER COUNTY, ANTHONY MATARAZZO, and THE CITY OF COLORADO SPRINGS, pursuant to Fed. R.Civ. P.26(b)(2)(D)(ii), move to strike those portions of the report of Dan Corsentino that exceed the permissible scope of a rebuttal expert witness.[1]

**CONFERRAL**

---

[1]    This Motion addresses only the issue of whether Corsentino's rebuttal report exceeds the permissible scope of a rebuttal expert witness.  Defendants reserve *Daubert* challenges to Corsentino's opinions.

Undersigned counsel has conferred with counsel for Plaintiff and is authorized to state that Plaintiff opposes this motion.

### LEGAL STANDARD

1.    "Fed. R.Civ. P. 26(a)(2)(C)(ii) permits the admission of rebuttal expert testimony that is 'intended solely to <u>contradict or rebut</u> evidence on the same subject matter identified' by an initial expert witness." *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv. II, LLC*, No. 14-cv-00134-PAB-KMT, 2016 WL 1597529, at *2–3 (D. Colo. Apr. 21, 2016) (quoting *TC Sys. Inc., v. Town of Colonie, NY*, 213 F. Supp. 2d 171, 179 (N.D.N.Y. 2002)). Rebuttal expert reports "necessitate 'a showing of facts supporting the opposite conclusion' of those at which the opposing party's experts arrived in their response reports." *Bone Care Int'l, LLC v. Pentech Pharmaceuticals, Inc.*, 2010 WL 3894444, *15 (N.D. Ill. Sep. 30, 2010) (quoting *ABB Air Preheater, Inc. v. Regenerative Environmental Equip., Inc.,* 167 F.R.D. 668, 669 (D.N.J. 1996)). "[R]ebuttal experts cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts." *Int'l Bus. Machs. Corp. v. Fasco Indus., Inc.,* No. C–93–20326 RPA, 1995 WL 115421, at *3 (N.D. Cal. Mar. 15, 1995).

2.    In *Olivero v. Trek Bicycle Corp.*, 291 F. Supp. 3d 1209, 1215–16 (D. Colo. 2017), Judge William Martinez considered whether, in the context of a product liability matter, the defendant's experts rebuttal report exceeded the permissible scope of a rebuttal expert witness under Rule 26(b)(2)(D)(ii).  Observing that, pursuant to Fed. R. Civ. P. 26(a)(2)(D)(ii), "[a] proper rebuttal expert opinion is one offered 'solely to contradict

or rebut evidence on the same subject matter identified by another party' through that party's affirmative expert disclosures" Judge Martinez noted that the rebuttal opinions must be compared with those in the affirmative expert report to which the rebuttal report purports to rebut.  Finding that portions of the purported rebuttal report went "far beyond" the opinions in the affirmative report, Judge Martinez found that such opinions "should have been disclosed no later than the affirmative expert deadline, thus giving the [plaintiffs] a chance to provide a rebuttal."  *Id.*  Judge Martinez gave the plaintiff the choice of having either the opinions that exceeded the permissible scope of a rebuttal expert witness stricken or to have their expert submit a further report.

## EXPERT DISCLOSURE DEADLINES

3.     Pursuant to the Scheduling Order (Doc. 30), as amended by Order Granting [45] Unopposed Motion for Time to Extend Deadline for Rebuttal Experts and Discovery Cut Off, (Doc. 46), the following deadlines for expert witness disclosures were imposed:

- Deadline for Plaintiff to disclose his expert(s): April 9, 2021 (p. 21, Doc. 30);

- Deadline for Defendants to disclose their expert(s): May 7, 2021 (p. 21, Doc. 30); and

- Deadline for Plaintiff to disclose any rebuttal expert(s): June 11, 2021 (p. 21, Doc. 30), but extended to June 25, 2021 (p. 2, Doc. 46).

4.     Plaintiff did not endorse any affirmative experts. On May 7, 2021, City Officer Defendants timely filed their affirmative expert disclosures. The only retained

3

expert disclosed by Defendants was Kevin Sailor as a use-of-force expert.[2] On June 25, 2021, Plaintiff endorsed Dan Corsentino as a rebuttal expert to Kevin Sailor.

## THE SUBJECT REPORTS

5.      Comparison of the affirmative Report of Kevin Sailor with the "rebuttal" report of Dan Corsentino demonstrates that much of the Corsentino Report exceeds the permissible scope of a rebuttal expert witness under Rule 26(b)(2)(D)(ii).

## <u>The Sailor Report</u>

6.      Defendants' endorsement of Kevin Sailor included The Sailor Report, which is attached as **EXHIBIT A**.  The Report, including the cover page, is just over 7 pages.

