IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:20-cv-02032-RBJ

CARL ANDERSEN JR.,

    Plaintiff,

v.

THE CITY OF COLORADO SPRINGS,
TELLER COUNTY COLORADO,
VITO DELCORE, in his individual and official capacity,
TODD ECKERT, in his individual and official capacity,
CARLOS SANDOVAL, in his individual and official capacity, and
ANTHONY MATARAZZO, in his individual and official capacity,

    Defendants.

---

ORDER ON DEFENDANT CITY OF COLORADO SPRINGS' MOTION TO DISMISS

---

This is a civil rights case brought pursuant to § 1983 that arises out of a tragic car accident involving plaintiff's daughter. Plaintiff sues the officers individually and in their official capacities, and he sues the City of Colorado Springs ("Colorado Springs") and Teller County under *Monell*. ECF No. 1. Before the Court is a motion to dismiss filed solely by defendant Colorado Springs. ECF No. 38. For the reasons discussed below, defendant's motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

Plaintiff Carl Andersen, Jr. is a resident of Colorado. ECF No. 1 at ¶ 7. Individual

defendants DelCore, Eckert, and Sandoval were Colorado Springs police officers at the time of these events. Individual defendant Matarazzo was a Detective in the Teller County Sheriff's Office. *Id.* ¶ 8. Defendants Colorado Springs and Teller County are municipalities. *Id.* ¶¶ 9–10.

The following facts are taken from plaintiff's complaint. I include only those facts necessary to resolve the pending motion, and I assume them to be true for that purpose alone. Mr. Andersen is engaged and has two young children. On April 17, 2019 Mr. Andersen's fiancée, who at the time was pregnant with their second child, was pulling her car out of the driveway. Their daughter, who was then nineteen months old, ran after her and was accidentally struck by the moving car. A medical helicopter transported the daughter to Memorial Central Hospital in Colorado Springs, while Mr. Andersen and the rest of the family drove to the hospital. *Id.* ¶¶ 12–13. At Memorial Hospital the daughter was treated in the pediatric ICU for her serious injuries. Mr. Andersen's fiancée lay in the bed with her. Mr. Andersen stood at the bedside while grandparents and other family were waiting in the hall. *Id.* ¶ 14.

Detective Matarazzo of the Teller County Sheriff's Office ("TCSO") and other law enforcement officers suspected that child abuse was the cause of the injuries, though this suspicion later proved unfounded. Detective Matarazzo and other officers entered the hospital room and began questioning Mr. Andersen. They demanded that he hand over his fiancée's cell phone, which was in his possession, because they believed it contained evidence of the alleged crime. Mr. Andersen refused and told officers they were not entitled to the phone. *Id.* ¶ 15.

Detective Matarazzo then enlisted the help of Colorado Springs Police Department ("CSPD") officers DelCore, Eckert, and Sandoval. They all confronted Mr. Andersen. Officer DelCore grabbed at Mr. Andersen's waist pocket for the phone. Plaintiff told him not to grab

2

anything from his pockets, and Officer DelCore responded by threatening, "[y]ou're going to hit the ground real hard." Officer Eckert said, "let's take this out in the hallway." Mr. Andersen said that he would not leave his daughter's side, and he reiterated that the officer did not have a right to take the phone. *Id.* ¶¶ 17–18.

In response, Officer DelCore drew his Taser on Mr. Andersen while still in the hospital room. There was additional back and forth between Officer Eckert and plaintiff regarding the cell phone, which plaintiff refused to relinquish. The officer threatened to arrest and charge him. *Id.* ¶¶ 18–20. Officers Eckert and DelCore then grabbed Mr. Andersen' wrists. Officer DelCore tased plaintiff in the back, and three officers forced him to the floor. Mr. Andersen's father tried to verbally intervene, and Officer DelCore threatened to tase him too. *Id.* ¶ 24. Officer DelCore tased plaintiff again. *Id.* The officers then handcuffed and detained him and seized both his fiancée's phone and his own phone. They interrogated plaintiff without providing *Miranda* warnings. They also charged him with obstructing and resisting arrest. *Id.* ¶ 25. The officers had not produced a warrant for the phone, nor was there probable cause that a crime had been committed. *Id.* ¶ 21. Mr. Andersen asserts that he stayed calm and maintained a non-threatening demeanor during the entire encounter. *Id.* ¶¶ 17, 19.

