.IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02986-DDD-STV

CARL ANDERSEN, JR.,

  Plaintiff,

v.

CITY OF COLORADO SPRINGS, et al.,

  Defendants.

---

**RESPONSE TO TELLER COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DOC. 69]**

---

## I. INTRODUCTION

  On April 17, 2019, C.J. Andersen's 19- month-old daughter, Charlotte, was involved in a horrific accident. While Mr. Andersen's fiancée, Carissa Hiteshew was pulling her car out of the driveway, Charlotte ran after her mother and was accidently struck by the car. Because Charlotte's injuries were serious, she was transported via Flight for Life to the Intensive Care Unit at Memorial Central Hospital in Colorado Springs.

  While Mr. Andersen was attending to his fiancée and daughter, unbeknownst to him, law enforcement were amassing to investigate the accident. A group of officers from the Colorado Springs Police Department and Teller County Sheriff's Office stormed into the Andersen family hospital room. Officer Delcore, of the Colorado Springs Police Department, grabbed at Mr. Andersen's waist pocket attempting to seize his fiancée's phone, which Mr. Andersen was holding. Mr. Andersen, shocked, told the officers they had not right to take his phone. Officer DelCore responded by getting behind Mr. Andersen. Another Colorado Springs officer, Officer Eckert, grabbed Mr. Andersen's wrist. With the help of Officer Sandoval, of Colorado Springs

and Anthony Matarazzo, of Teller County, Officers DelCore and Eckert took Mr. Andersen to the ground, where Mr. Andersen was manhandled and Tazed twice. Mr. Andersen was then handcuffed and arrested on fabricated charges. All charges against him were dismissed.

Defendant Matarazzo ordered an unreasonable warrantless seizure of a cell phone, which led to brutal and completely unreasonable use of force against Andersen in his young child's hospital room. Ultimately, as a consequence of Defendant Matarazzo's order to seize the phone, the CSPD Defendants wrongfully arrested Andersen, though they had no probable cause that he committed any crime, and they instigated a malicious prosecution against him that was eventually correctly dismissed. Defendant Matarazzo is liable for the violations of Andersen's clearly established First, Fourth, and Fourteenth Amendment rights, and this Court must deny this motion for summary judgment.

## II. RESPONSE TO STATEMENT OF "UNDISPUTED" MATERIAL FACTS

1. Admit that Matarazzo stated this in his affidavit, which he submitted after his deposition in this case. Matarazzo and the other Individual Defendants self-serving testimony is often dubious and internally contradictory. Matters relating to a witness's credibility and bias, i.e., their state of mind, are quintessential jury questions. *See, e.g., United States v. Abel*, 469 U.S. 45, 52 (1984) ("Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.").

2. Admit that Matarazzo so testified; **Deny** that CJ Andersen had any legal obligation to cooperate with nurses or law enforcement. *See* **Ex. 1, Eckert Dep. 21:4-13; Ex. 2, Sandoval Dep. 29:16-30:5; Ex. 3, Matarazzo Dep. 58:18-62:10.**

3. Admit that Matarazzo so testified. **Deny** his claimed knowledge of the text messages; at his deposition Matarazzo testified only that he had heard third or fourth hand that a friend

of Carissa's had been texting her with "some level of detailed information regarding the incident being investigated." **Ex. 3, Matarazzo Dep. 15:6-17:25** (making no mention of Carissa texting that "she had done something bad related to hitting her daughter with a car and was panicked." *Defs' Mot.* at 5).

4. Admit that Matarazzo testified this in his affidavit; **<u>Deny</u>** that "he believed that the cell phone *would* contain important information." (emphasis added). At his deposition he testified that he had no information about the contents of the text messages, that they could have been exculpatory, and that he did not follow up with the other member of the text exchange to get any more detail. **Ex. 3, Matarazzo Dep. 15:6-19:22, 27:19-28:9.**

5. Admit that Matarazzo entered the Andersen family's hospital room while they were watching over their injured 19-month-old child and repeatedly pressed the family for information, even after they understandably stated that they would answer questions later but that there was a ton of stress for the family at that moment. **Defs' Ex. B.**

6. **<u>Deny</u>** that Plaintiff or Carissa flatly refused to speak to officers—both Andersen and Carissa explicitly stated that they would answer questions but that the present moment was very stressful and asked for the common courtesy of a bit of time. **Defs' Ex. B. <u>Deny</u>** also that Andersen or his family had any legal obligation to speak with the officers. **Ex. 1, Eckert Dep. 21:4-13; Ex. 2, Sandoval Dep. 29:16-30:5; Ex. 3, Matarazzo Dep. 58:18-62:10.**

