IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge R. Brooke Jackson

Civil Action No. 1:20-cv-02032-RBJ

CARL ANDERSEN JR.,

    Plaintiff,

v.

THE CITY OF COLORADO SPRINGS,
TELLER COUNTY COLORADO,
VITO DELCORE, in his individual and official capacity,
TODD ECKERT, in his individual and official capacity,
CARLOS SANDOVAL, in his individual and official capacity, and
ANTHONY MATARAZZO, in his individual and official capacity,

    Defendants.

---

ORDER re PLAINTIFF'S EXPERT

---

Defendants move to strike portions of the expert report of Dan Corsentino because they are not proper rebuttal opinions. For the reasons discussed below, defendant's motion is GRANTED.

## I. BACKGROUND

On April 17, 2019 Carl Andersen, Jr.'s fiancée, who at the time was pregnant with their second child, was pulling her car out of the driveway. Plaintiff alleges that their 19-month old daughter ran after her and was accidentally struck by the moving car. They drove her to a hospital in Woodland Park, Colorado. Due to the seriousness of the child's injuries, she was

1

transported by helicopter to Memorial Central Hospital in Colorado Springs.

Detective Anthony Matarazzo of the Teller County Sheriff's Office suspected that child abuse was the cause of the injuries.  When Detective Matarazzo and other officers arrived at the hospital room where family members had gathered, they asked Mr. Anderson to  hand over his fiancée's cell phone, because they believed it contained evidence of a crime.  Mr. Andersen refused.  Detective Matarazzo then enlisted the help of Colorado Springs Police Department officers Vito Delcore, Todd Eckert, and Carlos Sandoval.  Officer Delcore allegedly grabbed at Mr. Andersen's waist pocket for the phone.

Plaintiff continue to refuse to yield the phone.  Allegedly, Officers Eckert and Delcore grabbed Mr. Andersen' wrists, and Officer Delcore tased plaintiff in the back.  While he was on the floor, Officer Delcore tased him again.  The officers then handcuffed and detained Mr. Anderson, and they seized both his fiancée's phone and his own phone.  They allegedly interrogated him without providing *Miranda* warnings, and they charged him with obstructing and resisting arrest.

The officers' reports describing plaintiff's actions and demeanor were allegedly contradicted by body worn camera footage.  The El Paso County District Attorney's Office eventually dismissed the case.  Mr. Andersen filed this case on July 13, 2020, asserting six claims against the officers, the City of Colorado Springs, and Teller County, Colorado: (1) unlawful seizure of Mr. Anderson's person; (2) unlawful search; (3) unlawful seizure of his property; (4) excessive force; (5) malicious prosecution; and (6) First Amendment retaliation.

In an order issued on August 12, 2021, the Court dismissed the claims against the City of Colorado Springs except the first claim.  ECF No. 53.  Trial is set to begin on April 25, 2022.

Motions for summary judgment filed by all defendants are pending and are not addressed in this order. *See* ECF Nos. 68, 69, 70. Likewise, a motion by the individual defendants to bifurcate the trial of the individual claims from the trial of the claims against the City and Teller County is pending but is not addressed in this order.

## EXPERT WITNESS DISCLOSURE

The parties submitted a proposed Scheduling Order on November 6, 2020. ECF No. 27. The Court reviewed their proposal, noted its comments in a red-lined version, and issued a final Scheduling Order on November 10, 2020. ECF Nos. 30 (final) and 30-1 (red-lined). The final order accepted the parties' proposed Case Plan and Schedule, including that plaintiff would disclose his expert witnesses by April 9, 2021; defendants would disclose their expert witnesses by May 7, 2021; and plaintiff would disclose any rebuttal expert by June 11, 2021. ECF No. 30 at 20-21.

Plaintiff did not disclose an expert. Defendants did disclose an expert, and plaintiff disclosed a rebuttal expert. The issue presented by the motion addressed in this order is whether the rebuttal expert's report and opinions exceeded the scope of proper rebuttal. I will summarize their respective opinions and then turn to the question presented.[1]

1. <u>Defendants' Expert, Kevin R. Sailor</u>.

