IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge R. Brooke Jackson

Civil Action No. 1:20-cv-02032-RBJ

CARL ANDERSEN JR.,

      Plaintiff,

v.

THE CITY OF COLORADO SPRINGS,
TELLER COUNTY COLORADO,
VITO DELCORE, in his individual and official capacity,
TODD ECKERT, in his individual and official capacity,
CARLOS SANDOVAL, in his individual and official capacity, and
ANTHONY MATARAZZO, in his individual and official capacity,

      Defendants.

---

## ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

---

This case is before the Court on three separate motions for summary judgment. Plaintiff Carl Andersen Jr. brought six separate constitutional claims against Officers Vito DelCore, Todd Eckert, and Carlos Sandoval of the Colorado Springs Police Department (CSPD) and against the City of Colorado Springs (Colorado Springs). He brought identical claims against Detective Anthony Matarazzo of the Teller County Sheriff's Office (TCSO) and Teller County, Colorado. For the reasons discussed below, Colorado Springs' motion for summary judgment (ECF No. 68) is GRANTED. Teller County's motion for summary judgment (ECF No. 69) is GRANTED. The individual CSPD defendants' motion for summary judgment (ECF No. 70) is GRANTED IN PART and DENIED IN PART.

1

## I.   BACKGROUND

Plaintiff Carl Andersen, Jr. is a resident of Colorado.  ECF No. 1 at ¶ 7.  Individual

defendants DelCore, Eckert, and Sandoval were CSPD officers at the time of these events.

Individual defendant Matarazzo was a detective in the Teller County Sheriff's Office.  *Id.* ¶ 8.

Defendants Colorado Springs and Teller County are municipalities.  *Id.* ¶¶ 9–10.

The following facts are taken from the record and construed in favor of plaintiff, the non-

moving party.  I include only those facts necessary to resolve the pending motions, and I assume

them to be true for that purpose alone.  Mr. Andersen is engaged and has two young children.

On April 17, 2019 Mr. Andersen's pregnant fiancée, Carissa Hiteshew, was pulling her car out of

the driveway.  Their daughter, who was then nineteen months old, ran after her and was

accidentally struck by the moving car.  A medical helicopter transported their daughter to

Memorial Central Hospital in Colorado Springs while Mr. Andersen and the rest of the family

drove to the hospital.  At Memorial Hospital their daughter was treated in the pediatric ICU for

her serious injuries while members of the family waited in the hospital room and in the hallway.

When forensic nurses questioned the family about the child's injuries, the Andersen family was

not forthcoming.  Suspecting child abuse, the nurses called the CSPD.

CSPD officers found the family similarly uncooperative when they arrived.  One family

member, not plaintiff or his fiancée, eventually told Officer Eckert a vague story about the child

being hit by a car in Woodland Park, an area in the TCSO's jurisdiction.  The CSPD officers

called the TCSO, who dispatched Detective Matarazzo.  When he arrived, he too found plaintiff

and Ms. Hiteshew unwilling to answer questions.  ECF No. 69-2 (audio recording of

Matarazzo's interactions) at 1:00–3:00.  He had learned on his way to the hospital that Ms.

Hiteshew had been texting one of her friends about the child's injuries, so he asked Ms. Hiteshew whether she had discussed the incident with anyone, including sending texts. *Id.* at 3:00. When she repeatedly insisted that she had talked to nobody beyond calling out of work, Detective Matazarro insisted on collecting her cell phone. *Id.* Plaintiff grabbed Ms. Hiteshew's phone and refused to turn it over. Detective Matarazzo then went into the hall and told the CSPD officers that he needed the cell phone to prevent anyone from deleting information. *Id.*

