IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:20-cv-02032-RBJ

CARL ANDERSEN, JR.

      Plaintiff,

v.

VITO (I) DELCORE, in his individual capacity,

      Defendant.

---

## ORDER ON MOTIONS IN LIMINE

---

Defendant moves under Rule 702 to exclude various portions of the testimony of plaintiff's rebuttal expert, Dan Corsentino.  ECF No. 100.  Defendant also moves *in limine* to prohibit testimony related to plaintiff's medical history and a related investigation undertaken by the Department of Human Services.  ECF No. 101.  Defendant's Rule 702 motions are GRANTED IN PART and DENIED IN PART, as described below.  Defendant's general motions *in limine* are DENIED.

**FACTUAL BACKGROUND**

Plaintiff Carl Andersen, Jr. is a resident of Colorado. ECF No. 1 at 7.  At this stage, the only remaining defendant is Vito DelCore, who was at the time a Colorado Springs Police Department officer.  *Id*. at 8; *see also* ECF No. 105 at 18 (order dismissing First and Fourth Amendment claims against previous defendants Colorado Springs, Teller County, and individual officers Eckert, Sandoval, Matarrazo).  Because the only surviving claim is a Fourth Amendment excessive force claim against Officer DelCore, this order treats the motions at ECF Nos. 100 and

101—which were filed jointly by all defendants at that time—as motions by Officer DelCore and focuses on the facts relevant to that claim.

Mr. Andersen is engaged and has two young children.  On April 17, 2019 Mr. Andersen's pregnant fiancée, Carissa Hiteshew, was pulling her car out of the driveway.  Their daughter, who was then nineteen months old, ran after her and was accidentally struck by the moving car. A medical helicopter transported their daughter to Memorial Central Hospital in Colorado Springs while Mr. Andersen and the rest of the family drove to the hospital.  At Memorial Hospital their daughter was treated in the pediatric ICU for her serious injuries while members of the family waited in the hospital room and in the hallway.  When forensic nurses questioned the family about the child's injuries, the Andersen family was not forthcoming.  Suspecting child abuse, the nurses called the CSPD.

CSPD officers found the family similarly uncooperative when they arrived.  One family member, not plaintiff or his fiancée, eventually told Officer Eckert a vague story about the child being hit by a car in Woodland Park.  A detective with the Teller County Sheriff's Office also attempted to question plaintiff and Ms. Hiteshew, unsuccessfully.  ECF No. 69-2 (audio recording of Matarazzo's interactions) at 1:00–3:00.

This detective, former defendant Matarazzo, had learned on his way to the hospital that Ms. Hiteshew had been texting one of her friends about the child's injuries, so he asked Ms. Hiteshew whether she had discussed the incident with anyone, including sending texts.  *Id*. at 3:00.  When she insisted that she had talked to nobody beyond calling out of work, Detective Matazarro decided to confiscate her cell phone.  Id.  Plaintiff took Ms. Hiteshew's phone and refused to turn it over.  Detective Matarazzo then went into the hall and told the CSPD officers that he needed the cell phone to prevent anyone from deleting information.  *Id*.

CSPD Officers Eckert, DelCore, and Sandoval then entered the hospital room with their body worn cameras (BWCs) activated.  Immediately, Officer DelCore attempted to snatch the cell phone from plaintiff's back pocket.  ECF No. 68-14 (Eckert BWC) at 0:24.  Plaintiff jumped back and said, "excuse me, you do not grab anything from my pockets."  *Id*.  Officer DelCore responded with a threat: "you are going to hit the ground real hard."  *Id*. at 0:29.  Officer Eckert intervened to suggest they discuss it in the hallway.  *Id*. at 0:32.  Plaintiff refused, insisting that he would not leave his daughter's side.  Plaintiff and Officer Eckert engaged in a brief back-and-forth in which Officer Eckert asserted a right to take the cell phone pursuant to "the investigation," and plaintiff calmly but firmly disagreed.  Officer DelCore, now standing to the side, interrupted by removing his Taser.  Plaintiff asked, "you are going to tase me because I'm not going to give you my wife's cell phone?"  *Id*. at 0:48.

Officer Eckert tried again, asking plaintiff to either give him the phone, "and we're done," or go to the hallway to "talk about it."  *Id*. at 1:01.  Plaintiff again insisted that the officers had no right to take the cell phone and informed them that his father, who was standing next to him, was on the phone with the Teller County Sheriff to resolve the situation.  *Id*.  Everyone was silent for about thirty seconds while plaintiff's father spoke with the Sheriff.  Officer Eckert then said, "we're just trying to keep this simple," to which plaintiff responded calmly, "so am I, and you don't need to take the cell phone."  *Id*. at 1:47.  Officer DelCore interjected with another threat: "you will be charged with obstruction."  *Id*. at 1:51. Plaintiff objected, saying "I'm not going to be charged with anything because you don't have a right to take her cell phone."  *Id*. The officers disagreed, and plaintiff asked them to "show [him] where you have the right to take her personal property."  *Id*. at 2:03.