**Use of the Taser**

7.      The Sailor Report addresses in detail issues regarding the use of the Taser, including a description of the type of Taser used in this incident and the theory and operation of a taser. Sailor provides the following expert opinions about this particular Taser and its use here, as follows:

- The subject Taser operates at up to 4,000 volts but that this is only generated inside the Taser and there is never that amount of voltage delivered to the target; and once the circuit has been completed, the voltage drops to much lower levels. (Ex. A at p. 5)

- Voltage is not a metric to determining human safety from electricity. (*Id.*)

- The subject Taser is the most studied and researched less-than-lethal weapon and, while not risk free, is generally safe when used as designed and in accordance with training standards of the manufacturer. (*Id.*)

---

[2]      Sailor was also endorsed on May 7, 2021, by The City of Colorado Springs.

- Agencies that have adopted the Taser have seen declines in injury rates to both subjects and officers. (*Id.*)

- All other less-than-lethal weapons rely on pain to gain compliance and, while being tased causes pain, it is not what causes the incapacitation effect.  Rather, this is caused by neuro-muscular incapacitation (NMI). (*Id.*)

- The Taser used here has the ability to detect if there is a completed circuit.  Also, when the circuit is not completed, there is a loud crackling noise. (Ex. A at p. 6)

- The first attempt at tasing Plaintiff did not result in a completed circuit except for the first 1.5 to 1.75 seconds. (*Id.*)  This is evidenced both by the recordings of the Taser and based on the crackling nose heard on the first attempted deployment. (*Id.*)

- There was a 13-second delay between the attempted first deployment of the Taser and the second deployment. This permitted a determination for whether there was compliance after the first deployment. (*Id.*)

- The Taser is most effective when targeting large muscle groups and in both uses of the Taser here, large muscle groups were targeted. (*Id.*)

- The use of the Taser was in accordance with generally accepted police practices and the practices advocated by the manufacturer.  It was fired at the preferred target zone and only the number of cycles needed for compliance were used.  Each cycle was the standard five-second cycle. The second cycle was fired due to the first being ineffective and continued resistance of the suspect. (Ex. A at p. 7)

- The second deployment of the Taser cased the suspect to experience NMI and permitted the officers to secure the suspect in handcuffs. (*Id.*)

**Use of Physical Control Holds**

8.     In addition to his opinions regarding the use of the Taser, Sailor also opined

that the use of physical control holds by Delcore, Eckert and Sandoval:

- Were in conformance with generally accepted police practices and procedures; (Ex. A at p. 7)

- The officers were trying to gain control of a suspect who was actively resisting their efforts to control and take the suspect into custody.  (*Id.*)

**Reasonable Suspicion / Probable Cause**

9.     As to reasonable suspicion and probable cause Sailor opined:

- The officers involved were acting in good faith and under color of law.[3] (Ex. A at p. 6)

- The incident triggered mandatory reporting to law encodement under Colorado law.  No report was made by the family and the parties left the scene of the accident involving serious bodily injury, which could constitute a crime. (*Id.*)

- The seriousness of the injuries to the minor and the lack of cooperation by the family in explaining the injuries would lead a reasonable officer to have a reasonable belief that a crime had been committed. (Ex. A at p. 7)

**Exigent Circumstances**

10.    As to exigent circumstances, Sailor opined that:

- Because the officers believed there was critical cell phone evidence regarding a suspected crime, the potential loss of such critical evidence presented an exigent circumstance. (Ex. A at pp. 6-7)

**The Corsentino Report**

11.    In his 28-page "rebuttal" report, Corsentino concedes that his report is not limited to rebutting the Sailor Report, but rather that he was retained to "render my opinions about the facts concerning the seizure of property and arrest of Carl Andersen

---

[3]     Defendants concede that testimony regarding the good faith of the officers or the legal conclusion that they were acting under color of law are not appropriate subjects of expert opinion and they will not offer Sailor for these opinions.

Jr." (Ex. B at p. 5). Corsentino goes on to render many sweeping decelerations and opinions.  The Corsentino Report is attached as **EXHIBIT B**.

**Training and Systemic Failure by the Entities**

12.     Corsentino summarizes a letter, which is part of the broader report, that the incident "was a preventable systemic failure by the Colorado Springs Police Department and the Teller County Sheriff's Department."  (Ex. B at p. 5).  He goes on to state that "the actions of Sergeant Sandoval, Sergeant Matarazzo, Officer Delcore, and Officer [Eckert] show a lack of professional training, basic communication, sensitivity/empathy, and a holistic awareness of the environment that they were in." (*Id.*)

13.     Except at page 28 of the report, where he generally refers to a "concern about a subculture that exists" and at page 18 that Officer Delcore did not understand the meaning of "exigent circumstance," Corsentino does not otherwise address what systemic failure he refers to or specifically what training the officers failed to receive.