The officers wrote reports describing plaintiff's actions and demeanor in ways that were contradicted by later-obtained body camera footage. The El Paso County District Attorney's sought permission to dismiss the case from the officers, but the officers refused. The District Attorney eventually dismissed the case in late fall of 2019 two days before trial. *Id.* ¶¶ 26–28.

Mr. Andersen filed this case on July 13, 2020. He brings six claims against all defendants, including Colorado Springs: (1) unlawful seizure of his person; (2) unlawful search;

3

(3) unlawful seizure of his property; (4) excessive force; (5) malicious prosecution; and (6) First Amendment retaliation. *Id.* ¶¶ 55–131. On February 3, 2021 defendant Colorado Springs moved to dismiss the claims against it. ECF No. 38. Plaintiff responded on March 3, 2021, and Colorado Springs replied on March 17, 2021. ECF Nos. 42, 43.

With respect to municipal liability, plaintiff alleges that the officers acted "pursuant to the preexisting and ongoing deliberately indifferent custom, policy, practice, training, and supervision" of defendants Colorado Springs and Teller County. ECF No. 1 at ¶ 29. He alleges the following customs and practices: (1) arresting people without probable cause; (2) stopping, detaining, citing, and prosecuting people for engaging in speech that is offensive and/or critical of Colorado Springs and Teller County; (3) using force against people who criticize or record the activity of the municipal defendants; (4) maliciously prosecuting people without probable cause, particularly to cover up police misconduct; and (5) failing to discipline officers or find they engaged in wrongdoing despite evidence of constitutional violations. *Id.* ¶ 30.

Mr. Andersen claims that the municipalities ratified the officers' misconduct because "[u]pon information and belief" they provided the officers no additional training after the incident. He writes that the officers' unconstitutional actions make clear they were not properly trained on First or Fourth Amendment rights or how to conduct a lawful seizure, search, or arrest. *Id.* ¶¶ 31–32, 36. He also writes that the municipalities' response "evidences a pattern and practice of failing to discipline officers for constitutional violations," that such failure to discipline constituted approval of the officers' conduct, and that such conduct conforms with official custom, policy, and practice. *Id.* ¶¶ 33–35. He alleges that Colorado Springs and Teller County were deliberately indifferent to his constitutional rights because they knew individuals in

4

his position would be at risk based on their failure to train and supervise, and that their customs, policies, and practices were the proximate cause of his injuries. *Id.* ¶¶ 37–41.

As evidence of a custom, policy, or practice plaintiff points to eight prior incidents of CSPD officers arresting individuals without probable cause, which I summarize here:[1]

1. In April 2018 CSPD were checking for arrest warrants in an apartment complex when they encountered a man. They threw him to the ground, pepper sprayed him, and tased him five times in two minutes. He eventually died. *Id.* ¶ 45.

2. In August 2017 CSPD wrongfully arrested and jailed a man on two felony sex crime charges after luring a different man into soliciting sex with underage girls in a sting operation. They misrepresented evidence to get a warrant for the plaintiff's arrest. *Id.* ¶ 46.

3. In October 2012 CSPD wrongfully arrested a man for sexual assault after the lead detective intentionally omitted exculpatory evidence from the arrest warrant affidavit. *Id.* ¶ 48.

4. In July 2012 CSPD unlawfully arrested and detained a man for violating a law banning guns in parks which had been repealed in 2003. *Id.* ¶ 49.

5. In January 2012 CSPD arrested a man without probable cause because someone else who had seen him at a gas station said he resembled a homicide suspect. The officers falsified reports in an unsuccessful effort to invent probable cause to arrest. *Id.* ¶ 47.