7. Admit that Carissa stated this after Matarazzo had persisted in pressing her following her statement that "I'm like really stressed out right now because I'm trying to get through all our questions and I haven't slept at all today and I'm pregnant and emotional and I need to process some stuff and think and make sure that I'm being clear." **Defs' Ex. B. 02:30-**

**03:15.**

8. **Deny** that Matarazzo "asked" for her phone; he flatly demanded the phone, with no explanation as to why, and then insisted that he was entitled to it when the family objected that he had no right to take it. **Defs' Ex. B 03:00-04:14.** **Deny** that the family became "defensive"—rather, they correctly insisted that their rights were respected and that he had no right to the phone. **Ex. 3, Matarazzo Dep. 62:2-10.**

9. Admit. **Deny** that the officers had any particularized reason to believe that Andersen would erase "evidence" from the phone. **Ex. 4, Delcore Dep. 61:16-62:10, 73:5-18, 75:10-76:18** (testifying that the possible risk of erasure exists with every cell phone); **Ex. 1, Eckert Dep. 82:**

10. **Deny** that the family "refused to cooperate"; the family explicitly told him that they would answer questions but asked for a bit of time and space while they focused on the serious injuries to their 19-month-old daughter. **Defs' Ex. B. Deny** also that Matarazzo was "denied any access to the phone"—he had demanded only that the phone be turned over to him and the family had exercised their rights to refuse; Matarazzo did not ask for any other means of access to the phone (e.g. for Carissa to show him any text messages) or explain to the family what his purpose was. *Id.*

11. **Deny** that Andersen's demeanor was aggressive when three more officers came into the hospital room and again demanded from him a phone that they had no legal right to seize.

12. Admit that Eckert was able to take a phone out of Andersen's pocket when the officers violently took Andersen to the ground and tased him.

13. Admit.

14. Admit that Matarazzo did not use force against Andersen; however, Matarazzo set the

force in motion by involving the CSPD officers in his unlawful quest to seize the phone without legal basis and he failed to intervene, though he had every opportunity to do so, when the CSPD officers violently took Andersen to the ground and tased him. *See* [**Doc. 68-14], Eckert BWC 00:19-03:58.**

15. Admit.

16. Admit.

17. **Deny.** Matarazzo was present for the entire interaction and was in charge of the investigation. **Ex. 2, Sandoval Dep. 27:17-28:10; Ex. 1, Eckert Dep. 18:21-19:9.** He ordered the CSPD officers to seize the phone and stood by and watched as the officers used force and arrested Andersen. **Ex. 4, Delcore Dep. 15:6-17, 62:25-63:9** ("we were seizing the phone under the orders of [Matarazzo]"); **Ex. 1, Eckert Dep. 27:7-12.**

18. **Deny.** Plaintiff's written discovery asserts a lack of training on lawful search, seizure, and arrest, as well as deficient informal and unwritten policies on the part of Teller County that caused the violation of Andersen's constitutional rights.

19. Admit that TCSO provides some training for its employees; **Deny** the implication that the existence of training insulates Teller County from municipal liability.

20. Admit that TCSO's written policies comply with the constitution; **Deny** TCSO officer Matarazzo complied with clearly established constitutional law in this case.

21. Admit that Teller County did not review this incident, though it resulted in the tasing of a Marine combat veteran in the hospital room of his injured 19-month-old daughter, the unlawful seizure of two cell phones, and obviously unlawful, though minor misdemeanor, charges being filed that were correctly dismissed.

### III. ADDITIONAL DISPUTED AND UNDISPUTED MATERIAL FACTS

1.      From when they arrived at the hospital through grabbing and tasing Andersen to forcefully seize the phones, the officers did not have probable cause that any crime had been committed. **Ex. 3, Matarazzo Dep. 30:5-10; Ex. 1, Eckert Dep. 24:4-8.**

2.      The Andersen family had no legal obligation to cooperate with nurses or the police. **Ex. 1, Eckert Dep. 21:4-13; Ex. 2, Sandoval Dep. 29:16-30:5; Ex. 3, Matarazzo Dep. 58:18-61:10.**

3.      Mr. Andersen had no legal obligation to give the officers the cell phone. **Ex. 3, Matarazzo Dep. 62:2-10.**

4.      Nothing prevented the officers from attempting to obtain a warrant to seize the phones but no officer tried. **Ex. 1, Eckert Dep. 82:2-11.**

5.      The CSPD officers explanation for the alleged exigency was not based on facts specific to the Andersen family and was instead based on the ability of any person to delete text messages from any cell phone. **Ex. 2, Sandoval Dep. 42:20-25; Ex. 1, Eckert Dep. 39:2-20; Ex. 4, Delcore Dep. 61:16-62:10, 73:5-18, 75:10-76:18** ("It was exigent circumstances, and with all electronic devices, [deletion] is a possibility.").