In his report Mr. Sailor describes the operation of a X2 TASER, which is a hand-held, two shot Conducted Electrical Weapon. ECF No. 49-1 at 6-7. He then expresses several

---

[1] In listing the opinions of the two experts I am not attempting to evaluate the quality or the admissibility of their opinions. Rather, I will identify the opinions as I found them in their respective reports and review them solely for purposes of resolving the pending motion.

3

opinions concerning the incident:

- [The officers acted in good faith and under color of law when they decided to seize the fiancée's cell phone.][2]

- In light of Detective Matarazzo's information that the fiancée had been texting to someone about the accident, the seriousness of the child's injuries, and the lack of cooperation of the family in explaining how the child received her injuries, a reasonable police officer would have a reasonable belief that a crime was being committed. *Id.* at 7.

- Because leaving the scene of an accident involving serious bodily injury is a felony offense, it should have been investigated by the Colorado State Patrol. *Id.*

- The family should have called for emergency medical services rather than transporting the child to the hospital themselves. *Id.*

- As noted in Officer Delcore's report, cell phones can be accessed, and their data can be deleted, remotely. It was imperative that any potential evidence be preserved. Failure to seize the phone immediately could have resulted in the loss of critical evidence. Although a search warrant would have been needed before actually examining or analyzing the phone, immediate preservation of the data on the phone was an exigent circumstance that would permit a warrantless seizure. *Id.* at 7-8.

- The arrest could have been avoided had Mr. Anderson complied with the officers' requests to give the phone to them. *Id.* at 8.

- The fact that the case was later dismissed by the District Attorney does not change the

---

[2] I bracketed this opinion because defendants have indicated that they will not offer Mr. Sailor for these opinions. ECF No. 49 at 6, n.3.

fact that Mr. Anderson's actions met the statutory definition of Obstruction of a Peace Officer, nor does it establish that the officers' actions were unreasonable. *Id.*

- The family was uncooperative with the officers and with hospital personnel, resulting in a judge's grant of temporary custody of the child to the Department of Human Services. *Id*.

- The use of physical control holds by Officers Delcore and Eckert and Sgt. Sandoval conformed to generally accepted police practices and procedures, given Mr. Anderson's active and physical resistance to their efforts to control him and take him into custody. The body worn camera video did not show the use of excessive force. *Id.*

- The use of the taser by Officer Delcore was in accordance with generally accepted police practices and procedures and with training practices advocated by Axon Enterprise. The taser was fired at the preferred target zone and on the number of cycles needed for compliance. The second cartridge was fired due to the first one's becoming ineffective and the continued resistance by Mr. Anderson. *Id.*

- The TASER Pulse Log graph supports his opinions about the appropriate use of the taser. It shows the voltage measured inside the TASER, the Stim phase of the pulse, and the actual charge delivered. Regarding the first cartridge, the graph shows 63 microcoulombs being delivered for 1.5 to 1.75 seconds. The disconnection of the first shot was probably caused by the probes' becoming dislodged from the body, which is not unusual when a person is resisting and thrashing about. The second cartridge shows a solid completed circuit with 63 microcoulombs delivered for a full five-second cycle. This was corroborated by Mr. Anderson's reaction, and it allowed the officers to secure

him in handcuffs.  *Id.*

2.  Plaintiff's Rebuttal Expert Dan Corsentino.

Mr. Corsentino expresses numerous opinions in his report.  ECF No. 49-2.  As I will discuss later, I am bolding the opinions that I find to be improper rebuttal.