CSPD Officers Eckert, DelCore, and Sandoval then entered the hospital room with their body worn cameras (BWCs) activated. Immediately, Officer DelCore attempted to snatch the cell phone from plaintiff's back pocket. ECF No. 68-14 (Eckert BWC) at 0:24. Plaintiff jumped back and said, "excuse me, you do not grab anything from my pockets." *Id.* Officer DelCore responded with a threat: "you are going to hit the ground real hard." *Id.* at 0:29. Officer Eckert intervened to suggest they discuss in the hallway. *Id.* at 0:32. Plaintiff refused, insisting that he would not leave his daughter's side. Plaintiff and Officer Eckert engaged in a brief back-and-forth in which Officer Eckert asserted a right to take the cell phone pursuant to "the investigation" and plaintiff calmy but firmly disagreed. Officer DelCore, now standing off to the side, cut this exchange short when he pulled out his taser, causing plaintiff to ask, "you are going to tase me because I'm not going to give you my wife's cell phone?" *Id.* at 0:48.

Officer Eckert tried again, asking plaintiff to either give him the phone "and we're done" or go to the hallway to "talk about it." *Id.* at 1:01. Plaintiff again insisted that the officers had no right to take the cell phone and informed them that his father, who was standing right next to him, was on the phone with the Teller County Sheriff to resolve the situation. *Id.* Everyone was silent for about thirty seconds while plaintiff's father spoke with the Sheriff. Officer Eckert

then said, "we're just trying to keep this simple," to which plaintiff calmly responded, "so am I, and you don't need to take the cell phone." *Id.* at 1:47.  Officer DelCore then interjected with another threat: "you will be charged with obstruction." *Id.* at 1:51.  Plaintiff objected, saying "I'm not going to be charged with anything because you don't have a right to take her cell phone." *Id.*  The officers disagreed, and plaintiff asked them to "show [him] where you have the right to take her personal property." *Id.* at 2:03.

Plaintiff had remained calm yet firm throughout this conversation.  He had not raised his voice or made any verbal or physical threats.  Officer DelCore nonetheless decided to circle behind plaintiff, explaining that he "[didn't] want anyone behind [plaintiff] getting hurt." *Id.* at 2:08.  Plaintiff said "excuse me," retreated half a step, and turned to talk with Officer DelCore. *Id.*  Officer DelCore immediately grabbed plaintiff's arm and tried to twist it behind his back, saying "I will tase you" and then ordering "get out of the room right now." *Id.* at 2:15.  At this point, Officer Eckert had grabbed plaintiff's other arm and took the cell phone out of his pocket. *Id.*  Plaintiff said, "are you serious" and then officer DelCore tased him in the back. *Id.* at 2:20.  Plaintiff struggled as all four officers, led by Officers Eckert and DelCore, forced him to the ground where Officer DelCore then tased him again. *Id.* at 2:35.  The officers handcuffed plaintiff and led him out of the room.

Plaintiff was charged with obstruction and resisting arrest.  Those charges were dismissed.  Plaintiff filed this case on July 13, 2020.  He alleged six claims against all defendants: (1) unlawful seizure of his person; (2) unlawful search; (3) unlawful seizure of his property; (4) excessive force; (5) malicious prosecution; and (6) First Amendment retaliation.  ECF No. 1 at ¶¶ 55–131.  On February 3, 2021 defendant Colorado Springs moved to dismiss the

claims against it.  ECF No. 38.  On August 12, 2021 this Court dismissed all but the unlawful

arrest claim against defendant Colorado Springs.  ECF No. 53.  After discovery, all defendants

filed motions for summary judgment.  ECF Nos. 85, 86, 91.

## II.    STANDARD OF REVIEW

Summary judgment is warranted when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  A fact is "material" if it is essential to the proper disposition of the claim under

the relevant substantive law.  *Wright v. Abbott Labs.*, Inc., 259 F.3d 1226, 1231–32 (10th Cir.

2001).  A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to

return a verdict for the nonmoving party.  *Allen v. Muskogee, Okl*., 119 F.3d 837, 839 (10th Cir.