3

Plaintiff had not raised his voice or made any verbal or physical threats during this interaction. Officer DelCore nevertheless circled behind plaintiff, explaining that he "[didn't] want anyone behind [plaintiff] getting hurt." *Id*. at 2:08. Plaintiff said "excuse me," retreated half a step, and turned to talk with Officer DelCore. *Id*. Officer DelCore immediately grabbed plaintiff's arm and tried to twist it behind his back, saying "I will tase you" and then ordering "get out of the room right now." *Id*. at 2:15. At this point, Officer Eckert had grabbed plaintiff's other arm and took the cell phone out of his pocket. *Id*. Plaintiff said, "are you serious," and then officer DelCore tased him in the back. *Id*. at 2:20. Plaintiff struggled as all four officers, led by Officers Eckert and DelCore, forced him to the ground where Officer DelCore then tased him again. *Id*. at 2:35. The officers handcuffed plaintiff and led him out of the room.

Plaintiff was charged with obstruction and resisting arrest. Those charges were dismissed. Plaintiff filed this case on July 13, 2020. He alleged six claims against all defendants: (1) unlawful seizure of his person; (2) unlawful search; (3) unlawful seizure of his property; (4) excessive force; (5) malicious prosecution; and (6) First Amendment retaliation. ECF No. 1 at 55-131. After the Court reviewed and ruled on the various motions to dismiss and motions for summary judgment at ECF Nos. 53, 85, 86, and 91, all claims against Officer Eckert, Officer Sandoval, Detective Matarazzo, Teller County, and Colorado Springs were dismissed. Plaintiff's Fourth Amendment excessive force claim against Officer DelCore was permitted to proceed, while all other claims against Officer DelCore were dismissed. *See* ECF No. 105 at 18.

The Court issued an order granting in part defendants' motion to strike several of the opinions of plaintiff's expert Dan Corsentino as improper rebuttal opinions. ECF No. 99. Defendant now challenges under Rule 702 many of the remaining opinions expressed in Mr. Corsentino's report. ECF No. 100.

## LEGAL STANDARD

Under Rule 702 of the Federal Rules of Evidence, a qualified expert may provide opinion testimony if his specialized knowledge would assist the jury in doing its job (factfinding), and the opinions are based on sufficient facts and reliable methods properly applied to the facts.  In other words, the evidence must be both relevant and reliable.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).  Expert opinions are relevant if they would "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702; *see also Daubert*, 509 U.S. at 591.  They are reliable if, in addition to the expert's being qualified, his opinions are "scientifically valid" and based on "reasoning or methodology [that] properly can be applied to the facts in issue."  *Daubert*, 509 U.S. at 593.

The proponent of expert testimony has the burden to show that the testimony is admissible.  *U.S. v. Nacchio*, 555 F. 3d 1234, 1241 (10th Cir. 2009).  The trial court plays a "gatekeeping" role that involves an assessment of the "reasoning and methodology underlying the expert's opinion" and a determination of "whether it is scientifically valid and applicable to a particular set of facts."  *Goebel v. Denver and Rio Grande Western R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000).  However, the trial court has discretion as to how to perform this gatekeeping function.  *Id.*  It is not a role that emphasizes exclusion of expert testimony.  Judge Kane aptly summarized the thrust of *Daubert* in interpreting and applying Rule 702:

> A key but sometimes forgotten principle of Rule 702 and *Daubert* is that Rule 702, both before and after *Daubert*, was intended to relax traditional barriers to admission of expert opinion testimony.  Accordingly, courts are in agreement that Rule 702 mandates a liberal standard for the admissibility of expert testimony.  As the Advisory Committee to the 2000 amendments to Rule 702 noted with apparent approval, "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule.

*Cook v. Rockwell Intern. Corp.*, 580 F. Supp. 2d 1071, 1082 (D. Colo. 2006) (citations omitted).

However, under Rule 403 of the Federal Rules of Evidence, relevant evidence that meets the requirements of Rule 702 may nevertheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, misleading the jury, causing undue delay, wasting time, or needlessly presenting cumulative evidence.

## ANALYSIS

## I.   RULE 702 MOTIONS – DAN CORSENTINO.

Plaintiff's expert Dan Corsentino is the owner of a security operation called D.C. Private Investigations and has served as the Sheriff of Pueblo County, a Detention Facility Administrator, and a law enforcement officer in various other positions.  *See* ECF No. 49-2 at 5. He graduated from the National FBI Academy in 1993 and has also completed a Master's degree in Public Administration and a Bachelor's degree in Political Science.  *Id.*

Defendant seeks to preclude Mr. Corsentino from criticizing the officers' tactical decisions during the incident, ECF No. 100 at 3-4; from testifying about the officers' "failure to properly investigate the injuries to the minor," *id.* at 7-8; from referring to the officers' states of mind, *id.* at 8; from opining that the officers violated the Fourth Amendment by seizing Mr. Andersen's cell phone, *id.* at 9; from testifying about the ability to recover deleted data from cell phones, *id.* at 10-11; and from opining that the use of the Taser was "excessive force under the circumstances," *id.* at 13-14.  Each category of opinions will be discussed below.