**Improper Conduct of Non-Party Medical Providers**

14.     Corsentino provides opinions regarding the improper conduct of certain non-parties as follows:

- Improper conduct of UC Health (UC Health) Pikes Peak Regional Hospital regarding failure to report the incident to the Woodland Park Police Department or Teller County Sheriff's Office (Ex. B at p. 15).

- Memorial Hospital Nurse Bode's failure to review medical information from UC Health and failure to explain the procedure for addressing issues of reportable injuries to minors "in a more concise and professional manner" (Ex. B at pp. 15-16).

- Memorial Hospital forensic nurse Julie Olsen's failure to "inform the family of the circumstances and do their best to work within the circumstances."  (*Id.*)

7

**Inadequate Investigation / Improper Tactics / Failure to Use De-Escalation Techniques / Lack of Empathy, Etc.**

15.    Corsentino spends much time addressing what he opines was an inadequate investigation and the use of improper tactics as follows:

- The officers had a "lack of verbal skills" (Ex. B at p. 15).

- Sergeant Sandoval did not comply with the request of the Plaintiff's grandfather to step away from his position in which he could visualize from the hallway the hospital room where the minor and family members were present in the hallway, or properly calm the situation by explaining the reason for his presence (Ex. B at p. 16).

- Sergeant Sandoval failed to show "sensitivity" or "empathy" for the family or to reduce the anxiety to the family created by their communication with Nurse Bode (Ex. B at pp. 5, 22-23).

- Failure to use de-escalation techniques (Ex. B at p. 5).

- A lack of "holistic awareness of the environment" (Ex. B at p. 5).

- General reference to improper use of "police tactics" (Ex. B at p. 17).

- Failure to account for Plaintiff being a veteran and not treated with the respect due to his service (Ex. B at p. 27).

- Failure to consider that Plaintiff might be a possible combat veteran and might react differently when confronted with a physical threat (Ex. B at p. 27).

- The officers were "interfering with the privacy of the family" when emotions were high (Ex. B at p. 18).

**Other Options**

16.    Corsentino opines that the officers had numerous options they did not utilize and sets out many proposed examples. (Ex. B at pp. 26-27).

**Absence of Exigent Circumstances**

17.    Corsentino addressed his opinion of the absence of exigent circumstances to seize the cell phone in several portions of his report, stating:

- If the officers had reason to believe that the data on the cell phone would be destroyed, they would have had exigent circumstances to take possession of it.  But, here, they could have just watched the Plaintiff to see if he attempted to take steps to destroy the data.  (Ex. B at p. 18).

- Even if an attempt to destroy the data had been undertaken, it would not delete the data from the SIM card.  (Ex. B at p. 19).

**Use of Taser**

18.    Although much of the focus of the Sailor Report addressed the use of the Taser, Corsentino addresses the use of the Taser only briefly, stating conclusorily that:

- "Undoubtedly, the force used to arrest [Plaintiff], specifically the use of the Taser, was a violation of [his] rights" (Ex. B at p. 17).

**Use of Force**

19.    Corsentino does not specifically address the use of the control holds but, rather, generally opines that:

- As the "officers had no right to seize the cell phone," the force used to obtain the cell phone was "excessive force" (Ex. B at p. 17).

**Reasonable Suspicion / Probable Cause**

20.    Corsentino argues that based on the reports he reviewed:

- "[T]here was not enough information obtained ... to believe a crime was or had been committed" (Ex. B at p. 20).

**ARGUMENT**

21.    The following broad subject areas of the Corsentino Report are not issues considered in the Sailor Report and, as such, exceed the scope of the Sailor Report the permissible scope of a rebuttal expert witness under Rule 26(b)(2)(D)(ii):

9

- Training and Systemic Failure by the Entities;
- Improper Conduct of Non-Party Medical Providers;
- Inadequate Investigation;
- Improper Tactics;
- Failure to "Calm" the Situation or Use De-Escalation Techniques;
- Lack of Empathy; and
- Other Options.

22.     Nowhere in the Sailor Report does he render opinions on whether the City of Colorado Springs or Teller County failed to adequately train officers or systemic failures of these entities.  Nowhere in the Sailor Report does he render opinions regarding the fault of medical institutions or staffs.  And, nowhere does Sailor render opinions regarding the adequacy of the investigation, the use of improper tactics, the failure to calm the situation or use de-escalation techniques, whether the officers showed empathy or otherwise failed to "calm" the situation; or whether there were other options open to officers.  All of these areas of comment and opinion of Corsentino exceed the scope of the Sailor Report and should be excluded.