6. In 2012 CSPD settled claims that two officers conspired to falsely charge, falsely arrest, and maliciously prosecute an officer's ex-boyfriend despite video evidence of his alibi. *Id.* ¶ 50.

7. In 2009 CSPD misidentified a man as a drug dealer based on an officer's mistake when

---

[1] Plaintiff also lists one instance of arrest without probable cause and excessive force by Teller County officers. ECF No. 1 at ¶ 53. I exclude this instance because it is irrelevant to any municipal liability of Colorado Springs.

selecting the man's photograph during a mugshot search. CSPD arrested him even though the man lacked the only identifying mark of which an officer present for the undercover drug deal had taken note, a tattoo on his shin. *Id.* ¶ 51.

8. In 2009 CSPD illegally detained a man after misidentifying him as an armed robbery suspect, despite his being white and the suspect's being African American. His only link to the robbery was a witness who initially said his car was involved in the robbery, though she later told CSPD his car was *not* involved because it lacked tinted windows. *Id.* ¶ 52.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pled allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true. *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

## III. ANALYSIS

To state a claim for municipal liability under § 1983, a plaintiff must allege facts that plausibly demonstrate (1) a municipal employee committed a constitutional violation; and (2) a

municipal policy or custom was the moving force behind that violation. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). *Monell* liability also requires alleging a direct causal link between the policy or custom and the injury alleged. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). Mr. Andersen has sufficiently alleged a constitutional violation by a municipal employee of Colorado Springs. He contends that Officers DelCore, Eckert, and Sandoval jointly arrested him without probable cause, among other allegations. Colorado Springs does not dispute that he satisfies this first requirement. *See generally* ECF No. 38. Instead, Colorado Springs argues that plaintiff fails to allege either a municipal policy or custom or a causal link between that policy or custom and his alleged injuries. *Id.* at 3.

The Tenth Circuit has explained that a municipal custom or policy may take the form of

> (1) [A] formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (citations and internal quotation marks omitted). Plaintiff alleges municipal liability under (2) an informal custom, and (5) a failure to adequately train or supervise employees. ECF No. 42 at 4, 10.

Mr. Andersen claims Colorado Springs is liable pursuant to *Monell* for all six of his constitutional claims. *See* ECF No. 1 at ¶¶ 55–131. But a closer look at his complaint and response to defendant's motion reveals that he only truly argues for municipal liability with respect to his unlawful seizure, i.e., officers' arresting him without probable cause. This is the unifying theme across his eight examples of prior CSPD conduct. *Id.* ¶¶ 45–52; ECF No. 42 at

7

4–5 ("Mr. Andersen alleges that between 2009 and 2019, on at least eight different occasions, Colorado Springs officers arrested individuals without probable cause."). The only allegations supporting municipal liability on the remaining claims are conclusory. *See* ECF No. 1 at ¶¶ 29–38. I therefore consider Colorado Springs' liability solely as to the allegedly unlawful arrest. The five other claims against the city—claims two through six in the complaint—are dismissed.

### A. Informal custom

"[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (citation omitted). "A custom or policy is not established merely by alleging one unique incident in which the plaintiff suffered a deprivation; instead, the plaintiff must demonstrate a specific pattern or series of incidents that support the general allegation of a custom or policy." *Sekerak v. City & Cty. of Denver*, 1 F. Supp. 2d 1191, 1199 (D. Colo. 1998). Here plaintiff has done that. In addition to his own purportedly unlawful arrest, he points to eight other instances between 2009 and 2018 in which CSPD officers arrested individuals without probable cause. Taken together these examples could indicate that Colorado Springs has an informal custom permitting its officers to arrest and detain individuals without a lawful basis for doing so.

Plaintiff is not just "[l]isting lawsuits and cases," as defendant argues. ECF No. 38 at 6 (citing *Baltierra v. Adams Cty., Colorado*, No. 18-CV-00664-CMA-MEH, 2019 WL 1331914, at *7 (D. Colo. Mar. 25, 2019)). He lists instances involving the same alleged constitutional violation here, arrest without probable cause, by the same municipal entity, CSPD. In *Baltierra*

the court dismissed the *Monell* claim because the plaintiff pointed to suits against the defendant's predecessors nationwide, instead of against the defendant in the precise detention facility where he was housed. Here Mr. Andersen's examples are more akin to his own factual allegations.