6.      Matarazzo testified that there was no probable cause of a crime but the exigency supporting the officers' warrantless seizure of the phone was that Charlotte was a minor who would not be capable of speaking for herself, and he "felt that it was reasonable to take the phones due to the complications of not being able to get a victim interview. That was part of it." **Ex. 3, Matarazzo Dep. 30:5-31:19, 62:11-24.**

7.      The officers believed that Carissa had been texting with another person but they made no attempt to contact the other person to find out any details about the text exchange. **Ex. 3, Matarazzo 15:6-18:23, 28:10-29:10.**

8.      All of the officers understood Matarazzo to be in the lead on the investigation. *See, e.g.,* **Ex. 2, Sandoval Dep. 27:17-28:10; Ex. 1, Eckert Dep. 18:21-19:9.**

9.      Matarazzo told the CSPD officers to seize the phone. **Ex. 4, Delcore Dep. 15:6-17, 62:25-63:9** ("we were seizing the phone under the orders of [Matarazzo]"); **Ex. 1, Eckert Dep. 27:7-12.**

10.     A good investigation would have included an attempt to contact the other person on the texts for information. **Ex. 3, Matarazzo 67:14-69:24.**

11.     The officers wrongfully charged Andersen with misdemeanors that were "very minor." **Ex. 4, Delcore Dep. 52:2-14; Ex. 2, Sandoval Dep. 58:7-13.** Those charges were dismissed.

12.     The body-worn camera in the case shows Delcore attempting to grab the phone from Andersen's pocket soon after he entered the hospital room, at which point Andersen told him not to grab things out of his pocket. *See* **[Doc. 68-14], Eckert BWC 00:19-00:30.** Delcore then threatened Andersen that he was "going to hit the ground real hard." *Id.* **00:25-00:32.** The officers then spend a minute and a half heatedly demanding that Andersen turn over the phone, which he refused to do because they did not have the right to take it. *Id.* **00:32-00:02:10.** Finally, Delcore circles behind Andersen's back and unprovokedly grabs his left arm. *Id.* **02:10-02:20.** As Eckert grabbed Andersen's other wrist, Delcore tased Andersen. *Id.* **02:20-02:30.** Eckert and Sandoval then forced Andersen to the ground on his stomach, while Delcore threatened to tase him again. *Id.* **02:25-2:38.** Delcore then tased Andersen again while he was under control of Eckert and Sandoval. *Id.* **02:33-02:44.** The officers then handcuffed Andersen and took him out of the hospital room. *Id.* **02:47-03:58.**

## IV. Standard of Review

Summary judgment is appropriate only if the record contains no evidence of a genuine issue of material fact and demonstrates that the moving party is entitled to judgment as a matter of law. *Woodman v. Runyon*, 132 F.3d 1330, 1337 (10th Cir. 1997). The nonmovant is given "wide berth to prove a factual controversy exists," *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995), and all reasonable inferences must be drawn in the light most favorable to the nonmoving party. *Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 484 (10th Cir. 1995). "Where different ultimate inferences may be drawn from the evidence presented by the parties, the case is not one for summary judgment." *Brown v. Parker-Hannifan Corp.*, 746 F.2d 1407, 1411 (10th Cir. 1984).

At the summary judgment stage where a defendant asserts qualified immunity, "the court considers whether the evidence, *viewed in the light most favorable to the party asserting the injury*, shows that the alleged wrong-doer violated a constitutional right." *Hays v. Ellis*, 331 F. Supp. 2d 1303, 1307 (D. Colo. 2004) (emphasis added); *see also Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (stressing that the same summary judgment analysis applies to defining the context of a case for purposes of the clearly established prong of qualified immunity). "The judge's function at the summary judgment stage 'is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *French v. City of Cortez*, 361 F. Supp. 1011, 1021 (D. Colo. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## V. Argument

### A. Defendant Matarazzo Set in Motion the Cascading Series of Constitutional Violations Perpetrated Against Andersen.

Matarazzo asserts that he did not have sufficient personal involvement to be found liable

for the constitutional violations Andersen suffered at the hands of all the officers. *Defs' Mot.* at 8-9. This mischaracterizes both the facts and the law. All of the officers understood Matarazzo to be in the lead on the investigation. *See, e.g.,* **Ex. 2, Sandoval Dep. 27:17-28:10; Ex. 1, Eckert Dep. 18:21-19:9.** Matarazzo told the CSPD officers to seize the phone. **Ex. 4, Delcore Dep. 15:6-17, 62:25-63:9** ("we were seizing the phone under the orders of [Matarazzo]"); **Ex. 1, Eckert Dep. 27:7-12.**

"For liability under section 1983, direct participation is not necessary," as "[a]ny official who 'causes' a citizen to be deprived of [his] constitutional rights can…be held liable." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1279 (10th Cir. 2008) (citation omitted). "The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of [his] constitutional rights." *Id.* at 1279-80 (citation omitted).