- **The incident was a preventable, systemic failure by the Colorado Springs Police Department and the Teller County Sheriff's Department.  The actions of the four defendant officers show a lack of professional training, basic communication, sensitivity/empathy, and a holistic awareness of the environment that they were in.  ECF No. 49-2 at 6.**

- There were no exigent circumstances to warrant use-of-force engagement.  *Id.*

- **There is/might be a disconnect between the "police philosophical leadership ideology" of the Colorado Springs Police Department and the "lack of alignment within the chain of command, indicated by Sgt. Sandoval's failure to carry out the department's ideology, policies and procedures.  *Id.***

- The individual defendants attempted to rationalize a reason to take the phone but had no probable cause to do so under the auspices of an emergency situation.  They had multiple better options.  *Id.*

- Better communication and verbal de-escalation would have resolved the situation.  *Id.*

- **The conduct of the officers does not represent best police practices.  *Id.* at 15.[3]**

- **If Sgt. Sandoval and Sgt. Matarazzo had followed the guidelines set forth by the**

---

[3] This is too broad and could be viewed as opening the door to the excluded opinions.  However, as to specific conduct that Mr. Sailor's report endorsed as proper, Mr. Corsentino certainly can express his opinion that the conduct falls below the standard of reasonable police practice.

> **International Association of Chiefs of Police in conducting an investigation, there would have been a better outcome.** *Id.* **at 16.**[4]

- A proper investigation requires that officers talk with witnesses, victims, and suspects; observe the crime scene; identify any victim; observe the injuries; and communicate with medical personnel about the severity and expected outcome of the injuries. Here, the officers did not do those things but jumped to the conclusion that a cell phone held all the answers. *Id.*[5]

- **The first hospital (U.C. Health Pikes Peak Regional Hospital) should have reported the incident to the Woodland Park Police Department or the Teller County Sheriff Office. If that had been done, Sgt. Matarazzo might have been the first responding officer instead of Sgt. Sandoval, possibly changing the outcome.** *Id.*

- **Nurse Bode (at the second hospital, Memorial Hospital) should have reviewed information supplied by the first hospital with the family and should have explained the procedure in a more concise and professional manner. This might have made the Anderson family feel more at ease. If it had been explained to the family that hospital staff were mandatory reporters to law enforcement of injuries that could be considered child abuse, this probably would have changed the family's reaction to the news that law enforcement would be contacted. "Finally, simply being asked or**

---

[4] The problem is not the reference to the International Association of Chiefs of Police guidelines. Both experts are discussing whether certain conduct of the officers did or did not comply with what a reasonable officer would have done. If a foundation is laid that IACP guidelines set the standard for reasonable police officer conduct, fine. The problem with this opinion is that, by itself, it is vague and not tethered to specific conduct addressed by Mr. Sailor.

[5] This is borderline because Mr. Sailor did not discuss what constitutes a proper investigation as such. However, the officers' knowledge of the facts informed their conduct. I find that criticism of their investigation of the facts is fair game in rebutting Mr. Sailor's endorsement of their conduct.

**told to leave a room is not a true reason to feel threatened, so Nurse Bode's judgement regarding this situation is questionable.** *Id.* at 16-17.

- **The experience of people involved in an investigation determines the amount of cooperation law enforcement officials will receive during the investigation. Nurses are responsible to inform the family of the circumstances. Mr. Anderson's father had run unsuccessfully for County Commissioner, and both he and Mr. Anderson were concerned about where the information collected by Nurse Julie Olson would be shared. She told them that information would be shared with the Colorado Springs police and Department of Human Services, which provoked a response from one of them that the DA's Office would open a case.** *Id.* at 17.

- Sgt. Sandoval, instead of talking to family members in another room, states that he stood at the door looking into the room where the fiancée was placed. Mr. Anderson asked him to step out of her line of vision because he was causing stress to his fiancée, who was pregnant and dealing with complications. That was a reasonable request, and Sgt. Sandoval's refusal to comply was unreasonable. *Id.*

- Sgt. Matarazzo did not indicate in his report that he tried to calm the situation down by explaining why law enforcement was involved and what the process was. Instead, he called the fiancée's phone to verify its number and location and then requested the phone. When it wasn't given to him, he contacted Sgt. Sandoval with a plan to take the phone. *Id.* at 18.[6]

- **If proper police tactics had been used, Mr. Anderson would not have been Tased or**

---

[6] I infer that Mr. Consentino believes the alleged conduct was unreasonable.

      arrested.  *Id.*[7]

- The seizure of the phone without consent, a search warrant, or truly exigent circumstances violated Mr. Anderson's and his fiancée's Fourth Amendment rights.  *Id.*

- Even if information such as text messages had been deleted, it could have been recovered through a forensic examination of the phone.  *Id.* and at 19-20.