1997).  When reviewing a motion for summary judgment, a court must view the evidence in the

light most favorable to the non-moving party.  *Id.*  However, conclusory statements based merely

on conjecture, speculation, or subjective belief do not constitute competent summary judgment

evidence.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine

dispute of material fact and entitlement to judgment as a matter of law.  *Id.*  In attempting to

meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does

not need to disprove the other party's claim; rather, the movant need simply point out a lack of

evidence for the other party on an essential element of that party's claim.  *Adler v. Wal-Mart*

*Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317,

325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.  *Id.*  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."  *Adler*, 144 F.3d at 671.  Stated differently, the party must provide "significantly probative evidence" that would support a verdict in his or her favor.  *Jaramillo v. Adams Cnty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012).  "[T]he facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."  *Id.*

## III.  DISCUSSION

### A.  <u>Claims Against Individual Officers</u>

Plaintiff brings six claims against the individual officers: Detective Matarazzo and CSPD Officers Vito DelCore, Todd Eckert, and Carlos Sandoval (the CSPD Officers).  Defendants respond that the individual defendants are entitled to qualified immunity.

"Qualified immunity balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  To avoid application of qualified immunity, a plaintiff must prove that (1) defendant violated a constitutional right, and (2) the constitutional right was clearly established at the time it was allegedly violated.  *Id.* at 232.  In arguing that the individual defendants are entitled to qualified immunity, defendants argue that no binding precedent

"clearly established" that defendant officers' alleged conduct was unlawful.  ECF No. 721 at pp. 23–24.  Defendants emphasize the "essence" of qualified immunity's second prong: to ensure that "every reasonable official" has received "fair warning" before being held liable.  *See id.* (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)).

    1.  <u>First Claim — Fourth Amendment Unlawful Seizure of Person/False Arrest</u>

Plaintiff's false arrest claim requires proof that the defendant officers arrested plaintiff without probable cause.  *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012).  "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense."  *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (quoting *Jones v. City & Cnty. of Denver*, 854 F.2d 1206, 1210 (10th Cir. 1988)).  "Probable cause to arrest does not require facts sufficient to establish guilt, but does require more than mere suspicion."  *United States v. Vazquez-Pulido*, 155 F.3d 1213, 1216 (10th Cir. 1998).

Even if the defendant officers violated Mr. Andersen's right to be free from unlawful arrest, I find that this right was not clearly established.  Plaintiff was arrested for violating Colo. Rev. Stat. § 18–8–104(1)(a), which provides that "[a] person commits obstructing a peace officer . . . when, by using or threatening to use violence, force, physical interference, or an obstacle, such person knowingly obstructs, impairs, or hinders the enforcement of the penal law or the preservation of the peace by a peace officer."  The Colorado Supreme Court has held that, "while individuals may not be punished for mere verbal opposition to police authority," conduct

constituting "an obstacle" to officers' duty falls within the statute's ambit.  *Dempsey v. People*, 117 P.3d 800, 811 (Colo. 2005).

Tenth Circuit caselaw does not make clear whether plaintiff's conduct constituted an obstacle to law enforcement within the statute's definition.  In *Kaufman v. Higgs*, 697 F.3d 1297 (10th Cir. 2012), the Tenth Circuit held that officers did not have probable cause to arrest a plaintiff who stayed silent in the face of officer questioning.  *Id.* at 1302.  In a different case, *Lord v. Hall*, 520 F. App'x 687 (10th Cir. 2013) (unpublished), the court held that a plaintiff's "lack of cooperation escalated into probable cause" when he "was uncooperative, [] refused to stay put, tried to re-enter his truck, and resisted [the officer's] attempts to control him."  *Id.* at 692.  The *Lord* court distinguished *Kaufman*, by saying that the *Kaufman* plaintiff merely refused to answer questions while the *Lord* plaintiff had "disobeyed orders, resisted attempts to be handcuffed, and struggled with the officers."  *Id.*

It would not have been clear to a reasonable officer whether plaintiff's conduct was closer to that described in *Kaufman* or *Lord*.  Even though plaintiff remained calm and did not attempt to flee, he refused orders to step into the hall and turn over the phone.  In addition to preventing access to the cell phone, plaintiff's refusals made it difficult for officers to discuss the situation, to question his fiancée outside of his presence, and to document the child's injuries.  A reasonable officer might have believed there was probable cause to believe plaintiff was committing obstruction and would not have had fair warning that arresting him was unlawful.  Qualified immunity therefore applies, and the individual defendants are entitled to judgment as a matter of law on this claim.  This claim against the individual defendants is dismissed.