### A.  Opinion regarding officers' tactical decisions.

Defendant argues that Mr. Corsentino's opinions that directly or impliedly criticize the officers' tactical decisions during the incident should be barred for deficiencies in relevance, reliability, and helpfulness under Rule 702.  Specifically, defendant challenges the following opinions left intact by the order on defendants' motion to strike at ECF No. 99:

6

- The officer defendants "had multiple better options," *id*. at 6;

- "Better communication and verbal de-escalation would have resolved the situation," *id*. at 6;

- Sgt. Sandoval "stood at the door looking into the room" where Ms. Hiteshew was placed and did not respond to Mr. Andersen's "reasonable request" that he step out of Ms. Hiteshew's line of vision because he was causing her stress, *id*. at 8;

- "Sgt. Matarazzo did not indicate in his report that he tried to calm the situation down by explaining why law enforcement was involved and what the process was," and instead, immediately began to develop a plan to seize the phone, *id*. at 8;

- "Best practices include triaging verbal encounters and viewing the situation from the perspective of the other person," and "an officer should tailor his approach in a manner that will calm the other person's emotions," *id*. at 11;

- "Best practices include using open ended and opinion-seeking questions to obtain information and build trust. The reports of Sgt. Sandoval and Sgt. Matarazzo showed no attempt to ask questions in this manner," *id*. at 11; and

- "There was no effort to understand the stress of the family before jumping to conclusions about their behavior," *id*. at 12.

Defendant argues first that opinions regarding the officers' failure to communicate or engage in de-escalation techniques are irrelevant, because "plaintiff did not plead a claim that the officer defendant used poor tactical decisions," and because "a Fourth Amendment violation cannot be based merely on bad tactic." ECF No. 100 at 4, 6 (citing *City and County of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 615 (2015)) ("[A] plaintiff cannot avoid summary judgment by simply producing an expert's report that an officer's conduct leading up to a deadly confrontation was imprudent, inappropriate, or even reckless."). However, this asserted basis for irrelevance is itself irrelevant. The Court has already reviewed defendants' motion for summary judgment on the Fourth Amendment claims based on unreasonable search, unreasonable seizure, and excessive force, respectively. In that review, the Court determined that there was a genuine dispute of fact as to the Fourth Amendment excessive force claim. *See* ECF No. 105 at 18.

It is misleading to imply that Corsentino's opinion that the officers' conduct was inappropriate is the sole factual basis for that excessive force claim—it is not. *See*, *e.g.*, ECF No. 49-2 at 7-8 (listing documents containing facts about the incident, including the initial case report, officers' bodyworn camera footage, and deposition testimony of Memorial Hospital nurses Jordyn Bode and Julie Olson). Furthermore, it is disingenuous to contort *Sheehan*'s statement that a given source of evidence may not suffice as the *sole* basis for a Fourth Amendment claim into the proposition that the evidence is entirely irrelevant to the Fourth Amendment analysis.

Claims that police used excessive force during a seizure are analyzed under the Fourth Amendment's reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Because the Fourth Amendment's reasonableness standard requires that courts evaluate the totality of the circumstances, "conduct that passes constitutional muster in one case may constitute a Fourth Amendment violation in another." *Grass v. Johnson*, 322 F. App'x 586, 589 (10th Cir. 2009) (unpublished). The totality of the circumstances analysis includes assessing whether an officer unnecessarily created the need to use force. *Jiron v. City of Lakewood*, 392 F. 3d 410, 415 (10th Cir. 2004) (quoting *Sevier v. City of Lawrence, Kan.*, 60 F. 3d 695, 699 (10th Cir. 1995) ("The reasonableness off the use of force depends not only on whether the officers were in danger at the precise moment that they used force, but also on whether the officers' own 'reckless or deliberate conduct during the seizure unreasonably created the need to use such force.'").

Here, the officers' tactical decisions—including ignoring Mr. Andersen's request and initiating seizures of property before verbally seeking information—are relevant to determining whether the officers' "own reckless or deliberate conduct…unreasonably created

the need to use [the disputed] force." *See* 60 F. 3d at 699.  Plaintiff need not—as defendant

suggests—have pled a separate claim for each facet of *Graham*'s "totality of the

circumstances" analysis.