23.     Defendants agree that Sailor renders opinions regarding the use of force. But these opinions are rendered in the context of the specific application of the Taser and the use of hands-on control techniques to control the specific level of resistive conduct of the Plaintiff and take him into custody. Corsentino does not opine that the force used, whether Taser or hands-on control techniques applied inconsistent with reasonable police use of force practices and proportional to the resistive conduct of the Plaintiff. Rather, Corsentino opines that no use of force was necessary because there was not exigent circumstances that called for the need to retrieve the cell phone and, as such, any use of force was excessive. Corsentino's opinion that the force used was excessive does not,

then, rebut Sailor's opinions but is a new and affirmative opinion that should have been made as an affirmative disclosure and not as a rebuttal expert opinion.

24.     For purposes of this motion only, and subject to a later *Daubert* challenge, Defendants do not argue that Corsentino's opinion regarding whether there were exigent circumstances–exceed the scope of the Sailor Report–except that Defendants argue that Corsentino's opinion that any text messages on the cell phone would have been preserved on a SIM card–even if the Plaintiff attempted to delete them–exceed the scope of the Sailor Report.  Setting aside whether Corsentino has the technology credentials to make such opinion, Sailor expressed no such technology opinion in his report.  Again, if Plaintiff wanted to advance this argument, he should have done so in an affirmative expert disclosure.

25.     For purposes of this motion, and subject to a *Daubert* challenge, Defendants do not argue that Corsentino's opinion regarding the absence of reasonable suspicion or probable cause exceed the scope of a rebuttal report.

## CONCLUSION

26.     Permitting Plaintiff to endorse Corsentino's expert opinions that put forth their own theory of the case, as opposed to restricting their opinions to the theories offered in the affirmative expert disclosure.

27.     Defendants seek to strike the following portions of the Corsentino Report:

- Page 5 beginning with "The Case of Carl Anderson Jr. ..." and ending at page 6 "... in this incident cannot be justified."

- Page 14 beginning with "In a review of the incident ..." and ending at page 17 "... would not have been Tased or arrested by Colorado Springs Police."

- Page 17 beginning with "The seizure of the cell phone is a violation of the 4th Amendment ..." and ending at page 17 "The arrest of Mr. Anderson Jr. was also a violation of the 4th Amendment."

- Page 17 beginning with "... and therefore, used excessive force ..." and ending at page 18 "... concerned that they might lose their child."

- Page 18 beginning with "However, as we will discuss below ..." and ending at page 18 "... remembering his training properly, or he received bad training."

- Page 19 beginning with "As stated earlier, even if the text message were deleted ..." and ending with page 19 "... search warrant for the property."

- Page 20 beginning with "Above, we have provided information ..." and ending at page 19 "... as documented previously ...".

- Page 21 beginning with "... in fact the actions of the officers ..." and ending at page 21 "... with Ms. Hiteshew's right by seizing their cell phones."

- Page 21 beginning with "It would be hard to believe ..." and ending at page 25 "... a direct or indirect bearing on the case itself."

- Page 26 beginning with "From all indications in reports ..." and ending at page 28 "... interview with family members and interview with witnesses."

Respectfully submitted this 9th day of July, 2021.

s/ Gordon L. Vaughan_____
Gordon L. Vaughan
   VAUGHAN & DeMURO
   111 South Tejon, Suite 545
   Colorado Springs, CO 80903
   (719) 578-5500 (phone)
   (719) 578-5504 (fax)
   gvaughan@vaughandemuro.com (e-mail)
ATTORNEY FOR CITY OFFICER DEFENDANTS

s/ Eric M. Ziporin_____
   Eric M. Ziporin
   SGR, LLC
   3900 E. Mexico Avenue, Suite 700

Denver, CO 80210
(303) 320-0509 (phone)
(303) 320-0210 (fax)
eziporin@sgrllc.com (e-mail)

s/ Courtney B. Kramer_____
Courtney B. Kramer
SGR, LLC
3900 E. Mexico Avenue, Suite 700
Denver, CO 80210
(303) 320-0509 (phone)
(303) 320-0210 (fax)
ckramer@sgrllc.com (e-mail)
ATTORNEYS FOR DEFENDANTS TELLER
COUNTY, COLORADO AND ANTHONY
MATARAZZO

s/ Ryan D. Doherty_____
Ryan D. Doherty
City Attorney Wynetta P. Massey
(719) 385-5909 (phone)
ryan.doherty@coloradosprings.gov (e-mail)
ATTORNEYS FOR DEFENDANT CITY OF
COLORADO SPRINGS, COLORADO

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of July, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

**David A. Lane**
dlane@kln-law.com

**Reid Allison**
rallison@kln-law.com

**A. Tyrone Glover Jr.**
glover@sslhlaw.com

**Sara L. Cook**
scook@vaughandemuro.com

13

and I hereby certify that the foregoing was placed in the U.S. Mail, postage prepaid, and addressed to the following:

[none]

s/ Gordon L. Vaughan
Gordon L. Vaughan