Colorado Springs contends that the facts of each prior instance are too dissimilar to show a custom or practice. ECF No. 38 at 5. I disagree. Each example involves officers' acting in concert to arrest an individual without sufficient facts linking the person to a crime to support probable cause. The incidents are thus sufficiently similar to demonstrate a "necessary pattern of similar constitutional violations" that "involve similar conduct to the conduct at issue in this case." *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1285, 1287 (10th Cir. 2019). The circumstances surrounding the allegedly unlawful arrests in plaintiff's examples are not identical to his own, but that is not what the law demands. Such a requirement would lead to an illogical outcome: CSPD would be liable if it had an informal custom of officers' arresting people without probable cause in a narrow set of circumstances (such as when trying to seize a cell phone from a suspect in a hospital room), but it would *not* be liable if that informal custom were even more pervasive and widespread and applied in a greater, more diverse set of circumstances.

Defendant also insists these prior unlawful arrest incidents are "conclusory." ECF No. 38 at 4. Colorado Springs points to Judge Moore's decision on a motion to dismiss involving a similar set of prior instances in which he wrote, "[t]he Court declines to accept these entirely conclusory allegations as true for present purposes." *Metzler v. City of Colorado Springs*, No. 1:19-CV-00878-RM-KMT, 2020 WL 533735, at *5 (D. Colo. Feb. 3, 2020), *aff'd on other grounds*, 841 F. App'x 94 (10th Cir. 2021) (unpublished). I respectfully come to a different conclusion. I do not find plaintiff's presentation of prior instances of illegal arrests by CSPD to

be conclusory. For each example he has pled specific facts, including the individual's name, the circumstances of arrest, and why there was insufficient basis for probable cause. ECF No. 1 at ¶¶ 45–52. These examples share similarities with his own arrest. This is more than a bare recitation of the *Monell* elements warranting dismissal.

Defendant next argues that plaintiff does not include dispositions of the prior lawsuits, and that none of the incidents mentions liability of the City. ECF No. 38 at 4, 6. I fail to see how this is dispositive on a motion to dismiss. At this stage of litigation I am obligated to treat all of plaintiff's allegations as true and to draw all reasonable inferences in his favor. Just as defendant notes that "[p]eople may file a complaint for many reasons, or for no reason at all," *Duran v. City & Cty. of Denver*, 10-CV-01569-REB-KMT, 2012 WL 4478800, at *2 (D. Colo. Sept. 28, 2012), so too are police misconduct cases resolved without a finding of liability for many reasons. Allegations that CSPD officers frequently arrest individuals without probable cause may be true even if the Colorado Springs has not been held responsible. These allegations are relevant because they suggest an informal custom of unlawful arrest under CSPD's purview.[2]

Finally, Colorado Springs asserts that plaintiff has not pled causation. ECF No. 38 at 3. On this last point too, I disagree. Mr. Andersen contends that CSPD officers have effected at

---

[2] In its reply brief Colorado Springs also points to four other cases in which plaintiff's counsel unsuccessfully pled municipal liability with reference to prior lawsuits. ECF No. 43 at 4–5. None of those cases involved the constitutional claim or prior incidents pled here, however. Additionally, they differ significantly from these allegations. Three of those cases focused on a failure to train liability theory, in which the existence of former lawsuits arguably put defendants on notice of past constitutional violations. That makes final adjudication of liability more important. *See Weitzman v. City & Cty. of Denver*, No. 17-CV-02703-KLM, 2019 WL 1438072, at *15 (D. Colo. Mar. 31, 2019); *Est. of Lillis by & through Lillis v. Correct Care Sols.*, LLC, No. 16-CV-03038-KLM, 2018 WL 1569752, at *17 (D. Colo. Mar. 30, 2018); *Est. of Lobato by & through Montoya v. Correct Care Sols.*, LLC, No. 15-CV-02718-PAB-STV, 2017 WL 1197295, at *8 (D. Colo. Mar. 31, 2017). And in the fourth case, the court concluded that the prior suits were not similar enough to reflect a widespread practice. *Harris v. City & Cty. of Denver*, No. 19-CV-00572-MEH, 2019 WL 6876870, at *12 (D. Colo. Dec. 17, 2019) (noting two prior incidents did not involve entries or searches of a residence under plaintiff's same circumstances, leaving only two similar examples), *rev'd on other grounds sub nom. Harris v. Mahr*, 838 F. App'x 339 (10th Cir. 2020) (unpublished).