Defendant Matarazzo set the entire incident in motion. Without his involvement and orders to the CSPD officers to unlawfully seize the phone, none of the violations of Andersen's constitutional rights would have happened. Matarazzo knew or should have known that his actions in enlisting three additional officers to physically enter the hospital room would escalate the situation, that Andersen would still insist that his rights be respected, and that the CSPD officers may use completely unnecessary force in hopes of obeying Matarazzo's unlawful order to seize the phone. Therefore, he is liable for the violations of Andersen's constitutional rights.

B. **Defendants Violated Plaintiff's Clearly Established Right To Be Free From Unlawful Search of His Person and Seizure.**

Defendant Matarazzo led the charge in unlawfully demanding that Andersen turn over the cell phone. Defendants had no warrant to seize the phone, they did not have probable cause to believe that any crime had been committed, and the circumstances did not come near satisfying

the exigent circumstances exception to the warrant requirement. And yet, when Andersen correctly refused Matarazzo, alone, Matarazzo enlisted the three CSPD officers to seize the phone by means of violent, unreasonable force.

> Few protections are as essential to individual liberty as the right to be free from unreasonable searches and seizures. The Framers made that right explicit in the Bill of Rights following their experience with the indignities and invasions of privacy wrought by "general warrants and warrantless searches that had so alienated the colonists and had helped speed the movement for independence. Ever mindful of the Fourth Amendment and its history, the Court has viewed with disfavor practices that permit "police officers unbridled discretion to rummage at will among a person's private effects."

*Byrd v. United States*, 138 S. Ct. 1518, 1526 (2018) (internal citation and quotation omitted).

"[T]he most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions.'" *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55, 91 S. Ct. 2022, 2032 (1971). "[E]xceptions to the warrant requirement are few in number and carefully delineated, and . . . the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." *Welsh v. Wisconsin*, 466 U.S. 740, 749-50 (1984) (internal quotation omitted).

One exception to the warrant requirement is exigent circumstances, which "applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Missouri v. McNeely*, 569 U.S. 141, 148-49 (2013). In each of the exigent circumstances ever recognized by the Supreme Court there has been "a compelling need for official action and no time to secure a warrant." *Id.* Cell phones contain "the sum of an individual's private life," they are of a unique

and personal character, and therefore a seizure is a substantial intrusion into its owner's possessory interest. *Riley v. California*, 573 U.S. 373, 394 (2014).

Any reasonable officer in Defendant Matarazzo's position would have known the black letter law that warrantless searches and seizures are presumptively unreasonable and that the exceptions to the warrant requirement are narrow and closely drawn. *Holland v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001) (in the qualified immunity analysis "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."). Given that well-established legal backdrop, any reasonable officer also would have known that that this case did not present exigent circumstances to search and seize the Andersen's cell phones. Defendants had no idea whether the content of the alleged text messages were inculpatory or exculpatory. Defendants had no particularized reason to believe that the Andersen family was attempting to delete evidence or would attempt to do so at any point; instead, their assertion of exigency was based on the possibility that information on any cell phone *can be* deleted.

Defendants' position would create a blanket rule allowing the warrantless seizure of cell phones under any circumstances in which officers have even the tiniest hunch that the phone may contain relevant information. This is not and has never been the law, and it flies in the face of decades worth of Supreme Court precedent insisting on adherence to the warrant requirement and very closely limiting the exceptions to that requirement, like exigent circumstances. *See, e.g., Cortez v. McCauley*, 478 F.3d 1108, 1123 (10th Cir. 2007) (stressing that exigent circumstances cannot simply be based on officers "recit[ing] urgent needs without factual support. Otherwise, the exception swallows the rule.").

In the present motion Defendants falsely claim that "Matarazzo had no other alternative but to obtain the cell phone." *Defs' Mot.* at 13.[1] Per Matarazzo's own deposition testimony, as well as common sense, this is simply not true. First, Matarazzo was aware that the very same text messages would be on the phone of the other party to the text exchange, from whom he had received the very limited information that he had. **Ex. 3, Matarazzo Dep. 16:5-17:25.** He agreed that he could have asked for further information about the text conversations from that person and could have even obtained the texts that way. *Id.* **18:1-19:22.** Indeed, Matarazzo testified (in direct contradiction of Defendants' current briefing) that "[t]hat was a possible alternative source. Correct." *Id.* **19:5-12.** Second, and more fundamentally for purposes of well-established constitutional law, nothing prevented Matarazzo from attempting to obtain a warrant for the phones. *Id.* **52:23-53:15; Ex. 1, Eckert Dep. 82:2-11.** Matarazzo made no effort to obtain a warrant before he ordered the CSPD officers to seize the phone. **Ex. 3, Matarazzo Dep. 52:23-53:15.**