- Because the officers had no right to seize the phone, there was not probable cause that he committed the crime of "Interference of a Police Officer."  *Id.*

- The use of the Taser was excessive force in the circumstances.  *Id.*

- **Sgt. Matarazzo's application for a search warrant omitted that Mr. Anderson was tased.  *Id.* at 18-19.**[8]

- **The officers interfered with the family's privacy at a critical time when emotions were high.  *Id.* at 19.**

- If the officers had seen Mr. Anderson start to destroy the phone by stomping on it or burning it, then there would have been an exigent circumstance and the right to immediately seize the phone.  *Id.*

- **When Sgt. Sandoval eventually became aware of how the child was injured, he should have passed the information on to Sgt. Matarazzo, so he could go to the scene and see if there was supporting evidence supporting the evidence provided.**

- Medical staff should have been able to determine whether the injuries were

---

[7] Again, this is too broad and invites discussion of the portions of his report and opinions that are improper rebuttal.

[8] It appears that Mr. Corsentino is critical of this, although it is not clear how that fits into this case.

9

**consistent with the child's having been run over by a car, which would have given Sgt. Matarazzo enough information to request a search warrant for "the property."** *Id.* **at 20.**

- Mr. Corsentino's "team" disagrees with Mr. Sailor's interpretation of the body worn camera video. *Id.* at 20-21.

- Mr. Corsentino disagrees with Mr. Sailor that the child's injuries and the lack of cooperation by the family in explaining how she received the injuries provided probable cause to seize the phone. *Id.* at 21.

- Mr. Corsentino disagrees with Mr. Sailor that the seizure of the phone was necessary to preserve evidence. *Id.* at 21-22.

- Mr. Corsentino's team disagrees with Mr. Sailor that Mr. Anderson's actions met the statutory definition of Obstruction of a Peace Officer. *Id.* at 22.

- **The officers are not entitled to "qualified immunity."** *Id.* **at 22.**

- **Hospital staff was required to contact law enforcement because of the severity of the child's injuries. If hospital staff had communicated with the family better, then Nurse Bode would not have told the police that the family was not being cooperative.** *Id.* **at 22.**

- **Best police practices required Sgt. Sandoval to communicate with hospital staff regarding the child's injuries, and to communicate with the family in a manner that would enable him to assess whether a crime had been committed. Instead, he escalated the anxiety that the family already had from Nurse Bode's treatment of them. Sgt. Matarazzo didn't follow best practices either when he focused on taking**

10

      **the phone from Mr. Anderson and the fiancée.** *Id.* **at 23.**

- **Best practices recognizes that non-verbal actions such as body language and facial expressions make up 50-60% of a verbal interchange; voice inflection accounts for between 33 and 40 percent; the content of the message amounts to about 7 to 10 percent. Best practices also includes empathizing with the other person. But Sgt. Matarazzo and Sgt. Sandoval did not follow these best practices.** *Id.* **at 23-24.**

- **Best practices include recognition that there are three types of people: nice, difficult and wimps. Difficult persons usually ask why when first asked to do something, as if looking for an argument. By not being defensive with difficult persons one can have control over the situation. But the two sergeants didn't follow this practice; instead, they were frustrated by the lack of cooperation of the Anderson family.** *Id.* **at 25.**

- Best practices include triaging verbal encounters and viewing the situation from the perspective of the other person. Rather than becoming frustrated, an officer should tailor his approach in a manner that will calm the other person's emotions. Neither sergeant did this. *Id.* at 25-26.

- Best practices includes using open ended and opinion-seeking questions to obtain information and build trust. The reports of Sgt. Sandoval and Sgt. Matarazzo showed no attempt to ask questions in this manner. *Id.* at 26.