2.  <u>Second and Third Claims — Fourth Amendment Unlawful Search and Seizure of Property</u>

Warrantless searches and seizures are presumptively unconstitutional with a few exceptions.  *Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971).  One exception, the exigent circumstances exception, permits warrantless searches and seizures "when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment."  *Missouri v. McNeely*, 569 U.S. 141, 148-49 (2013).  Defendants argue that this exception justifies their warrantless search of plaintiff and seizure of the cell phone.  *See* ECF No. 70 at pp. 11–14.

Even if the defendant officers violated Mr. Andersen's Fourth Amendment rights, I find that those rights were not clearly established.  Plaintiff does not provide an analogous case establishing that seizing a phone in a similar case was unlawful but instead argues that the law was clearly established because defendant officers should have known that the exigent circumstances exception should not be "thoughtlessly expanded beyond all reason."  ECF No. 86 at p. 14.  Plaintiff believes defendants to be arguing that the exigent circumstances exception applied because the nature of cell phones is such that evidence on them can be deleted.  This construction of the exception, argues plaintiff, is overly broad because it would allow all cell phones to be warrantlessly seized at all times.

I agree that the exigent circumstances exception cannot reasonably be understood to permit seizures of all cell phones.  *See Crocker v. Beatty*, 886 F.3d 1132, 1137 (11th Cir. 2018).  But defendants' position is far narrower.  They argue that the totality of the circumstances made it reasonable for them to believe that incriminating messages existed, and that plaintiff would delete those messages before a warrant could be secured.  They point to plaintiff's refusal to answer even

9

basic questions about his child's injury, his refusal to allow documentation of the child's injuries, his surprisingly forceful refusal to give police the cell phone, his refusal to be separated even momentarily from his fiancée, and his fiancée's apparent false statement to the police that she had not discussed the injury with anyone when Detective Matarazzo knew she had been texting her friend about it.  These actions in combination made the officers reasonably suspicious that the phone contained messages incriminating plaintiff, and that plaintiff, who knew law enforcement suspected foul play, would delete the texts if possible.  At least a few cases support the proposition that the exigent circumstances exception applies to seizure of a digital device from a suspect who knows it will be searched.  *See Crocker*, 886 F.3d at 1136 ("Exigent circumstances sufficient to seize evidence may be found when the evidence is in the possession of a person it could implicate in a crime or someone close to them."); *United States v. Bradley*, 488 F. App'x 99, 103 (6th Cir. 2012) (unpublished) ("[I]t is objectively reasonable to seize a [computer] an officer has probable cause to believe contains evidence of a crime, rather than leave it unguarded in the hands of a suspect who knows that it will be searched.").  I find that a reasonable officer would not necessarily have known that searching and seizing the cell phone would violate plaintiff's constitutional rights and therefore grant the individual defendants qualified immunity on the second and third claims.

      3.   Fourth Claim — Fourth Amendment Excessive Force

Claims that police used excessive force during a seizure are analyzed under the Fourth Amendment's reasonableness standard.  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  The Supreme Court has delineated three factors relevant to the reasonableness inquiry: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight."  *Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009) (quoting *Graham*,

490 U.S. at 396).  Because the Fourth Amendment's reasonableness standard requires that courts evaluate "the totality of the circumstances," "conduct that passes constitutional muster in one case may constitute a Fourth Amendment violation in another."  *Grass v. Johnson*, 322 F. App'x 586, 589 (10th Cir. 2009) (unpublished).  The totality of the circumstances analysis includes assessing whether an officer unnecessarily created the need to use force.  *Jiron v. City of Lakewood*, 392 F.3d 410, 415 (10th Cir. 2004) ("The reasonableness of the use of force depends not only on whether the officers were in danger at the precise moment that they used force, but also on whether the officers' own 'reckless or deliberate conduct during the seizure unreasonably created the need to use such force.'" quoting *Sevier v. City of Lawrence, Kan.*, 60 F.3d 695, 699 (10th Cir. 1995)).