Defendant next challenges the reliability of this category of opinions, arguing that

Corsentino's report fails to state, "other than his experience, what methodology he used to

arrive at his opinions regarding tactical decisions"—implying that this omission offends Rule

702.  ECF No. 100 at 7.  I disagree.  First, defendant gives short shrift to Corsentino's

account of the sources he reviewed and the "considerations" that bore on his analysis.  ECF

No. 49-2 at 7-8, 14.  The "sources" and "considerations" sections of the report suggest the

factual bases and analytical methodology for the opinions in the report.  The requirements of

Rule 702 are not so strenuous as to require explicit enumeration of the logical path from each

fact to each opinion in the report.  *See Dodge*, 328 F.3d at 1222 (citing *Gomez v. Martin*

*Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir.1995)) (explaining that expert opinions must

be "based on facts" that enable the expert "to express a reasonably accurate conclusion" as

opposed to mere "subjective belief or unsupported speculation").

This standard for reliability includes no requirement that the expert diagram in

exquisite detail each step of the process and facet of the conclusion.  Rather, the Tenth

Circuit has "consistently found that the reliability of officer testimony can be safely inferred

from the breadth of the individual's training and experience."  *United States v. Reese*, No.

CR 11-2294 RB, 2012 WL 13080253, at *3 (D.N.M. July 16, 2012) (citing *United States v.*

*Diaz*, 356 Fed. App'x 117, 126-27 (10th Cir. 2007) (unpublished)) (internal quotations

omitted); *see also United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009) ("A law

enforcement officer's testimony satisfies the *Daubert* reliability requirement if the officer is qualified by training and experience to offer an opinion.").

In *Reese*, for example, the court concluded that because the proffered expert's testimony was "based on his twenty-plus years of experience [as a law enforcement officer] and extensive training," the testimony was "sufficiently reliable for purposes of Rule 702." 2012 WL 13080253, at *4.  Here, like in *Reese*, and as defendant acknowledges, Mr. Corsentino's opinion is based on schooling, training at the FBI Academy and the School of Police Staff and Command, and experience as a Sheriff, patrol deputy, and expert witness in similar cases.  *See* ECF No. 49-2 at 5.

The opinions that are grounded in Corsentino's "knowledge and experience" in law enforcement practice, rather than in mere speculation, are methodologically sufficient.  *See Daubert*, 509 U.S. at 595 ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.").  Corsentino need not catalogue his specific related experiences in his report or detail exactly how those experiences compare to the instant case, although the factfinder might conclude that his opinion merits relatively little weight if he is unable to cite with more particularity the experience in which it is grounded, or to answer questions probing those experiences on cross examination.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (recognizing that regardless of whether the expert bases her testimony "upon professional studies *or personal experience*," the objective of *Daubert*'s gatekeeping requirement is merely to ensure that she "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field") (emphasis added).

Testimony about the options available to the officers at the outset of the encounter, Corsentino's opinion of the best practices the officers could have used, and the deficiency he perceived in the officers' response to the family's stress are all supported by "good grounds" in Corsentino's law enforcement experience and his review of the record.  The opinion that "better communication and verbal de-escalation would have resolved the situation," by contrast, is an "unjustified extrapolation from an accepted premise to an unfounded conclusion," and therefore is barred by Rule 702.  *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1224 (D. Colo. 2008); *see also General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (opinions must be connected to existing facts and data by more than the mere "*ipse dixit* of the expert").

The final question is whether the reliable opinions above will also be helpful to the trier of fact within the meaning of Rules 702 and 403.  The Rule 702 requirement that the evidence would "help the trier of fact to understand the evidence or to determine a fact in issue" goes "primarily to relevance," but also requires an adequate "fit" or "logical relation between the proffered testimony and the factual issues involved in the litigation."  *Daubert*, 509 U.S. at 591; *People v. Martinez*, 74 P.3d 316, 323 (Colo. 2003) (citing *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 743, 745 & n. 13 (3d. Cir.1994).  Relatedly, Rule 403 requires the Court to balance the probative value of the testimony against its potential for unduly prejudicial effect or waste of time.  *See* Fed. R. Evid. 403.

Defendant argues in effect that testimony about "poor tactical decisions and other alternatives" is unhelpful because the Fourth Amendment's reasonableness requirement must be judged from the perspective of an "officer on the scene, rather than with the 20/20 vision of hindsight."  ECF No. 100 at 5 (quoting *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1313

(10th Cir. 2009) (internal quotations omitted).  This argument proves too much.  It is not an argument that Mr. Corsentino's opinion here is unhelpful; it is an argument against permitting expert opinion on the reasonableness of an officer's conduct in general, because that opinion will by definition occur after the events to which it relates.  But "as I have said [in similar circumstances], and as the jury will be instructed, the conduct of these officers must be judged by what a reasonable officer knew or should have known at the time of the incident." *Davies v. City of Lakewood*, No. 14-CV-01285-RBJ, 2016 WL 614434, at *3 (D. Colo. Feb. 16, 2016).  Exclusion is not inherently justified by the fact that the opinions were rendered after the conduct they address.