least eight unlawful arrests since 2009, including one within a year of his own. He contends that CSPD officers likewise arrested and detained him in a public setting in front of multiple civilian witnesses, despite all three officers' knowing they lacked probable cause. The officers were neither disciplined nor retrained after this constitutional violation. I consider these allegations together to conclude that the alleged custom led to plaintiff's harm. Probable cause for arrest is one of our legal system's most basic constitutional rules. I infer that if CSPD's informal custom did not permit officers to ignore this requirement, they would not have done so, and certainly not in such an unrestrained, public way as they purportedly did here. Assuming the complaint proves true, this would constitute circumstantial evidence that Colorado Spring's custom regarding unlawful arrests was the "moving force" behind plaintiff's injuries.

Plaintiff has sufficiently alleged municipal liability based on an informal custom. His *Monell* claim against Colorado Springs may proceed on this theory.

### B. Failure to train or supervise

To prevail on a claim of municipal liability for failure to train, a plaintiff must prove the training was inadequate and then satisfy the following four requirements:

> (1) [T]he officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.

*Brown v. Gray*, 227 F.3d 1278, 1286 (10th Cir. 2000) (quotation and citation omitted). Though this standard explicitly references use of force, courts have also used it to analyze failures to train in other circumstances. *E.g.*, *Brown v. Whitman*, 651 F. Supp. 2d 1216, 1231 (D. Colo. 2009) (applying standard to claim for inadequate training in police dog handling).

In contrast to his informal custom theory, plaintiff has not adequately pled a failure to train or supervise by Colorado Springs. His claim fails under the first element—his complaint does not contain facts alleging that CSPD's training or supervision is inadequate. Plaintiff points to no specific facts about CSPD's training of its officers on probable cause, such as "when it occurred, who conducted it, or how it was deficient." *Rehberg v. City of Pueblo*, No. 10-CV-00261-LTB-KLM, 2012 WL 1326575, at *5 (D. Colo. Apr. 17, 2012).

Instead, plaintiff alleges only that defendant "failed to properly train and supervise its employees to avoid the use of . . . unlawful seizure," and that the Court should infer the officers "were not properly trained on the First or Fourth Amendment" as "made clear by their blatantly unconstitutional actions." ECF No. 1 at ¶¶ 32, 36. These conclusory allegations are insufficient. He asks me to assume CSPD office training is inadequate merely because he and others suffered constitutional violations. While these past instances were enough to plead an informal custom above, they tell the Court nothing about officer training or supervision—the link is too tenuous for me to reasonably infer inadequate training or supervision from these facts alone. Plaintiff thus cannot proceed on a failure to train or supervise theory against Colorado Springs.

## ORDER

Defendant Colorado Springs' motion to dismiss is granted in part and denied in part as follows:

1. The Court GRANTS the motion as to claims two through six against Colorado Springs (for unlawful search, unlawful seizure or property, excessive force, malicious prosecution, and First Amendment retaliation). These claims against Colorado Springs are dismissed with prejudice.

2. The Court DENIES the motion as to claim one against Colorado Springs for unlawful

seizure of Mr. Andersen's person.  This claim may proceed.

DATED this 12th day of August, 2021.

BY THE COURT:

*[signature: Brooke Jackson]*

_____

R. Brooke Jackson
United States District Judge

13