Defendant Matarazzo's citation to *Riley v. California* supports Plaintiff's position. In *Riley*, the Supreme Court confronted the issue of whether a cell phone could be searched incident to a lawful arrest. 573 U.S. 373, 381-86 (2014). *Riley* is not an exigent circumstances case[2] and

---

[1] Defendant first wrongly asserts that Andersen had no standing to assert a constitutional violation for Defendants forcibly taking personal property out of his pocket. *Defs' Mot.* at 12. Andersen was in lawful possession of his fiancée's phone and had no legal obligation to turn it over to the officers—therefore, the Fourth Amendment protected him from having his person searched and the phone taken from his pocket. *Cf., e.g., Byrd v. United States*, 138 S.Ct. 1518, 1530 (2018) (holding that person in lawful possession or control of the searched automobile had Fourth Amendment standing to challenge its search, even though he was not included on the rental agreement for the car); *see also Hoffa v. United States*, 385 U.S. 293, 301 (1966) ("when he puts something in his filing cabinet, in his desk drawer, or in his pocket, he has a right to know it will be secure from an unreasonable search or seizure.").

[2] The Court stressed that if law enforcement has "specific concerns about the potential loss of evidence in a particular case" and are "truly confronted with a 'now or never' situation . . . they

Defendants in this case did not seize the phone from Andersen pursuant to a lawful arrest. Moreover, the Court held that the uniquely personal nature of cell phones required that law enforcement get a warrant before searching a phone, even incident to a lawful arrest. *Id.* The Supreme Court also expressed skepticism at the remote deletion possibility that Defendants have vaguely raised in this case, stating "[w]e have also been given little reason to believe that either problem is prevalent. The briefing reveals only a couple of anecdotal examples of remote wiping triggered by an arrest." *Id.* at 389.

Unlike other areas of Fourth Amendment law, Defendants were not operating on a blank canvas whereby the specific circumstances of each case fundamentally alter the analysis. Instead, any reasonable officer would know that the default presumption is that warrantless searches and seizures are unreasonable and violate the Fourth Amendment, unless they fall within a specifically-defined exception. Such an officer would also know that the exceptions to the warrant requirement are narrow and closely guarded—they are not to be thoughtlessly expanded beyond all reason as Defendants attempt in this case.

By the officers' own admission, they had no idea whether the alleged text messages between Carissa and the "informant" were inculpatory or exculpatory. Moreover, this case involves a second person who had the same text messages on her phone and from whom the exact same information could have been easily obtained. Lastly, there was nothing at all that prevented Defendants from attempting to secure a warrant for the phones before forcibly seizing them from Andersen and no particularized reason for Defendants to suspect that the Andersen family was or would be deleting anything from the phones.

As the Eleventh Circuit has been careful to note regarding a very similar argument:

---

may be able to rely on exigent circumstances to search the phone immediately." *Riley*, 573 U.S. at 391.

Beatty contends that the "nature of cell phones" leads to easily-destroyed evidence that disappears quickly. This, according to him, is itself sufficient reason to find exigent circumstances here. Taken to its logical conclusion, his interpretation would permit police officers to seize now-ubiquitous cell phones from any person, in any place, at any time, so long as the phone contains photographs or videos that could serve as evidence of a crime—simply because the "nature" of the device used to capture that evidence might result in it being lost. Not so. The Fourth Amendment draws a line well short of this awesome breadth of government power that no court, to our knowledge, has come close to recognizing. The Constitution requires Beatty's argument to fail.

*Crocker v. Beatty*, 886 F.3d 1132, 1137 (11th Cir. 2018).

For these reasons, any reasonable officer would have known that he did not have exigent circumstances to seize the Andersen's phones.

### C. **Defendants Violated Plaintiff's Clearly Established Right To Be Free From Excessive Force.**

#### 1. **Disputed Issues Of Material Fact Preclude Summarily Judging Andersen's Excessive Force Claim.**

The Tenth Circuit "will not approve summary judgment in excessive force cases—based on qualified immunity or otherwise—if the moving party has not quieted all disputed issues of material fact." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1314 (10th Cir. 2002) (citing *Allen v. Muskogee*, 119 F.3d 837, 840-42 (10th Cir. 1997)). Here, the parties hotly dispute what occurred in that hospital room and the body-worn camera recordings do not support Defendants' use of overwhelming force, including two tasings.

Defendants support their factual narrative with only self-serving testimony. *See Zuchel v. Spinharney*, 890 F.2d 273, 274 (10th Cir. 1989) ("This rather one-sided factual summary provided by [the officer], however, is only part of the picture presented by the evidentiary record which is before us. Other testimony and evidence contained in the summary judgment record casts doubt on the objective reasonableness of [the officer's] use of deadly force."). Defendants'

allegedly "undisputed" facts are drawn almost exclusively from their own depositions, as well as, curiously, an affidavit that Matarazzo provided *after* he was deposed in this case.