- Sgt. Sandoval only relied on the information of Nurse Bode; had he conducted his own investigation, the outcome likely would have been different. *Id.* at 27.

- **There might have been a disconnect between Executive Staff, Mid-Management and**

11

**Line Officers of the Colorado Springs Police Department. If so, a predictable outcome is misrepresentation of the community policing policy that exists within the department, which in turn often results in poor decision making.** *Id.*

- There was no effort to understand the stress of the family before jumping to conclusions about their behavior. *Id.*
- **Officers should have left the room and requested another officer who could re-establish a relationship with the family.** *Id.*
- **Officers could have requested the Head Nurse to seek out a Social Worker, Minister, or other person of authority to act as a mediator between law enforcement and the family.** *Id.* **at 28.**
- **Officers could have requested a victim's advocate to take the lead in the hospital.** *Id.*
- **Mr. Anderson is a former Marine and should have been treated as a possible combat veteran. Officer Delcore's placement of himself behind Mr. Anderson influenced the combat veteran to be more hyper-sensitive to an attack. Mr. Anderson showed remarkable restraint by not reacting as he had been trained in the military.** *Id.* **at 28-29.**
- **Holistically, the behavior of the officers raises a greater concern about a subculture of patrol officers in the Colorado Springs Police Department and the Teller County Sheriff's Office, and other agencies, as compared to an experienced detective.** *Id.* **at 29.**

**STANDARD OF REVIEW**

Rebuttal experts do just that – they rebut the opinions of the opponent's expert.  "Rebuttal expert reports are not the proper place for presenting new arguments.  '[R]ebuttal experts cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts.'" *Spring Creek Exploration & Production Co., LLC v. Hess Bakken Invest II, LLC,* No. 14-cv-00134-PAB-KMT, 2016 WL 1597529, at *3 (D. Colo. April 21, 2016) (citations omitted).  "A rebuttal expert opinion is one offered 'solely to contradict or rebut evidence on the same subject matter identified by another party' through that party's affirmative expert disclosures." *Olivero v. Trek Bicycle Corp.,* 291 F. Supp. 3d 1209 1215 (D. Colo. 2017 (quoting Fed. R. Civ. P. 26(a)(2)(D)(ii)).

**FINDINGS AND CONCLUSIONS**

In their pending motion defendants argue that Mr. Corsentino's opinions extend beyond what could be reasonably considered to be rebuttal of Mr. Sailor's opinions.  I agree.  Defendants argue that this is improper rebuttal.  Applying the standard for rebuttal opinions set forth above, I find that several of Mr. Corsentino's opinions do not qualify as proper rebuttal opinions.

The basic opinions expressed by Mr. Sailor were (1) use, operation and effects of Tasers, including that it was appropriately deployed in this incident; (2) the basis for the officers' belief that a crime might have been committed; (3) the justification for the officer's request for access to the phone, including "exigent circumstances"; (4) the impact of Mr. Anderson's and the family's lack of cooperation; (5) the propriety of the officer's use of force; and (6) the propriety of arresting Mr. Anderson.  Those are the opinions that Mr. Corsentino could legitimately

address in a rebuttal report. As indicated above, I have bolded the Corsentino opinions that I find improperly exceeded the bounds of proper rebuttal opinion.

## ORDER

1. Defendants' motion to strike portions of the Corsentino report, ECF No. 49, is GRANTED. He will not be permitted to express the opinions bolded in this order.

2. Because I do not know which opinions Sailor will actually provide at trial, I add that Mr. Corsentino may not express opinions at trial that do not rebut the opinions actually expressed by Mr. Sailor at trial. Of course, both experts are also limited to what is contained in their reports, even as to the opinions that I am not today striking.

3. Plaintiff's lawyers are directed to inform Mr. Corsentino of this order and to avoid asking him questions that might prompt him to express an opinion that I have excluded.

DATED this 10th day of March, 2022.

BY THE COURT:

_____
R. Brooke Jackson
Senior United States District Judge