   In this case, Officer Sandoval, Officer Eckert, [1] and Detective Matarazzo did not apply force to plaintiff until he was locked in a physical struggle with Officer DelCore.  My assessment of those officers' actions thus begins at the point where Officer DelCore was already twisting plaintiff's arm behind his back and attempting to force him out of the room.  With this as the starting point, the force used was reasonable.  Plaintiff was physically struggling against Officer DelCore and appeared to be overpowering the officer.  Even though plaintiff had not committed anything more than a misdemeanor, he potentially posed a threat to officer safety and was actively resisting Officer DelCore's attempts to control him.  The *Graham* factors thus indicate that some force — bringing plaintiff to the ground and handcuffing him — was reasonable.  Because Officer Eckert, Officer Sandoval, and Detective Matarazzo applied force to the plaintiff

---

[1] Officer Eckert appeared to touch or even hold plaintiff's wrist as Officer DelCore initiated a physical struggle with plaintiff.  If this minimal force began before Officer DelCore grabbed plaintiff, I find that it was not unreasonable.

only after plaintiff began struggling with Officer DelCore, I find that their application of force was reasonable, and that these officers have shown they are entitled to judgment as a matter of law.  I grant summary judgment on plaintiff's fourth claim against these individual defendants.

Assessing the actions of Officer DelCore, who initiated the physical interaction with plaintiff, requires a broader lens to properly capture the totality of the circumstances.  I find that the *Graham* factors weigh against finding Officer DelCore's use of force reasonable.  The crime at issue was not severe when Officer DelCore first grabbed plaintiff's arm and twisted it behind his back.  At that point, the only crime at issue was obstruction, a misdemeanor.  *See* Colo. Rev. Stat. § 18–8–104(4).  Nor did plaintiff pose an immediate threat to the officers or anyone else.  His demeanor was calm and he issued neither physical nor verbal threats.  Finally, plaintiff was not resisting or fleeing arrest — he was standing still by his daughter's bedside.  Not only do the *Graham* factors weigh against the reasonableness of Officer DelCore's use of force at the moment it was applied, but the totality of the officer's actions also show that he created the need to use force by escalating the interaction at every turn.  Officer DelCore entered the room and immediately tried to surreptitiously snatch the cell phone from plaintiff's pocket.  ECF No. 68-14 at 0:24.  As the other officers began discussing the situation with plaintiff and requesting cooperation, Officer DelCore threatened to make plaintiff "hit the ground real hard."  *Id.* at 0:29.  Officer DelCore once again interrupted the civil conversation with a threat of violence by pulling out his taser.  *Id.* at 0:48.  He interrupted another civil exchange by threatening legal action against plaintiff.  *Id.* at 1:51.  Finally, Officer DelCore circled behind plaintiff mumbling something about making sure the people standing behind the plaintiff did not get hurt.  *Id.* at 2:08.  I find this explanation inexplicable — no reasonable person would have detected a threat

to those behind plaintiff.  Taking the evidence in the light most favorable to plaintiff, it seems

that Officer DelCore encircled plaintiff, taser drawn, in order to initiate a physical altercation.

Plaintiff barely had time to process, let alone respond to, Officer DelCore's ostensible reason for

circling behind him when Officer DelCore grabbed and twisted plaintiffs arm, said "I will tase

you right now," and began shouting at plaintiff to get out of the room.  ECF No. 68-13 (DelCore

BWC) at 2:14.  Officer DelCore deployed his taser seconds later.  The totality of the

circumstances would allow a reasonable jury to conclude that Officer DelCore's actions violated

plaintiff's Fourth Amendment right to be free from excessive force.