In sum, defendant's motion to exclude is denied as to the opinions describing standard police practices and identifying deficiencies in the tactics used.  The motion is granted as to the opinion that outcomes would have been different if officers had acted differently, since this opinion is both speculative (unreliable) and to some extent axiomatic (unhelpful).

**B.  Opinion regarding failure to investigate.**

Defendant challenges the following two opinions left intact by the order at ECF No. 99:

- "The officers failed to conduct a proper investigation which would include talk[ing] with witnesses, victims, and suspects; observ[ing] the crime scene, identify[ing] any victim; observ[ing] the injuries; and communicat[ing] with medical personnel about the severity and expected outcome of the injuries," *id.* at 7;

- Sgt. Sandoval relied only "on the information of Nurse Bode" and if he had "conducted his own investigation, the outcome likely would have been different," *id.* at 11.

Defendant argues that the opinions lack the relevance and reliability to satisfy Rule 702 and that their admission would offend Rule 403 by confusing the jury and unfairly prejudicing defendant.  Like the testimony discussed above that would criticize the officers' tactical

decisions, opinions regarding the conformity of the officers' investigative efforts to customary or ideal practices is relevant to the context in which Officer DelCore perceived that it was necessary to use force on Mr. Andersen. *See Sevier*, 60 F. 3d at 699 (instructing that the Fourth Amendment excessive force analysis requires courts to consider whether the officers' conduct preceding the use of force unreasonably created the need to use force).

The officers' omissions in the investigative process bear on whether the actions that resulted unreasonably escalated the situation. To accept the argument that "conduct preceding the use of force" is irrelevant to the excessive force analysis would require casting aside an entire line of Tenth Circuit precedent. ECF 100 at 8; *cf. Jiron*, 392 F. 3d 415. Likewise, the fact that plaintiff "has not made a claim for failure to investigate" is neither dispositive as to the relevance of the testimony to other claims nor inherently disqualifying of the opinions; as discussed above, plaintiff need not isolate each piece of evidence supporting his Fourth Amendment claim into a separate cause of action.

Defendant argues next that the opinions identified here are unreliable because Corsentino does not indicate "other than his experience" how his opinions were produced or "why that experience is a sufficient basis for the opinion[s]." ECF No. 100 at 8. As discussed in the previous section, the Court may infer from the expert's enumerated qualifications and lengthy law enforcement experience that opinions grounded in that experience are sufficiently reliable. *See Reese*, 2012 WL 13080253, at *3.

A particularized inquiry into the connections between his experiences and the present opinions is more appropriately reserved for cross examination, rather than its absence serving as a basis for barring those opinions altogether. However, also as discussed above, any addendum that "the outcome would likely have been different" if the officers had acted differently is too

distant an extrapolation with too vague a connection to Mr. Corsentino's experience to constitute a reliable opinion under Rule 702, and is therefore inadmissible in that form. *See Daubert*, 509 U.S. at 595 (barring "mere speculation").  Corsentino may opine based on his experience about the specific defects he identified in the investigative process, and he may explain specifically how those defects relate to the use of force.  He may not speculate that some unspecified "outcome" would have been different or better if Officer DelCore had "conducted his own investigation." *See* ECF No. 99 at 8.  Permitting this as expert testimony would cloak mere argument in the garb of objectivity and would risk suggesting to a jury that the argument warrants more deference than it is due.

Finally, defendant argues that these opinions should be excluded under Rule 403 as likely to confuse the jury or unduly prejudice defendant.  I disagree.  I find little risk that a jury will be unable to view these critiques from the perspective of an officer on the scene when they are instructed to do so, or that they will be otherwise confused by this testimony.  On the contrary, opinions about typical investigative techniques suggest how a reasonable officer would perceive and manage the situation immediately before and during the use of force, and therefore would be helpful within the meaning of Rule 702.  Defendant does not elaborate on his asserted concern about undue prejudice, and this Court does not see how the substantial probative value of the testimony is outweighed by the nebulous risk of prejudice or confusion to which he gestures.  Therefore, opinions about deficiencies in the investigation are not barred by Rule 403.

The opinion that outcomes would have been different if Officer DelCore had taken certain actions is inadmissible.  Otherwise, defendant's motion to exclude this category of testimony is denied.

**C.  Opinion regarding officers' states of mind.**

Defendant next challenges a subset of Corsentino's opinions that refer to officers' mental

statuses, paraphrased by defendant as follows, see ECF No. 100 at 8-9:

- The "individual defendants attempted to rationalize a reason to take the phone," (citing ECF No. 99 at 6);

- The officer defendants "becoming frustrated," (citing *id*. at 11); and

- The officer defendants "jumping to conclusions," (citing *id*. at 12).