The Tenth Circuit has held, "where there are disputed issues of material fact, the question of reasonableness underlying a Fourth Amendment violation is for the jury." *Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1253-54 (10th Cir. 2013). As made clear above, this is a case full of factual disputes regarding the basis for Defendants' use of overwhelming force, and for this reason alone, this Court must deny Defendants' summary judgment on Andersen's excessive force claim.

### 2.  Defendants Used Excessive Force.

 "A police officer violates an arrestee's clearly established Fourth Amendment right to be free of excessive force during an arrest if the officer's arresting actions were not objectively reasonable in light of the facts and circumstances confronting him." *Maresca v. Bernalillo Cty.*, 804 F.3d 1301, 1313 (10th Cir. 2015). Reasonableness is determined "without regard to the [officer's] underlying intent or motivation." *Weigel v. Broad*, 544 F.3d 1143, 1151 (10th Cir. 2008). The inquiry is based on the totality of the circumstances, including three, non-exclusive factors: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009). This Court must also consider whether Defendants' own reckless or deliberate conduct unreasonably created the need to use force. *Allen*, 119 F.3d at 840.

Importantly for Defendant Matarazzo, under clearly established law, police have an "affirmative constitutional duty to stop other officers from using unconstitutionally excessive force." *Casey*, 509 F.3d at 1283.

> It is not necessary that a police officer actually participate in the use of excessive force in order to be held liable under section 1983.  Rather, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance.

*Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996); *see also Fogarty v. Gallegos,* 523 F.3d 1147, 1163 (10th Cir. 2008); *Walton v. Gomez*, 745 F.3d 405 (10th Cir. 2014).

Matarazzo was present for the entire use of force and had every opportunity to intervene to stop the use of unreasonable force. Indeed, he was the one who had ordered the CSPD officers to seize the phone. And he was recognized by all of the officers as in charge of the investigation. The facts of the use of force taken in the light most favorable to Andersen show the CSPD Defendants angrily demanding the cell phone from Andersen, though they had no legal basis to do so. When Andersen insisted that he was not legally obligated to turn over the phone and would not do so, Delcore grabbed Andersen unprovoked. Immediately thereafter, Eckert also grabbed Andersen and Delcore tased him. Then, all three CSPD officers forcibly took Andersen to the ground and Delcore tased him again. Andersen never threatened any officer or attempted to flee, and the crime he was wrongfully suspected of was a minor misdemeanor. Unequivocal precedent establishes clearly that force in such a scenario is excessive. *McCowan v. Morales*, 945 F.3d 1276, 1289 (10th Cir. 2019); *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1285 (10th Cir. 2007); *Dixon v. Richer*, 922 F.2d 1456, 1457-59, 1462-63 (10th Cir. 1991); *Grass v. Johnson*, 322 F. App'x 586, 590 (10th Cir. 2009); *Davis v. Clifford*, 825 F.3d 1131, 1137 (10th Cir. 2016); *McCoy v. Meyers*, 887 F.3d 1034, 1052 (10th Cir. 2018). A reasonable officer in Defendant Matarazzo's position would have known that the use of force was excessive and would have called the CSPD officers off from their attack on Andersen.

Further, all of the *Graham* factors weigh *heavily* in Andersen's favor. First, Andersen was cited for "very minor" misdemeanors. "A minor offense—at most—support[s] the use of

minimal force." *Davis*, 825 F.3d at 1131; *see also Fisher*, 584 F.3d at 895; *Fogarty v. Gallegos,*
523 F.3d 1147, 1160 (10th Cir. 2008); *Koch v. City of Del City*, 660 F.3d 1228, 1246-47 (10th
Cir. 2011).

Second, there is no evidence that Andersen posed any immediate threat to the safety of
officers or others when the officers used force. *Casey*, 509 F.3d at 1282. The evidence, taken in
the light most favorable to Andersen, demonstrates that Defendants violently took Andersen to
the ground after no provocation from him and tased Andersen twice in the process. "It is
irrelevant that [the officer accused of excessive force] claim[ed] he felt threatened by [the
plaintiff]" because the question is whether the plaintiff "posed an objective threat" or was
"objectively unthreatening[.]" *Autin v. City of Baytown*, 174 Fed. Appx. 183, 185-86 (5th Cir.
2005). The video recording makes clear that Andersen was not objectively threatening to any
officer at any point.

Third, Andersen was neither attempting to flee nor evading arrest. Andersen did not
attempt to leave the room or get away from the officers. To the extent any of Andersen's conduct
could be termed resistance, as three officers manhandled him to the floor and tased him twice, it
would not justify the amount of force used by Defendants. *See Fisher*, 584 F.3d at 894.