Plaintiff's right was clearly established even though he has cited no identical case.

"When an officer's violation of the Fourth Amendment is particularly clear from *Graham* itself,

we do not require a second decision with greater specificity to clearly establish the law." *Davis*

*v. Clifford*, 825 F.3d 1131, 1136 (10th Cir. 2016) (quoting *Morris v. Noe*, 672 F.3d 1185, 1197

(10th Cir. 2012)).  Even after Officer DelCore's actions had needlessly escalated the situation,

the *Graham* factors still counseled against his application of force.  A reasonable officer in

Officer DelCore's position would have been on notice that his actions violated plaintiff's Fourth

Amendment rights, so he is not entitled to qualified immunity.  Officer DelCore has not shown

that he is entitled to judgment as a matter of law — his motion for summary judgment is denied

in part.

4.  Fifth Claim — Fourteenth Amendment Malicious Prosecution[2]

A malicious prosecution claim requires five elements: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008).  Defendants argue that plaintiff has not presented evidence that the first element, causation, has been met.  I agree.

The complaint alleges that defendants "participated in the institution of legal proceedings against [plaintiff]" by, for example, "promoting the continued criminal prosecution of Mr. Andersen with knowledge that there were no reasonable grounds to believe that he had committed any crime whatsoever," continuing to "object[] to dismissing the charges," and "willfully submitted misleading reports for the purpose of maintaining a prosecution against Mr. Andersen."  ECF No. 1 at ¶¶ 110, 113.  At the summary judgment stage, however, plaintiff has not "set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Plaintiff has not submitted the "willfully . . . misleading reports" or shown that defendants "promot[ed]" plaintiff's criminal prosecution.  In fact, plaintiff's response to summary judgment does not analyze the first element of malicious prosecution at all.  *See* ECF No. 86 at pp. 15–16.  I therefore find no genuine dispute of material fact and conclude that defendants are entitled to judgment as a matter of law on this claim.

---

[2] Plaintiff concedes his malicious prosecution claims against Detective Matarazzo and Teller County. ECF No. 85 at p. 19 n.3.  Those claims are dismissed.

5.   <u>Sixth Claim — First Amendment Retaliation</u>

Plaintiff's First Amendment retaliation claim requires proof of three elements: (1)
constitutionally protected activity; (2) government conduct that chills the protected activity; and
(3) motive.  *Worrell v. Henry*, 219 F.3d 1197, 1206 (10th Cir. 2000).  To satisfy the third
element, defendant's actions must have been "substantially motivated as a response to the
plaintiff's exercise of constitutionally protected conduct." *Id.*  Plaintiff claims that his verbal
objections to and criticism of the officers' actions were constitutionally protected conduct that
motivated defendants to retaliate against him. ECF No. 1 at ¶ 120.

I find plaintiff has not presented sufficient evidence for a reasonable jury to find in his
favor on this claim.  No reasonable jury could conclude that defendants' actions were
substantially motivated as a response to plaintiff's speech.  While a jury might find that
defendants' adverse actions were motivated by plaintiff's action — not turning over the cell
phone — no reasonable jury could conclude that defendants' actions were motivated by
plaintiff's *saying* he would not turn over the cell phone.  To find that plaintiff's speech motivated
defendants' actions, a jury would have to conclude that defendants would have tased and arrested
plaintiff even if he had voiced his objections while handing the officers the cell phone.  No
reasonable jury could so find.  It is the Fourth Amendment, not the First, that secures plaintiff's
right to resist Fourth Amendment violations.  I dismiss plaintiff's attempt to shoehorn a First
Amendment claim into a Fourth Amendment one.