Defendant argues that these opinions are irrelevant because—at least, as defendant

paraphrases them—they identify the officers' subjective states of mind, whereas the Fourth

Amendment analysis is properly limited to an objective inquiry into the conduct of a reasonable

officer under the circumstances.  *See* ECF No. 100 at 9 (citing *Tanberg v. Sholtis*, 401 F.3d 1151,

1168 (10th Cir. 2005)).

It is true that "evidence tending to show officer's subjective state of mind [introduced

solely for that purpose] is irrelevant to jury's proper inquiry."  *Tanberg*, 401 F.3d at 1168.

Likewise, "an officer's personal motivations in using a particular degree of force are irrelevant:

'[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively

reasonable use of force; nor will an officer's good intentions make an objectively unreasonable

use of force constitutional.'"  *Id*. (quoting *Graham*, 490 U.S. at 397).

However, defendant's motion selectively quotes the text of the Court's order at ECF No.

99 and Corsentino's report at ECF No. 49-2, contorting opinions about the standard of care and

the quality of the officers' investigation that include incidental or colloquial references to mental

states in general into allegedly improper descriptions of *these officers´* mental states.  For

example, defendant's motion implies that Corsentino opined that officer defendants "bec[ame]

frustrated," ECF No. 100 at 9, when in fact Corsentino's opinion identified "best practices" for

managing situations in which the other person's emotions are heightened, specifically noting that "rather than becoming frustrated, *an officer should* tailor his approach in a manner that will calm the other person's emotions."  ECF No. 49-2 at 25-26 (emphasis added).  The report noted then that "neither sergeant did this."  *Id*. at 26.  I interpret that observation to reflect the opinion that the officers' behavior did not conform to reasonable de-escalation practices, rather than to refer to the officers' "motivations in using a particular degree of force."  *Cf. Graham*, 490 U.S. at 397; *Tanberg*, 401 F.3d at 1168.

Similarly, although defendant asserts that Mr. Corsentino concluded that the "officer defendants jump[ed] to conclusions," this selective quotation contorts the meaning of the opinion as actually rendered—that "there was no effort to understand the stress of the family before jumping to conclusions about their behavior."  *Compare* ECF No. 100 at 9 *with* ECF No. 49-2 at 27.  Like the opinion that officers should seek to de-escalate rather than "becoming frustrated," I interpret this opinion as centered on the objective defects in the officers' investigative efforts, contrasting the ideal investigation with the defective alternative, colloquially phrased here as "jumping to conclusions."  An incidental reference to a mental status within an opinion focused on objective conduct does not contaminate the whole.  This opinion is relevant for the same reason that the critiques of the investigative efforts discussed in the previous section are relevant.

I am similarly not persuaded by defendant's argument that the opinion about officers "attempting to rationalize" a reason to seize the cell phone refers only to a subjective mental state rather than to an objective defect in the officer's behavior in seizing the phone without a warrant or adequate justification for a warrantless seizure.  However, unless plaintiff has some other reason for introducing this evidence unrelated to the proposition that the seizure of the cell phone

was improper, this opinion is irrelevant as that claim has been dismissed. *See* ECF No. 105 at 18.

In sum, defendants' motion is denied as to opinions that refer in general to standard practices for managing situations in which officers are likely to have certain mental states. There is likely no need for testimony about the officers' rationale for seizing the cell phone, unless plaintiff has some alternative basis for relevance.

**D. Opinion regarding Fourth Amendment violation.**

Defendant next challenges the opinion that "[t]he seizure of the phone without consent, a search warrant, or truly exigent circumstances violated Mr. Andersen's and his fiancée's Fourth Amendment rights." ECF No. 100 at 9 (citing ECF No. 99 at 9 and arguing that this opinion is "simply a legal conclusion without application of any facts" and therefore would invade the province of the factfinder).

This challenge is moot, unless plaintiff has some reason to attempt to introduce this testimony other than to support his Fourth Amendment unreasonable seizure claim, which was dismissed on summary judgment. ECF No. 105 at 18.

**E. Opinion regarding data recovery from cell phone.**

For the same reason, defendant's motion to exclude the opinions that "[e]ven if information such as text messages had been deleted, it could have been recovered through a forensic examination of the phone," and that "[t]he seizure of the cell phone [was not] necessary to preserve evidence" is moot. These opinions seem naturally confined to supporting the now-dismissed Fourth Amendment seizure claim, which asserted that the warrantless seizure of the cell phone was unreasonable. ECF No. 100 at 10-11 (citing ECF No. 99 at 9-10). Opinions pertaining to the reasonableness of the cell phone seizure will be admissible here only if the

17

probative value of those opinions to the excessive force claim is not substantially outweighed by the risk of waste of time or presentation of cumulative evidence regarding shortcomings in the investigative process.  *See* Fed. R. Evid. 403.