Fourth, "[t]he excessive force inquiry includes not only the officers' actions at the
moment that the threat was presented, but also may include their actions in the moments leading
up to the suspect's threat of force . . . if the conduct is 'immediately connected' to the suspect's
threat of force." *Allen*, 119 F.3d at 840 (citing cases); *Casey*, 509 F.3d at 1283, 1285; *Fogarty*,
523 F.3d at 1159. Nothing about Andersen's actions justified even going hands-on. Put simply,
Defendants actions in surrounding Andersen, attempting to grab a phone out of his pocket, and
then physically manhandling him "took a situation where there obviously was no need for the

17

use of any significant force and yet took an unreasonably aggressive tack[.]" *Smith v. Ray*, 781 F.3d 95, 104 (4th Cir. 2015) (denying qualified immunity based on this fact alone).

Finally, it was clearly established at the time of this incident that the use force against a "non-threatening misdemeanant arrestee" violates the Fourth Amendment. *Casey*, 509 F.3d at 1285 ("*Graham* establishes that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest."); *McCowan*, 945 F.3d at 1289*Dixon*, 922 F.2d 1456, 1457-59, 1462-63; *Grass*, 322 F. App'x at 590; *McCoy v. Meyers*, 887 F.3d 1034, 1052 (10th Cir. 2018). And, even absent this clear precedent, the weight of the *Graham* factors is obvious enough to serve as adequate notice of unconstitutional conduct, as it did in *Casey*, 509 F.3d at 1281.

## C. Defendants Violated Plaintiff's Clearly Established Right To Be Free From Unlawful Arrest.

Because an arrest is "the most intrusive of Fourth Amendment seizures," an arrest is "reasonable only if supported by probable cause." *United States v. White*, 584 F.3d 935, 944-45 (10th Cir. 2009) (internal quotation marks omitted). Accordingly, "[i]t has long been established that an arrest . . . without probable cause that a crime has been committed violates the Fourth Amendment." *Shroff v. Spellman*, 604 F.3d 1179, 1188 (10th Cir. 2010). "Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to have the belief that an offense has been or is being committed by the person to be arrested." *United States v. Alonso*, 790 F.2d 1489, 1496 (10th Cir. 1986). This is an objective standard, and thus "[t]he subjective belief of an individual officer as to whether there was probable cause for making an arrest is not dispositive." *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004).

Again, though Defendant Matarazzo was not the arresting officer, he set this chain of events in motion by ordering the CSPD officers to seize the phone and he failed to intervene in the unlawful arrest of Andersen. He is therefore liable for the violation of Andersen's clearly-estbalished right to be free from wrongful arrest. Mr. Andersen had no legal obligation to cooperate with Defendants and hand over a cell phone that the officers had no right to seize. **Ex. 3, Matarazzo Dep. 58:18-62:10.** Andersen did not threaten any officer at any time and only moved when Delcore grabbed him, with no legal basis. Nothing Andersen did while he was being unjustifiably and unreasonably wrestled to the ground and tased constituted a crime. In Colorado, any reasonable officer would know (as Defendants do, *see, e.g.,* **Ex. 4, Delcore Dep. 28:5-21**) that a person is statutorily empowered to resist an officer's use of excessive force against him. *See, e.g., People v. Fuller*, 781 P.2d 647, 650 (Colo. 1989) (discussing C.R.S. §§ 18-1-704, 18-1-708(1)(a) & 18-8-103(2)). To the extent Andersen did anything while the officers used excessive force, his actions were legally permissible resistance and could not provide probable cause for his arrest. Therefore, Defendant Matarazzo's motion for summary judgment on Plaintiff's wrongful arrest claim must be denied.

### D. <u>Defendants Violated Plaintiff's Clearly Established Right to Be Free From Retaliation of his Exercise of his First Amendment Rights.[3]</u>

"[A]ny form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom." *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). If "the plaintiff was engaged in constitutionally protected activity[,]" "the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to

---

[3] Plaintiff concedes his malicious prosecution claim against Matarazzo and Teller County.

19

engage in that activity[,]" and "the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct," then retaliation in violation of the First Amendment has been established. *Id.* at 1212. This right is clearly established. *See Nieves v. Bartlett*, 139 S. Ct. 1715 (2019); *Esparza v. Bowman*, 523 Fed. Appx. 530, 536-37 (10th Cir. 2013).