**B.  <u>Municipal Liability Claims</u>**

Plaintiff's municipal liability claims require (1) a city policy or custom; and (2) a causal
link "between the policy or custom and the injury alleged."  *Waller v. Denver*, 932 F.3d 1277,

1283–84 (10th Cir. 2019). "A municipal policy or custom may take the form of (1) 'a formal regulation or policy statement'; (2) an informal custom 'amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'; (3) 'the decisions of employees with final policymaking authority'; (4) 'the ratification by such final policymakers of the decisions — and the basis for them — of subordinates to whom authority was delegated . . .'; or (5) the 'failure to adequately train or supervise employees, so long as that failure results from deliberate indifference[3] to the injuries that may be caused.'" *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (2010) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189–90 (10th Cir. 2010)) (citations omitted).

Plaintiff's municipal liability claims fail against both municipalities. No reasonable jury could find that plaintiff has established a policy or custom of Teller County. The complaint describes a single case of excessive force by the Teller County Sheriff's department. ECF No. 1 at ¶ 53. This does not establish a policy or custom. Plaintiff's response to Teller County's motion for summary judgment relies on a failure to train theory. It claims that "Teller County has trained Matarazzo that if that he has any reason to believe that there is information on a person's cell phone, he can seize that cell phone without a warrant because things can be deleted." ECF No. 85 at p. 21. Plaintiff provides no citation to substantiate this claim. He therefore has not shown a genuine issue for trial that might lead to Teller County's liability.

---

[3] Deliberate indifference is required only for municipal liability based upon a failure to adequately train or supervise. *See City of Canton v. Harris*, 489 U.S. 378, 387 (1989). Other claims require only the existence of a policy and causation. *Waller*, 932 F.3d at 1283–84.

The only remaining claim against Colorado Springs is a municipal liability claim for an unofficial policy or custom of permitting unlawful arrests. *See* ECF No. 53 (dismissing all other claims against Colorado Springs). I find no genuine dispute of material fact on this claim. Plaintiff's claim sufficiently alleged a Colorado Springs policy of permitting or encouraging unlawful arrests by describing eight other instances of unlawful arrests. *See* ECF No. 1 ¶¶ 45–52. I accepted plaintiff's descriptions of those events for the purposes of ruling on the motion to dismiss, but surviving summary judgment requires more. Plaintiff must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for [him]." *Adler*, 144 F.3d at 671. He may not rest upon his pleadings to satisfy his burden. *Anderson*, 477 U.S. at 256.

Plaintiff has not met his burden here. He has not pointed to any evidence to substantiate his descriptions of the eight instances of allegedly unlawful arrests. Moreover, he has not put forth evidence that the officers' conduct in the current case parallels the other cases. In allowing plaintiff's claim past the motion to dismiss stage I accepted his allegation that "all three officers [knew] they lacked probable cause." ECF No. 53 at p. 11. At this stage, however, I found it was not clear to the officers that they lacked probable cause. *See supra*, subsection III.A.1. Finally, because plaintiff has not provided sufficient evidence of a policy or custom, he cannot prove that a municipal policy caused plaintiff's constitutional injury. Plaintiff's claim against Colorado Springs is dismissed.

## IV.   ORDER

1.      Colorado Springs' motion for summary judgment (ECF No. 68) is GRANTED.

2.      Teller County's motion for summary judgment (ECF No. 69) is GRANTED.

3.      The individual CSPD defendants' motion for summary judgment (ECF No. 70) is GRANTED IN PART and DENIED IN PART.  All claims against Officer Eckert, Officer Sandoval, Detective Matarazzo, Teller County, and Colorado Springs are DISMISSED. Plaintiff's Fourth Amendment excessive force claim against Officer DelCore may proceed.  All other claims against Officer DelCore are DISMISSED.

4.      Defendants' Joint Motion for Separate Trials (Bifurcation) of Individual and Monell Claims (ECF No. 76) is DENIED AS MOOT.

DATED this 29th day of March, 2022.

BY THE COURT:

R. Brooke Jackson
Senior United States District Judge