### F.  Opinion regarding probable cause.

Defendant challenges the opinion that "[b]ecause the officers had no right to seize the phone, there was not probable cause that [Mr. Andersen] committed the crime of 'Interference with a Police Officer.'"  ECF No. 100 at 9-10 (citing ECF No. 99 at 9).  He argues that this opinion is unhelpful because it "goes to an ultimate question of law" and unduly "invades the jury's role."  *Id.* at 10 (citing *Sanchez v. Duffy*, 416 F. Supp. 3d 1131, 1150 (D. Colo. 2018)).

I held in the order on defendants' motion for summary judgment that it would not have been clear to a reasonable officer at the time whether plaintiff's conduct constituted an obstacle to law enforcement within the definition of Colo. Rev. Stat. § 18–8–104(1)(a).  *See* ECF No. 105 at 8.  I granted qualified immunity on that basis for the Fourth Amendment claim that plaintiff's arrest constituted an unreasonable seizure.  Because the claim that the arrest constituted an unreasonable seizure has been dismissed, and because under my reasoning in that order, it was not unreasonable for an officer under the circumstances to believe he had probable cause to initiate an arrest for obstruction, Mr. Corsentino's opinion that there was not actually probable cause tends to support neither the unreasonable seizure claim (it has been dismissed) nor the proposition that the officers unreasonably created the need to use force (that conduct was not unreasonable).

Therefore, I find that unless plaintiff has some other use for this opinion, it will not be relevant to the analyzing the excessive force claim.

**G. Opinion regarding use of Taser.**

Defendant seeks to preclude the opinion that "[t]he use of the Taser was excessive force under the circumstances." ECF No. 100 at 13. I could not locate this sentence in the report at ECF No. 49-2. However, Mr. Corsentino does opine there that "[u]ndoubtedly, the force used to arrest Mr. Anderson Jr., [*sic*] specifically the use of the Taser, was a violation of Mr. Anderson Jr.'s [*sic*] rights." ECF No. 49-2 at 17.

The opinion that the use of the Taser was excessive force is certainly relevant to the excessive force claim. However, it is neither reliable nor helpful within the meaning of Rule 702. A trial court must not "allow[] the expert to supplant the court's duty to set forth the law [or] the jury's ability to apply this law to the evidence." *See Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988) (reversing because the court there had improperly permitted a constitutional law expert to testify to an "array of legal conclusions touching upon nearly every element of the plaintiffs' burden of proof under section 1983").

Although here, the opinion goes to an ultimate issue rather than to each individual element of the burden of proof, and although the expert here is not a legal professional, the opinion's use of specialized legal language frames the opinion in relation to the law rather than in relation to police practices. *See id.* This expression nevertheless risks varnishing plaintiff's argument with the gloss of legal expertise. *Cf. Zuchel v. City & Cnty. of Denver, Colo.*, 997 F.2d 730, 742-43 (10th Cir. 1993) (noting that the expert was a criminal justice expert rather than the constitutional law-focused expert in *Specht*, and emphasizing that the expert's testimony was permissible because he expressed the opinion "not in terms of what would be allowed…under state or constitutional law" but rather what would be allowed under "generally accepted police custom and practice").

Here, Mr. Corsentino may testify that he believes the use of the Taser violated best practices or customary techniques of law enforcement.  He may not, however, "attempt to apply the law to the facts of the case or otherwise tell the jury how the case should be decided."  *United States v. Arutunoff*, 1 F.3d 1112, 1118 (10th Cir. 1993).  Defendant's motion to exclude the opinion that the use of the Taser constituted excessive force—rather than that it did not conform with standard practices or the officers' training—is granted.

## II.     GENERAL MOTIONS IN LIMINE.

The previous defendants filed several general motions *in limine* jointly.  ECF No. 101. Those motions are now considered with respect to the remaining defendant and remaining excessive force claim.

### A.  Motion to preclude testimony of plaintiff's PTSD diagnosis.

Defendant first requests that the Court precludes plaintiff from offering testimony about his previous Post-Traumatic Stress Disorder (PTSD) diagnosis and from seeking damages related to exacerbation of his PTSD during this incident.  Defendant argues that—because plaintiff has noted that he is "not suing over PTSD," and because he has acknowledged that his military experience caused the PTSD—there is accordingly "no reason" for any testimony related to the diagnosis.  ECF No. 101 at 3 (quoting ECF No. 102 at 3:17).

Defendant's argument again is not persuasive.  Evidence relevant to a contested issue is admissible unless foreclosed by another rule of evidence.  *See* Fed. R. Evid. 401.  Defendant's assertion that the only way a medical condition could be relevant if it was allegedly *caused* by the incident at issue is baldly incorrect.  A preexisting condition, to the extent that it bears on Mr. Andersen's experience during and after the incident, is relevant to the calculation of damages and therefore is admissible unless otherwise precluded.