Matarazzo unleashed the CSPD officers on Andersen because Andersen correctly insisted that Matarazzo had no right to seize the cell phone without a warrant. In retaliation for Andersen exercising his rights, Matarazzo ordered the three CSPD officers to enter the hospital room and seize the phone. The Andersen family had no legal obligation to cooperate with nurses or the police, and Mr. Andersen had no legal obligation to give the officers the cell phone. **Ex. 3, Matarazzo Dep. 58:18-61:10, 62:2-10.** And yet, the reason Defendants violently arrested Andersen was because he was exercising his First Amendment right to refuse the officers' unconstitutional demands to turn over the phone. **Ex. 3, Matarazzo Dep. 60:24-61:10** (admitting that the Andersen family had a legal right to do exactly what they did but that he used their refusal to cooperate as a basis to use force to seize the phone); **Ex. 2, Sandoval Dep. 50:15-51:17; Ex. 4, Delcore Dep. 35:10-36:20**. Being manhandled to the floor and tased twice in your young daughter's hospital room would chill a person of ordinary firmness from exercising his or her constitutional rights. Therefore, Defendant Matarazzo's motion for summary judgment on Plaintiff's First Amendment retaliation claim must be denied.

### E.  A Reasonable Jury Could Find Teller County Municipally Liable for the Violations of Andersen's Constitutional Rights.

A municipality is liable for constitutional torts if the alleged unconstitutional acts implicate a policy, practice, or custom of the local government, and the execution of a policy or custom caused an injury of constitutional dimensions. *Monell v. Dep't of Soc. Servs.*, 436 U.S.

658, 690-94 (1978); *D.T. v. Indep. Sch. Dist.*, 894 F.2d 1176, 1187 (10th Cir. 1990); *Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 308 n.4 (10th Cir. 1985). Plaintiff must establish "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cnty. Bd. of Cnty. Commr's*, 151 F.3d 1313, 1316 (10th Cir. 1998). A policy or custom can be established in many ways, including demonstrating the existence of:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (citation and quotations omitted). There is sufficient evidence on which a jury could find municipal liability in this case.

The necessity of a warrant to search and seize property and the limited, narrow exceptions to the warrant requirement are fundamental aspects of policing. Teller County knows "to a moral certainty that their police officers will be" confronted with situations in which they need to determine whether they can legally seize personal property without a warrant. *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989). Teller County has trained Matarazzo that if that he has any reason to believe that there is information on a person's cell phone, he can seize that cell phone without a warrant because things can be deleted. This training has apparently stretched so far as to include text messages, which are of course included on multiple phones and cannot simply be unilaterally deleted by one of the participants. Neither of these positions is in accordance with long-established Fourth Amendment law, and the lack of appropriate training caused Matarazzo to order the CSPD Defendants to seize Andersen's phone without a warrant,

probable cause, or exigent circumstances.

Teller County's failure to properly train and supervise its officers demonstrates deliberate indifference "as to its known or obvious consequences" toward persons with whom TCSO officers come into contact. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S 397, 407 (1997). Because the "need for more or different training [on lawful seizure of personal property] is so obvious, and the inadequacy so likely to result in the violation of constitutional rights," Teller County is liable for Defendant Matarazzo's clear violation of Andersen's Fourth Amendment rights. *Harris*, 489 U.S. at 390. Teller County consciously chose to disregard the risk of harm despite having actual or constructive notice "that its action or failure to act is substantially certain to result in a constitutional violation[.]" *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). For those reasons, Teller County is municipally liable for causing Defendant Matarazzo's unconstitutional conduct.

## VI. CONCLUSION

For the reasons state above, Defendants' Motion For Summary Judgment must be denied.

DATED this 19th day of November 2021.

> *s/ David A. Lane*
> David A. Lane
> Reid Allison
> Tyrone Glover
> KILLMER, LANE & NEWMAN, LLP
> 1543 Champa Street, Suite 400
> Denver, CO 80202
> (303) 571-1000
> dlane@kln-law.com
> rallison@kln-law.com
> tglover@kln-law.com

## CERTIFICATE OF SERVICE

I certify that on this 19th day of November 2021 I filed the foregoing via CM/ECF, and CM/ECF will generate a Notice of Electronic Filing to the following:

Eric Ziporin
Courtney Kramer
Senter Goldfarb & Rice, LLC
3900 E. Mexico Ave., Ste 700
Denver, CO 80210
303-320-0509
eziporin@sgrllc.com
ckramer@sgrllc.com
*Attorneys for Teller County Defendants*

Ryan Doherty
Office of the City Attorney
30 S. Nevada St. Ste 501
Colorado Springs, CO 80903
719-385-5909
Ryan.doherty@coloradosprings.gov
*Attorney for Colorado Springs*

Gordon Vaughan
Vaughan & DeMuro
111 S. Tejon St., Ste 545
Colorado Springs, CO 80903
709-578-5500
gvaughan@vaughandemuro.com
*Attorney for CO Springs Officer Defendants*

*s/ Jamie Akard*
Paralegal