Defendant argues alternatively that admission of testimony about plaintiff's preexisting PTSD from plaintiff or his primary care provider would contravene Rule 37(c)(1), which precludes a party from later introducing evidence that was not timely disclosed as required by Rule 26(a) or 26(e)(1) unless the omission was "substantially justified" or "harmless."  ECF No. 102 at 4.  Defendant argues that—because plaintiff has not disclosed any evidence that the incident affected his PTSD or any witnesses to address "these specific damages"—any testimony referring to PTSD would contravene the rule.  *See id*. at 3.

Presumably, by "these specific damages," defendant is referring to damages from exacerbation of PTSD.  However, this argument fails to acknowledge that evidence of pre-existing PTSD could affect plaintiff's instant experience of the incident (and therefore the damages sustained in that incident) without a persistent or permanent exacerbation of the condition.  Furthermore, even though it might be prudent tactically for plaintiff to have an expert to opine in support of his contention that his medical condition was worsened by the incident, defendant cannot bar plaintiff's testimony on his medical history and symptoms merely because it might be tactically deficient.  Plaintiff is not required to present expert evidence.

The determination of whether a failure to disclose was substantially justified or harmless rests within the broad discretion of the court.  *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002).  The Tenth Circuit has held that the following factors should guide that determination: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."  *Id*. (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)).

If plaintiff does in fact plan to testify that the incident exacerbated his PTSD, I find that this admission would be harmless. There would be little surprise or prejudice to defendant, since defendant elicited (and plaintiff provided in his deposition) the information now challenged. *See* ECF No. 102 at 3:18-23 (Q: "So, you are making no claims in this lawsuit related to your PTSD?" A: "I have stated that the actions of the officers have exasperated [*sic*] my condition because of what they did. And that's it." Q: "Okay. How did that exacerbate your PTSD?"); *see also Dillon v. Auto-owners Ins. Co.*, No. 14-CV-00246-LTB-MJW, 2016 WL 943775, at *6 (D. Colo. Mar. 14, 2016) (permitting introduction of supplemental expert reports that were not timely disclosed, because the reports did not "constitute new information or new opinions not previously disclosed").

Furthermore, I do not see how this testimony is likely to cause significant delay or disruption at trial, since plaintiff apparently does not intend to present expert testimony on that topic. Finally, there is little to suggest that plaintiff willfully or in bad faith omitted this information from disclosures to prevent defendant from preparing a response; in contrast, plaintiff explained his perspective that the incident exacerbated his PTSD and informed defendant that the foundation for that perspective was his experience rather than the evaluation of medical professionals or others. *See* ECF No. 102 at 4:2-15. The fact that plaintiff's assertion standing alone might be considered unpersuasive by the factfinder does not affect its admissibility *ex ante*. Therefore, the factors set out in *Jacobsen* weigh in favor of permitting this testimony.

For the same reasons, I find suppression under Rule 403 unwarranted. The fact that plaintiff had a preexisting medical condition is relevant to his experience of the incident and the

factfinder's calculation of damages.  The comparatively slight risk of prejudice to defendant does not support depriving the jury of that information.  This motion *in limine* is denied.

**B.  Motion to preclude testimony of the case filed by Department of Human Services.**

Defendant seeks an order precluding plaintiff from introducing testimony that the Department of Human Services (DHS)—after initiating an investigation into the cause of plaintiff's daughter's injuries and taking custody of the child for five days—ultimately dismissed the case.  *See* ECF No. 102 at 5.

I do not necessarily see a reason that the DHS investigation would be discussed at trial, since it has little bearing on any of the elements of an excessive force claim and largely took place after the events at issue here.  However, if defendant does introduce evidence of the DHS investigation or the child's temporary removal from plaintiff's custody, then in fairness plaintiff will be permitted to provide the remaining context by explaining that the case was ultimately dismissed and the child returned to his custody.  *Cf.* Fed. R. Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time.").

Defendant expresses concern about "severe[] prejudice" if a jury is permitted to infer that "dismissal of the DHS case means that law enforcement concerns about child abuse…were unfounded."  ECF No. 102 at 6.  It seems odd that defendant apparently sees no risk of prejudice to plaintiff if he tells the jury that plaintiff was investigated by the government for child abuse and then precludes plaintiff from responding.  The parties may choose either to omit reference to the investigation altogether or to acknowledge both the existence and the outcome of the

investigation.  Defendant may not contrive to have the jury consider only the facts that benefit him.

## ORDER

For the reasons above, defendant's Rule 702 motion is GRANTED IN PART and DENIED IN PART, as set forth in this order.  Defendant's general motions *in limine* are DENIED.


DATED this 27th day of July 2023.


BY THE COURT:

_____
R. Brooke Jackson
United States District Judge